

WWW.MKCLAWGROUP.COM
LAW OFFICES OF MICHAEL K. CHONG, LLC

| NEW YORK: | FORT LEE: | HOBOKEN: |
|---|---|---|
| 32 EAST 57TH STREET, 8TH FL. | 2 EXECUTIVE DRIVE, STE. 240 | 300 HUDSON STREET. STE. 10 |
| NEW YORK, NEW YORK 10022 | FORT LEE, NEW JERSEY 07024 | HOBOKEN, NEW JERSEY 07024 |
| (212) 726-1104 | (201) 947-5200 | (201) 708-6675 |
| FAX (212) 726-3104 | FAX (201) 708-6676 | FAX (201) 708-6676 |

*Please Reply to: FORT LEE*

EMAIL: MKC@MKCLAWGROUP.COM

October 10, 2023

<u>Via ECF; Total Pages: 12</u>
Hon. Valerie E. Caproni, U.S.D.J.
United States District Court
Southern District of New York
40 Foley Square New York
New York, NY 10007

  Re: Mabry v. LAML, LLC d/b/a John Sullivan's Bar & Grill et al.
     Docket No.: 1:23-cv-05468-VEC

Dear Judge Caproni:

This office represents defendants LAML, LLC, 240 BBJ Pub Inc., 505 HP LLC, Brendan Creegan, and John Creegan (hereinafter collectively "Defendants") in the above referenced matter. We are in receipt of Plaintiff's Motion for leave to file a Second Amended Complaint filed on October 3, 2023 (Doc 34), and Your Honor's Order dated October 5, 2023 (Doc 36) for Defendants to respond to Plaintiff's motion by October 10, 2023.

Defendants respectfully submit the following opposition to Plaintiff's motion to add sexual harassment and gender discrimination claims to the above referenced FLSA/NYWHL wage and hour lawsuit.

## STATEMENT OF FACTS

Plaintiff's wage and hour class action lawsuit was commenced by Plaintiff on behalf of herself and similarly situated individuals who are presently or were formerly employed by the corporate defendants as tipped workers, to recover wages which they allege they were entitled to receive pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, 207, *et seq*., the New York Minimum Wage Act, N.Y. Stat. § 191 *et seq*., and § 650 *et seq*., N.Y. Comp. Code R. & Regs. Tit. 12, § 146-1.4 *et seq.*, N.Y. Lab. L. §§ 195, 198, 650, the New York Labor Law ("NYLL"), Article 6, §§ 190, § 740

1

*et seq.*, Article 19, §§ 650 *et seq. See* First Amended Complaint for the Wage and Hour Putative Class Action (hereinafter "Wage and Hour Complaint"). (Doc. 29).

The discrimination claims are newly initiated individually by Plaintiff to recover for alleged violations under Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. 2000e. *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. §§ 290 et seq., New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107, *et seq.*, for alleged wrongfully discriminating against Plaintiff on the basis of sexual harassment and gender discrimination, and for alleged retaliating against her for opposing the alleged discriminatory conduct. *See* a redline version of the Second Amended Complaint (hereinafter "Discrimination Compl.") (Doc. 34-1). Plaintiff alleges in the Second Amended Complaint that she suffered extreme and dangerous sexual harassment and gender discrimination while bartending at John Sullivan's Bar & Grill.

As provided for herein there is extensive legal authority and specific court rules which govern amending a Complaint and consolidation of claims. Here, Plaintiff's Wage and Hour Putative Class claims and Plaintiff's Discrimination claims should not be consolidated as they are: (1) lacking in common questions of fact and law; (2) Defendants will be unfairly prejudiced if leave is granted; (3) consolidation would unduly delay the Wage and Hour Putative Class Action because both actions are at markedly different procedural postures, and vastly vary in their discovery processes; and (4) furthermore, individual issues within the separate claims predominate, and the substantial rights of Defendants would be prejudiced by the consolidation of these actions.

## The alleged "Easter Sunday Incident"
*(See* **Par. 82 to 100 of the proposed Second Amended Complaint (Doc. 34-1)***)*

In sum, the alleged discrimination claims focus on a specific evening at John Sullivans (Easter Sunday on April 9, 2023) ("Easter Sunday Incident") where certain <u>*third-party*</u> customers allegedly engaged in rowdy and disruptive behavior, and made off-color and allegedly discriminatory remarks to the Plaintiff. Thus, these claims have absolutely nothing to do with Plaintiff's wage and hour claims.

Moreover, Plaintiff's claims are misguided, as they should be directed at the "regular" customers who allegedly engaged in the disruptive behavior with Plaintiff, not the Defendants in this lawsuit. There are no facts pled in the Second Amended Complaint that allege that Defendants engaged in the above "East Sunday Incident." Plaintiff's claims should be asserted against her alleged "harassers" not Defendants.

The only paragraph in Par. 82 to 100 of the Second Amended Complaint that even mention the Defendants is in Par. 99 of the Second Amended Complaint, which states in pertinent part that, *"In the following days and weeks, Defendant Creegan did nothing to ensure that his staff, including Ms. Mabry was safe…."* First, that is a completely false statement. Mr. Creegan barred the alleged regular

customers from returning to the bar, cooperated with the police investigation, and made numerous efforts to console and comfort Plaintiff. But, more importantly, Mr. Creegan and the Defendants were not the "bad actors." Plaintiff should be suing the "bad actors" not Defendants. Moreover, these events have absolutely nothing to do with Plaintiff's wage and hour claims.

### The alleged "Podcaster Sexual Harassment"
*(See* **Par. 101 to 117 of the proposed Second Amended Complaint (Doc. 34-1)**)

Plaintiff claims "About one week later" she became aware that some *third-party* regular customers (Anthony Cumia and Galvin McInnes) discussed the "Easter Sunday Incident" on *their* podcast called "The Anthony Cumia Show, Compound Censored."

What on earth does this have to do with Defendants? It is not Defendants' podcast. Plaintiff fully states the podcast is owned by two third parties, Anthony Cumia and Galvin McInnes. Plaintiff's proposed claims should be against Anthony Cumia and Galvin McInnes, not the Defendants. Again, Plaintiff is seeking to sue the wrong parties. The alleged "bad actors" as to these "Podcast" claim are according to Plaintiff's own Second Amended Complaint, Anthony Cumia and Galvin McInnes.

### Plaintiff's Allegations that Defendant Creegan Failed to Protect Her from Sexual Harassment and Violence
*(See* **Par. 118 to 130 of the proposed Second Amended Complaint (Doc. 34-1**))

Plaintiff's claims in Par. 118 to 130 are again completely misguided. In these paragraphs Plaintiff asserts that Defendant Creegan has control over what two third parties (Anthony Cumia and Galvin McInnes) post on their own private podcast. Mr. Creegan has no control over what third parties do with their own private podcast.

All of the facts that Plaintiff asserts concern the "bad acts" to Anthony Cumia and Galvin McInnes. Moreover, after the "Easter Sunday Incident", Mr. Creegan did take proactive steps and banned the regular customers who allegedly engaged in the disorderly conduct from returning to his bar.

Plaintiff seeks to twist some minor facts to try to drag Defendants into these claims, which clearly Defendants have nothing to do with. Defendants were never on notice of any unlawful conduct of these third-party customers prior to the alleged "Easter Sunday Incident" or the "Podcast Incident." However, after these alleged incidents occurred, it is undisputed that Mr. Creegan contacted the police, and reported the incident to them and cooperated with their investigation. Moreover, after the above third party "Incidents", Mr. Creegan banned the alleged regular customers from his bar.

Once again, Plaintiff seeks to assert claims against the wrong parties. Plaintiff's claims are against the "bad actors" who actually engaged in the alleged wrongful conduct, not the Defendants.

In sum, the alleged discrimination claims (the above two "Incidents") focus mis-guided allegations asserted at the wrong parties, that involve third party actors in incidents that have absolutely nothing to do with the pending wage and hour claims.

Plaintiff's "Incident" claims should not be amended to the pending wage and hour claims for the following reasons:

(1) They lack in common questions of fact and law;

(2) Defendants will be unfairly prejudiced if leave is granted. These "Incident" claims directly concern conduct of third parties, not the Defendants. Plaintiff is seeking to sue the wrong parties. There is no factual basis to bring any of the "Incident" claims against Defendants. Moreover, such a misguided claim would potentially prejudice Defendants in defending the wage and hour claims. The substantial rights of Defendants would be highly prejudiced by the consolidation of these actions, by blaming Defendants for the acts of third-party customers;

(3) Consolidation would unduly delay the Wage and Hour Putative Class Action because both actions are at markedly different procedural postures, and vastly vary in their discovery processes. The Wage and Hour claim is set for a mediation, and the parties are already engaged in a substantive discovery exchange for the mediation.

As such, and as further provided below, Plaintiff's request to file a Second Amended Complaint, thereby consolidating these completely unrelated claims should be denied.

## **LEGAL ARGUMENT**

Pursuant to Federal Rules of Civil Procedure 15(a)(1) a party may amend its complaint once without leave of court up to 21 days after the service of either a responsive pleading or various Fed. R. Civ. P. 12 motions. *See* Fed. R. Civ. P. 15(a)(1). After that time has expired, any amendment requires the consent of the opposing parties or leave of court. *See* Fed. R. Civ. P. 15(a)(2). Rule 15(a)(2) states "the court should freely give leave when justice so requires." Id.

The Supreme Court has instructed that "this mandate is to be heeded." Foman v. Davis, 371 U.S. 178, 182 (1962). However, it is ultimately "within the sound discretion of the court whether to grant leave to amend." John Hancock Mut. Fife Ins. Co. v. Amerford Int'l Corp., 22 F.3d 458, 462 (2d Cir. 1994) (citing Foman, 371 U.S. at 178). Where "the moving party has unduly delayed or acted in bad faith, the opposing party will be unfairly prejudiced if leave is granted, or the proposed amendment is futile" courts in this circuit have denied motions to amend a complaint. *See* Schaper v. Bronx

4

Lebanon Hospital Center, 2019 WL 7102144 (S.D.N.Y. Dec. 20, 2019).

Under Federal Rule of Civil Procedure 42(a), the trial court is empowered to join or consolidate cases "involving 'a common question of law or fact.'" Deutsche Bank Nat. Trust Co. v. WMC Mortg., LLC, No. 3:12-cv-933 (CSH), 2014 U.S. Dist. LEXIS 106327, 2014 WL 3824333, at *1 (Aug. 4, 2014). "To succeed on a motion for consolidation, the moving party must demonstrate that the actions sought to be consolidated are before the same court and contain common questions of law or fact." Molinari v. Bloomberg, No. CV-08-4539 (CPS) (JO), 2009 U.S. Dist. LEXIS 2223, 2009 WL 87576, at *4 (E.D.N.Y. Jan. 13, 2009).

Consolidation of cases is within the sound discretion of the Court. Johnson v. Celotex Corp., 899 F.2d 1281, 1284 (2d Cir. 1990). When exercising its discretion, the Court considers the risk of inconsistent adjudication of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time to try two cases as opposed to one, and the expense of a single trial versus two trials. Id. at 1285. The Court also should consider the risks of prejudice to any party and confusion. Id. See also Pujols v. RTS Solutionz, Inc., No. 22-CV-05455 (KHP), 2023 U.S. Dist. LEXIS 3711 (S.D.N.Y. Jan. 9, 2023).

Courts can deny consolidation of claims if such consolidation would cause delay and confusion over which claims, and against which defendants, remain. See Smith v. Everson, No. CV-06-0791 (SJF) (AKT), 2007 U.S. Dist. LEXIS 58293, 2007 WL 2294320, at *3 (E.D.N.Y. Aug. 6, 2007) (denying motion to consolidate because "the risk of confusion would occur as a result of consolidation, rather than vice versa").

### I. The Second Amendment of the Complaint should be denied as Plaintiff is seeking to sue the wrong parties

See facts provided above.

### II. The Second Amendment of the Complaint should be denied as the Claims Lack Sufficient Common Questions of Law or Fact and Individual Issues Predominate
### (And Plaintiff is seeking to sue the wrong parties)

Consolidation of actions may be ordered where such actions involve a common question of law or fact. J.H. v. Williamsville Central School District, 2015 U.S. Dist. LEXIS 58321, 2015 WL 2080221, at *4 (W.D.N.Y. May 4, 2015) requires only either a common question of law or fact, which common questions need not predominate) (citing authorities). The motion to consolidate should be denied for lack of common legal and factual questions between the actions. See Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995). Even when common factual and legal questions are present, consolidation is only appropriate if individual issues do not predominate over the common questions of

5

law and fact.

Courts in this District consider the following additional factors on a motion to sever claims: (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims. *See* Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd., 806 F. Supp. 2d 712, 720 (S.D.N.Y. 2011) (quoting In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig., 214 F.R.D. 152, 154-55 (S.D.N.Y. 2003) (Pollack, J.)); accord Crown Cork & Seal Co., Inc. Master Ret. Trust v. Credit Suisse First Boston Corp., 288 F.R.D. 331, 332-33 (S.D.N.Y. 2013).

In determining the meaning of the term "transaction or occurrence" under Rule 20, "many courts have drawn guidance from the use of the same term in Rule 13(a), applying to compulsory counterclaims." Abraham v. Am. Home Mortgage Servicing, Inc., No. 12-cv-4686 (WFK)(JMA), 947 F. Supp. 2d 222, 2013 U.S. Dist. LEXIS 73801, 2013 WL 2285205, at *3 (E.D.N.Y. May 23, 2013) (collecting cases)*; see also* Peterson v. Regina, No. 10 Civ. 1692 (JSR), 935 F. Supp. 2d 628, 2013 U.S. Dist. LEXIS 48951, 2013 WL 1294594, at *6 (S.D.N.Y. Mar. 28, 2013). In the Rule 13(a) context, the Second Circuit applies the "'logical relationship' test." Jones v. Ford Motor Credit Co., 358 F.3d 205, 209 (2d Cir. 2004). That is, courts are to look to the logical relationship between the claims and determine "whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." United States v. Aquavella, 615 F.2d 12, 22 (2d Cir. 1979).

"Even where two actions have 'some overlap in facts' but the claims 'involve different theories of liability and require establishing distinct elements'" consolidation is inappropriate. *See* Gristede's Foods, Inc. v. Poospatuck (Unkechauge) Nation, No. 06-CV-1260 (KAM), 2009 U.S. Dist. LEXIS 100158, 2009 WL 3644159, at *3 (E.D.N.Y. Oct. 27, 2009).

Here, the actions Defendants seek to consolidate have absolutely no common causes of action and lack sufficient common questions of law or fact to merit consolidation. In the Wage and Hour Putative Class Action, Plaintiff alleges that she and a class of similarly situated individuals were not paid proper wages, including overtime pay and minimum wages, owed for all hours worked. *See* the Wage and Hour Compl.

As a proposed class action, the Wage and Hour Putative Class Action will entail two separate sets of relevant factual and legal questions. First, during the pre-class certification stage, the relevant factual and legal questions will pertain to fulfilling the pre-requisites for class certification such as (i) whether the class is sufficiently numerous; (ii) whether there are questions of law and fact common to the class which predominate; (iii) whether the claims and defenses of the representative are typical of those of the class;

6

(iv) whether the representative will fairly and adequately protect the interests of the class; and (v) whether a class action is the superior method to adjudicate the controversy. Those inquiries are <u>entirely unnecessary</u> for the Discrimination Action.

Following the pre-class certification discovery phase, and subsequent to Plaintiff's motion for class certification, the questions of law and fact on the merits will become relevant. For the Wage and Hour Putative Class Action, these questions include: (i) determining how many hours per week Plaintiff and the putative class members worked; (ii) determining what wages were paid to Plaintiff and members of the putative class; (iii) determining the terms and conditions of Plaintiff's and members' of the putative class employment; (iv) determining whether Plaintiff and members of the putative class were paid all wages due; (v) determining whether Plaintiff and members of the putative class were paid minimum wages; (vi) determining whether Plaintiff and members of the putative class were provided with the Wage Notices and Wage Statements. *See* the Wage and Hour Complaint. (Doc.29.)

Plaintiff enumerates questions of law and fact common to the Class which predominate over the any questions affecting only individual Class members in Paragraph 28 of the Wage and Hour Complaint. *See* the Wage and Hour Compl. (Doc. 29).

Entirely distinct from the Wage and Hour Putative Class Action, the Discrimination Action is a straightforward individual action for sexual harassment and gender discrimination. *See* the Discrimination Compl. (Doc 34-1). The legal and factual questions at the heart of the claims in the Discrimination Action include: (i) whether the plaintiff belongs to a protected group; (ii) whether the plaintiff was the subject of unwelcome discriminatory sexual harassing treatment; (iii) whether the harassment was based on the plaintiff's gender; (iv) whether the sexual harassment affected a term, condition or privilege of employment; and (5) whether the employer knew or should have known of the harassment and failed to take remedial action. This analysis may need an extensive discovery stage, including multiple depositions. *<u>Moreover, these claims are directed at the wrong parties, as the Defendants are not the "bad actors</u>."*

The legal and factual questions relevant to damages in each action are also entirely distinct. For example, the Wage and Hour Putative Class Action will require the analysis of, inter alia, time and payroll records, timesheets, and paystubs to show that Plaintiff and putative class members were not paid proper wages under the law.

Conversely, the damages sought in the Discrimination Action will involve an analysis of factual and legal issues pertaining to punitive damages and emotional distress damages suffered solely by Plaintiff. As such, the Wage and Hour Putative Class Action is entirely separate and distinct in virtually all facets from the Discrimination Action.

The sole common question between the actions - "whether Plaintiff was employed by each Corporate Defendant" - only serves to exemplify the lack of commonality between the actions. Such a

position is not only devoid of merit but is also patently incorrect.

Further, the legal and factual questions pertaining to employer liability are not necessarily common to the two actions. At the outset, there is not even full identity of the parties here, as the Discrimination Action alleges that Brendan Creegan is individually liable, and in the Wage and Hour Putative Class Action Brendan Creegan is merely one of alleged defendants. Thus, if individual employer liability is at issue at all, it will be relevant only to the Discrimination Action.

Further, the legal questions and standards surrounding liability for discrimination under the NYCHRL and the NYSHRL differ significantly from those applicable to liability for the unpaid wage claims at issue in the Wage and Hour Putative Class Action. For example, while Plaintiff will need to prove that Corporate Defendants were her employer and/or joint and/or single employer to hold them liable for unpaid wages or commissions in the Wage and Hour Putative Class Action, Plaintiff need not prove employer liability to hold Defendants liable for discrimination under the NYCHRL or NYSHRL.

Rather, even if they are not found to be employers, Defendants may be liable for discrimination under the NYSHRL and the NYCHRL if they are found to have aided or abetted the discrimination.

As such, the Wage and Hour Putative Class Action may require entirely different legal theories, proof, and factual and legal questions on the issue of liability than the Discrimination Action.

Thus, for example, in case <u>Guerra v. Trece Corp</u>., 2020 U.S. Dist. LEXIS 223309 (S.D.N.Y. Nov. 30, 2020) when Plaintiff brought her claims under New York State and City Human Rights Laws, New York Human Rights Law, N.Y. Exec. Law § 290 et seq. ("NYSHRL"), N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL"), respectively, against Defendants for allegedly terminating her because she was pregnant, Plaintiff argues that this Court has supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367. Under 28 U.S.C. § 1367(a), a federal court may exercise supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." However, the Court denied Plaintiff's arguments and decided that the facts alleged in support of Plaintiff's pregnancy discrimination claim do not substantially overlap with the facts supporting her FLSA and NYLL claims such that they provide a basis for supplemental jurisdiction. Plaintiff argues that her pregnancy discrimination claims share common facts with the FLSA and NYLL claims because they both require an examination of the extent of Defendant's power and authority as an employer. The Court explained that defendant's legal status as an "employer" still does not, without more, establish supplemental jurisdiction for all claims in which a common employer relationship exists. *See* <u>Torres</u>, 628 F. Supp. 2d at 468. Rather, the claims must arise out of the same series of events. See Dervisevic, 2019 U.S. Dist. LEXIS 203616, 2019 WL 6251197, at (events and facts underlying religious discrimination claim were different from those underlying FLSA claim notwithstanding some overlap in facts regarding the employment relationship).

Further, the Court summarized the applicable law and explained why consolidation of claims was inappropriate here. Such claims are considered a part of the same case or controversy only if they derive from the same "common nucleus of operative fact" as the federal claims. Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 308 (2d Cir. 2004) (internal quotation marks and citation omitted). This criteria is met when the state claims arise out of "approximately the same set of events" as the federal claims. *See* Treglia v. Town of Manlius, 313 F.3d 713, 723 (2d Cir. 2002).

Numerous courts in this District have addressed the circumstances under which a court hearing FLSA and NYLL wage and hour claims will have supplemental jurisdiction over other state law claims. The general rule is that, when the only possible "common nucleus of operative fact" alleged between the claims is the existence of a common employment relationship, there is no supplemental jurisdiction. See Torres v. Gristede's Operating Corp., 628 F. Supp. 2d 447, 468 (S.D.N.Y. 2008). Thus, the mere fact that there was a common employer/employee relationship between the parties did not establish supplemental jurisdiction, without evidence of some further factual connection between the claims. *See also* Dervisevic v. Wolfgang's Steakhouse, Inc., No. 19 Civ. 814 (VEC), 2019 U.S. Dist. LEXIS 203616, 2019 WL 6251197, at (S.D.N.Y. Nov. 22, 2019) (FLSA wage and hour action provided no supplemental jurisdiction over state law religious discrimination claims when those claims dealt with different time periods and different facts than the wage and hour claims); Hahn v. Rocky Mountain Express Corp., No. 11 Civ. 8512 (LTS) (GWG), 2012 U.S. Dist. LEXIS 100466, 2012 WL 2930220, at *1 (S.D.N.Y. July 12, 2020) (FLSA overtime action provided no supplemental jurisdiction over age discrimination claim when employee's termination was not related to his overtime claim).

Conversely, there will be supplemental jurisdiction if the state law claims are in some way connected to the facts or events underlying the FLSA claims. For example, in Rivera v. Ndola Pharmacy Corp., the court found that it had supplemental jurisdiction over a plaintiff's state sexual harassment claim when the plaintiff alleged that her rate of pay—and thus, the amount she sought to recover through her FLSA claims—was based on her agreement to accompany one of the defendants to breakfast and lunch, where the alleged harassment occurred. 497 F. Supp. 2d 381, 393 (E.D.N.Y. 2007). This made her sexual harassment claim "intricately connected to her FLSA overtime claim" because it was "directly linked to her allegations that her wages were $500 per week." Id. The Rivera court found that it did not, however, have jurisdiction over other state law harassment and tort claims that "involve[d] both different rights and underlying facts than plaintiff's overtime claims." Id. at 394.

Similarly, in Munguia v. Bhuiyan, the court permitted the plaintiff to plead a state law race discrimination claim when doing so was "relevant to the issue of plaintiff's wages because [he] alleges that [defendants] decreased [his] wages" as a result of that racial discrimination. No. 11 Civ. 3581 (JBW) (MDG), 2012 U.S. Dist. LEXIS 19885, 2012 WL 526541, at (E.D.N.Y. Feb. 16, 2012) (internal citations

9

and quotation marks omitted, alterations in original)

Therefore, based on the foregoing, the request to file the Second Amended Complaint, seeking consolidation of these unrelated claims, must be denied.

### III. Consolidation Should be Denied Because the Actions are at Markedly Different Procedural Postures and Entail Vastly Different Discovery Processes.

Defendants maintain that there are no common factual or legal questions sufficient to warrant consolidation of the actions. However, even if there were, the actions should not be consolidated because they are at markedly different procedural stages and involve distinct discovery processes. As such, consolidation would unduly delay the Wage and Hour Putative Class Action.

When Court finds that "the risk of confusion to the jury and potential prejudice stemming therefrom, along with the fact that a bench trial in this action will not be materially more burdensome than conducting a consolidated trial, weighs against consolidation" the motion to consolidate actions could be denied. Pujols v. RTS Solutionz, Inc, No. 22-CV-05455 (KHP), 2023 U.S. Dist. LEXIS 3711 (S.D.N.Y. Jan. 9, 2023). Consolidation under Rule 42 "should be granted only to the extent that there is not confusion, delay or prejudice." In re Facebook, Inc., IPO Sec. & Derivative Litig., 288 F.R.D. 26, 41 (S.D.N.Y. 2012). "That is, the primary purpose of consolidation is savings of expense and gains of efficiency." See Ekpe v. City of New York, No. 20-cv-8248 (AT), 2021 U.S. Dist. LEXIS 242527, 2021 WL 5999204, at *3 (S.D.N.Y. Dec. 20, 2021) (internal quotations omitted).

Courts have routinely denied consolidation motions where there is a stark difference in the procedural posture of the actions, finding that judicial economy would not be served by consolidating two actions at disparate stages of litigation. *See* KGK Jewelry LLC v. ESDNetwork, 2014 U.S. Dist. LEXIS 177137, 2014 WL 7333291, at  (S.D.N.Y. Dec. 24, 2014) ("

Thus, pursuant to Smith v. Everson, No. 06-CV-0791, 2007 U.S. Dist. LEXIS 58293, 2007 WL 2294320, at (E.D.N.Y. Aug. 6, 2007) the Court should deny a motion to consolidate claims where consolidation would lead to confusion in light of distinct issues involved and would not improve efficiency of discovery.

In Walker v. Accenture PLC, No. 3:19-cv-888 (VAB), 2020 U.S. Dist. LEXIS 261857 (D. Conn. Feb. 12, 2020), Court denied Plaintiff's motion to consolidate two cases as arguing that they are at different stages – while one action was recently filed, discovery was "largely completed" in another action. Court decided that such consolidation would cause "delay and waste judicial resources. . . without providing any benefit to Defendant . . ." Id. and any consolidation would prejudice Defendant. Id. The "different procedural postures [of the two cases] weigh against consolidation." Garrity, 2018 U.S. Dist. LEXIS 234022, 2018 WL 8263922.

10

"[C]onsolidation is improper when the cases sought to be consolidated are at different stages in the proceedings." Almonte v. Coca-Cola Bottling Co. of New York, Inc., No. CIV.3:95CV01458 (PCD), CIV.3:96CV01917 (AHN), 1996 U.S. Dist. LEXIS 20253, 19996 WL 768158, at *2 (D. Conn. Dec. 12, 1996). Consolidating the two cases at this juncture would result in delay and duplicative work in discovery.

Here, the Wage and Hour Putative Class Action and the Discrimination Action are at markedly different procedural phases, and they differ significantly in their respective discovery processes. The Wage and Hour Putative Class Action follows the class action discovery process, which typically includes two phases of discovery. The first phase is pre-class certification discovery—prior to a motion for class certification—where the discovery conducted pertains to the prerequisites of class certification under CPLR § § 901 and 902 (i.e. numerosity, commonality, typicality, adequacy, superiority). Discovery into the merits of the case does not begin until the second phase, after the class certification motion has been briefed, argued, and decided. Accordingly, pre-class certification discovery entails its own paper discovery and its own depositions, and further paper discovery and depositions regarding the merits may be conducted following the determination on the class certification motion. *See* id. As such, by its very nature, class actions generally proceed along an extended discovery track compared to individual actions.

Here, paper discovery in the Wage and Hour Putative Class Action is in its most active discovery phase to prepare for the mediation. Pursuant to Your Honor's Order dated October 5, 2023 (Doc. 37), the deadline to complete an initial discovery is by October 23, 2023. Defendants have already produced a primary portion of the required documents, and Defendants are diligently working to obtain the remaining time and pay records from third party payroll companies.

Moreover, pursuant to Your Honor's Mediation Referral Order (Doc. 16) dated July 14, 2023 the action was already referred to Mediation. Pursuant to Your Honor's Order dated October 5, 2023 (Doc. 37), the parties shall have until November 30, 2023 to complete mediation.

If the court allows Plaintiff to file the Second Amended Complaint, the parties will be forced to return back to the pleadings stage, and will not be able to complete Mediation by the date ordered by Your Honor. In fact, it will significantly and unnecessarily extend the potential resolution at mediation of the Wage and Hour Putative Class Action, as the discovery stage of the Discrimination Action would need to get started.

There is no benefit whatsoever to prolonging Plaintiff's Wage and Hour Putative Class Action - potentially by months - particularly where the actions are devoid of sufficient common questions of law or fact. *Moreover, these sexual harassment claims are directed at the wrong parties, as the Defendants are not the "bad actors".*

The depositions of the actions will also entail entirely different lines of questioning, and the Wage and Hour Putative Class Action may require separate depositions for both pre-class certification discovery

11

and merit-based discovery. As such, Discovery of the two cases would need to proceed along entirely distinct tracks.

As provided above, the two actions would be at markedly different phases of discovery, and follow entirely different discovery processes. Amendment of the Complaint to add the new and unrelated sexual harassment claims would cause an extreme undue delay of the Wage and Hour Putative Class Action and would prejudice the substantial rights of Defendant.

Therefore, based on the foregoing, the request to file the Second Amended Complaint, seeking consolidation of these unrelated claims, must be denied.

## CONCLUSION

Based on the above, Defendants respectfully submit that Plaintiff's motion for leave to file a Second Amended Complaint should be denied.

Respectfully submitted,

*Michael K. Chong*

Michael K. Chong, Esq.

MKC/lk
cc: Plaintiff's counsel (*via ECF*)