JOSEPH & KIRSCHENBAUM LLP
Attorneys at Law

Charles Joseph
D. Maimon Kirschenbaum
Denise Schulman
Josef Nussbaum
Lucas C. Buzzard



32 Broadway, Suite 601
New York, NY 10004
Phone (212) 688-5640
Fax (212) 688-2548
www.jk-llp.com

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/14/2024

March 13, 2024

**VIA ECF**

Judge Valerie Caproni
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

Re:     *Mabry v. LAML, LLC* – Case No. 1:23-cv-05468 – Fairness Letter Motion

Dear Judge Caproni:

We represent the Plaintiff Faith Mabry ("Plaintiff") in the above action, and we write the Court to respectfully request that the Court approve the parties' settlement agreement, including the settlement of the Fair Labor Standards Act ("FLSA") claim in this case, because the settlement is fair and reasonable under *Cheeks v. Freeport Pancake House*, 796 F.3d 199 (2d Cir. 2015). The parties' executed settlement agreement is submitted herewith as Exhibit 1 ("Agreement").

## Background

By way of background, and as the Court is aware, Plaintiff alleges that Defendants own and manage three inter-related Irish bars (named John Sullivan's, Jack Doyle's and The Tailor, respectively) located within a few blocks of each other in Manhattan. *See* Second Amended Complaint ("SAC") ¶¶ 15-22, 58-76 (Dkt. 40). Plaintiff worked as a bartender at John Sullivan's from May 2022 to April 2023. Plaintiff alleges that Defendants, among other things, failed to pay her for all hours that she worked, including overtime hours, paid her at the incorrect hourly rate, failed to give her proper wage notices and wage statements, and failed to pay her the required spread of hours pay for shifts that lasted over 10 hours in day. *See* SAC ¶¶ 29-70. Based on these allegations, Plaintiff asserted claims against the Defendants, on behalf of herself and other similarly situated bartenders and busboys, for (1) unpaid overtime compensation under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"); (2) failure to pay the minimum wage as required under the NYLL; (3) failure to pay the spread of hours premium under the NYLL; (4) late payment of wages under the NYLL; and (5) failure to provide proper wage notices and statements as required by NYLL § 195. SAC ¶¶ 131-156.[1]

---

[1] While Plaintiff brought her wage and hour claims on a collective and class wide basis, the settlement agreement in this matter only relate to Plaintiff's individual claims.

In addition, Plaintiff has asserted discrimination claims under Title VII, the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL") and a retaliation claim under the NYLL. These claims are premised on two interrelated incidents that occurred at John Sullivan's in April 2023, and Plaintiff's allegation is that Defendants failed to take reasonable steps to protect her from sexual harassment and assault. *See* SAC ¶¶ 77-130. As a result of Defendants' alleged failures, Plaintiff contends that she was constructively discharged. SAC ¶¶ 128-130.

The parties' settlement agreement resolves all of Plaintiff's claims in this action for the settlement amount of $100,000.

### The Settlement Agreement is Fair and Reasonable

To determine whether an FLSA settlement is "fair and reasonable," the court considers five factors: "(1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *Zamora v. One Fifty Fifty Seven Corp.*, no. 14-cv-8043, 2016 U.S. Dist. LEXIS 49286, at *2 (S.D.N.Y. Apr. 1, 2016) (quoting *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)). As set forth more fully below, the settlement is fair and reasonable and thus should be approved. *See generally Cheeks v. Freeport Pancake House*, 796 F.3d 199 (2d Cir. 2015).

In determining whether the Settlement Agreement is fair and reasonable, the parties took into account that: (A) the parties strenuously dispute the amount that Plaintiff was paid and the amount of time Plaintiff worked for Defendants, (B) Defendants claim an inability to pay a larger settlement amount, and (C) the settlement provides for a full recovery of Plaintiff's alleged "overtime" damages without the inherent risk and time of litigation. *See generally, Mobley v Five Gems Mgt. Corp.*, 17-Civ.-9448 2018 US Dist. LEXIS 59104 at *4 (S.D.N.Y. April 6, 2018) (listing similar considerations).

The $100,000 settlement is reasonable in light of Plaintiff's maximum possible FLSA recovery. Plaintiff's maximum compensatory damages for her unpaid overtime under the FLSA and NYLL are $11,711.25, and she could receive an equal amount as liquidated damages. Her maximum compensatory damages for her NYLL-only minimum wage and spread of hours claims are $13,946.25, and she could recover and equal amount as liquidated damages. In addition, Plaintiff could recover $10,000 in penalties for her NYLL § 195(1), (3) claims. In sum, Plaintiff's maximum wage and hour damages are $61,315, of which $23,422.50 are FLSA damages. However, Plaintiff faces substantial risks in winning her maximum possible recovery. The parties vigorously dispute the accuracy of the time and pay records produced in this litigation, and because most of Plaintiff's claims require rejecting the accuracy of time and pay records produced, there is substantial risk for Plaintiff in going to trial on her claims. Accordingly, this settlement, which substantially exceeds Plaintiff's maximum possible FLSA and wage and hour recovery and will provide Plaintiff – after deducting attorneys' fees – with $66,400, which is more than her maximum possible wage and hour recovery, is fair and reasonable.

2

In addition, Plaintiff is reasonably concerned about Defendants' ability to pay. Defendants operate small bars Defendants contend are under financial hardship and could be forced to close. Thus, even if Plaintiff were to prevail at trial and was awarded a larger judgment, it is unclear whether Defendants would be able to pay it. In light of this serious risk, it is more than reasonable for Plaintiff to accept a sum-certain settlement now with a reasonable payment plan. *See, e.g. Villanueva v. 179 Third Avenue Rest. Inc.*, No. 16-cv-8782 (AJN), 2018 U.S. Dist. LEXIS 116379, at *5 (S.D.N.Y. July 12, 2018) ("Obstacles to collection may justify a reasonable settlement for an amount less than the maximum amount Plaintiffs might have recovered otherwise."); *see also Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y 2013) (collecting cases that "recognize[] that potential difficulty in collecting damages militates in favor of finding a settlement reasonable.").

Additionally, this settlement was the product of an extensive arms-length, and, at times, quite contentious negotiation between the parties. Thus, there is no reason to suspect fraud or collusion. Also, the settlement agreement itself does not contain any offensive confidentiality provisions or any impermissible releases. Plaintiff has agreed to release Defendants from Plaintiff's wage and hour and non-wage and hour employment claims, including discrimination claims. *See* Agreement ¶ 4. Notably here, Plaintiff has asserted non-wage and hour employment claims – *i.e.*, discrimination and retaliation claims – and thus, the release for all employment related claims is reasonable. *See e.g., Pascual v. Three Diamond Diner Corp.*, Case No. 21-CV-3333, 2023 U.S. Dist. LEXIS 18734, at *10-11 (S.D.N.Y. Feb. 3, 2023) (approving release of all claims arising out of Plaintiff's employment with Defendants because complaint asserted discrimination claims); *Lewis v. GB Sneakers Inc.*, Case No. 21 CV 4712, 2023 U.S. Dist. LEXIS 11504, at *3 (E.D.N.Y. Jan. 20, 2023) (approving release of claims not previously alleged in complaint, including discrimination claims, because settlement included additional payment beyond FLSA amount).

Finally, Plaintiff's attorneys' fees are reasonable and not excessive. Plaintiff's attorneys' fees and costs under the agreement are $33,600, which is 1/3 of the total settlement amount. This attorneys' fee award is less than Plaintiff's counsel's lodestar, which is $34,737.50. Plaintiff's counsel's time and labor warrants the requested fee. Among other things, Plaintiff counsel (1) met with the Plaintiff many times while prosecuting this case over the past year, (2) drafted and filed a wage and hour complaint, (3) drafted and filed an EEOC complaint, (4) obtained a right to sue letter from the EEOC, (5) successfully moved to amend the complaint to include discrimination claims, (6) prepared Plaintiff's discovery production for mediation (7) reviewed Defendants' discovery production, (8) successfully moved to obtain the production of class wide sample payroll records, (9) analyzed class wide document production and created individual and class wide damages estimates, (10) prepared for and attended a court ordered mediation, (11) moved for conditional collective certification, and (12) negotiated an individual settlement and moved for court approval of the settlement.

In total, Plaintiff's counsel spent at least 100.6 hours litigating this action, as reflected in the time records submitted herewith as Exhibit 2. Plaintiff's counsel exercised billing judgment to omit duplicative, vague, or otherwise excludable entries from Exhibit 2. Plaintiff's counsel also incurred $835.89 in costs in litigating this action, consisting of the $402 filing fee and $433.89 for service of process. Evidence of Plaintiff's costs are submitted herewith as Exhibit 3. Plaintiff's

counsel's total lodestar in this action is $34,737.50, which is more than the requested fee and cost award.[2] *See* Ex. 2. Thus, the $33,600 that is allocated to Plaintiff's counsel in the settlement agreement amounts to 96.73% of the fee lodestar amount, or 94.45% of the fee lodestar plus costs. Because this lodestar multiplier is less than one, this Court may find the "fees presumptively reasonable" and "need not assess the reasonableness of the rates charged." *Villanueva*, 2018 U.S. Dist. LEXIS 116379, at *8. Moreover, as discussed above, in this settlement Plaintiff is recovering, after attorneys' fees, far more than her maximum FLSA damages, and more even than her full wage and hour damages. Accordingly, the fee award is objectively reasonable.

Further, under Plaintiff's contingency fee engagement agreement, Plaintiff's counsel is entitled to request out of the total recovery one-third in attorneys' fees and the recovery of costs. The "percentage of the settlement amount" method for determining a reasonable fee is "appropriate and commonly applied in FLSA cases" in this Circuit. *Velasquez v. Digital Page, Inc.*, 2016 U.S. Dist. LEXIS 84554, at *4 (E.D.N.Y. June 28, 2016); *accord Fang Xiao v. Grand Sicuan Int'l St Marks, Inc.*, No. 14-cv-9063, 2016 U.S. Dist. LEXIS 99669, at *6–7 (S.D.N.Y. July 29, 2016) (applying the percentage of the fund method); *see also McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) (observing that "the trend in this Circuit is toward the percentage of

---

[2] Plaintiffs' counsel has extensive experience representing employees in wage and hour actions. Joseph & Kirschenbaum LLP ("JK") is a law firm dealing almost exclusively with employees' rights. Specifically, the firm represents employees in wage/hour and employment discrimination matters. The three billers in this case are Michael DiGiulio, Esq. (undersigned), Denise Schulman, Esq., and the paralegal Evelyn Valesaca. Plaintiff's counsel's attorney time is attached as Exhibit 2.

I graduated from Vermont Law School in 2014 and joined JK in 2020. Prior to joining JK, I clerked on the United States Court of Appeals for the Second Circuit and practiced environmental law as an associate attorney for Super Law Group. The majority of my docket at JK consists of individual and class/collective wage and hour actions, and employment discrimination/retaliation cases. My rate of $350 per hour is reasonable and has been approved in this District. *See e.g., Martinenko v. 212 Steakhouse, Inc.*, No. 22-CV-518 (S.D.N.Y. April 12, 2023) (Order at 33, attached as Ex. 5). Courts have also approved that rate for other attorneys with similar experience. *See Wen Bin Gao v. Lucky Brother Inc.*, Case No. 17-cv-8159, 2020 U.S. Dist. LEXIS 100811, at *4-7 (S.D.N.Y. June 9, 2020) (awarding associate rate of $350 in FLSA case); *Calixto v. Gomez Enters. USA Corp.*, Case No. 17-cv-9617, 2019 U.S. Dist. LEXIS 6592, at *5-6 (S.D.N.Y. Jan. 11, 2019) (awarding associate rate of $350 per hour for an attorney with 4 years of experience in an FLSA case). Mr. DiGiulio spent approximately 91.5 hours on this case, for a total of $32,025 (91.5 hours x $350 per hour).

Ms. Schulman received her J.D. from New York University School of Law in 2008 and joined JK in January 2009. Ms. Schulman was an associate at JK until February 2017, when she became a partner. Ms. Schulman's practice at JK has consisted almost entirely of representing employees in their claims against employers. She has extensive experience litigating wage and hour cases, including both individual and class actions, as well as other employment matters, including discrimination and retaliation cases. As a partner and experienced litigator, Ms. Schulman's rate of $500 per hour is reasonable. Courts in this District have recently approved an hourly rate of $500 for Ms. Schulman. *See e.g., Martinenko v. 212 Steakhouse, Inc.*, No. 22-CV-518 (S.D.N.Y. April 12, 2023) (Order at 31-33, attached as Ex. 5); *Zivkovic v. Laura Christy LLC*, No. 17 Civ. 553 (S.D.N.Y. June 15, 2023) at 16:16-19, 17:21-22 (transcript attached as Ex. 4). Ms. Schulman spent approximately 4.2 hours on this case, for a total of $2,100 (4.2 hours x $500 per hour).

Evelyn Velesaca was a paralegal at JK. Her rate of $125 per hour is reasonable. *See e.g., Rosales v. Gerasimos Entrs.* Case No. 16-CV-2278, 2018 U.S. Dist. LEXIS 1230 at *5 (S.D.N.Y. Jan. 3, 2018) (noting in 2018 that "in recent FLSA actions, hourly rates between $100 and $150 for paralegal work have been found to be reasonable"). Ms. Velesaca spent 4.9 hours on this case, for a total of $612.50.

the fund method"). Using this method, "attorneys' fee awards of one third or less of the total settlement amount are generally accepted" in this Circuit. *Cionca v. Interactive Realty, LLC*, No. 15-cv-5123, 2016 U.S. Dist. LEXIS 77372, at *5 (S.D.N.Y. June 10, 2016); *see also Torres v. Gristede's Operating Corp.*, 519 F. App'x 1, 5 (2d Cir. 2013) (characterizing one-third as the "standard contingency-fee level[]" in FLSA case); *Zeng Xiang Hiang v. Ai Chu Chiang*, No. 16-cv-1129 (HBP), 2016 U.S. Dist. LEXIS 142670, at *7 (S.D.N.Y. Oct. 14, 2016) ("Contingency fees of one third in FLSA cases are routinely approved in this Circuit.") (citing cases); *Cortes v. New Creators, Inc.*, No. 15 Civ. 5680 (PAE), 2016 U.S. Dist. LEXIS 79757, at *5 (S.D.N.Y. June 20, 2016) (fee award of one-third of settlement "consistent with contingency fees that are commonly accepted in the Second Circuit in FLSA cases" (quotation omitted)).

    For the foregoing reasons, Plaintiff requests that the Court approve the settlement agreement and so order the stipulation of dismissal. We thank the Court for its attention to this matter.

                            Respectfully Submitted,

                            /s Michael DiGiulio
                            Michael DiGiulio
                            Joseph & Kirschenbaum LLP
                            32 Broadway, Suite 601
                            New York, NY 10004
                            Tel: 212-688-564
                            *Attorneys for Plaintiff*

---

Application GRANTED.  The Court will enter the stipulation of dismissal by separate order.

SO ORDERED.
                            3/14/2024

*[signature: Valerie Caproni]*

HON. VALERIE CAPRONI
UNITED STATES DISTRICT JUDGE

---

EXHIBIT  1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------x
FAITH MABRY, on behalf of herself and        CASE NO. 23 CV 5468
others similarly situated,

               Plaintiff,

     v.

LAML, LLC d/b/a JOHN SULLIVAN'S
BAR & GRILL; 240 BBJ PUB INC., d/b/a
JACK DOYLE'S PUB & RESTAURANT;
5050 HP LLC, d/b/a THE TAILOR
PUBLIC HOUSE & KITCHEN;
BRENDAN CREEGAN ; and JOHN
CREEGAN,
               Defendants.
-----------------------------------------------------x

## <u>SETTLEMENT AGREEMENT AND RELEASE</u>

       Plaintiffs Faith Mabry ("Mabry" or "Plaintiff") and Defendants LAML, LLC, 240 BBJ Pub Inc., 5050 HP LLC, Brendan Creegan, and John Creegan (collectively, "Defendants," and together with Plaintiff, the "Parties") hereby agree upon this Settlement Agreement and Release ("Agreement") as a settlement of all issues involved herein as follows:

       **WHEREAS,** Plaintiff has pending against Defendants an action in the United States District Court for the Southern District of New York bearing Case Number 23 CV 5468 (hereinafter, the "Action") alleging violations of the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL"), related regulations, Title VII, the New York State Human Rights Law, and the New York City Human Rights Law;

       **WHEREAS,** Defendants have filed an Answer with the Court, denying all allegations in the Complaint, denying Plaintiff's entitlement to any relief whatsoever against Defendants, and asserting a number of affirmative defenses;

       **WHEREAS,** the Parties, through counsel, negotiated in good faith to reach a settlement that is acceptable to the Parties and that constitutes a reasonable resolution  of Plaintiff's claims, Defendants' defenses, and the *bona fide* dispute between the Parties.

       **NOW, THEREFORE,** in consideration of the mutual promises and covenants set forth herein, the receipt and sufficiency of which is hereby acknowledged, and incorporating the above "Whereas" clauses in this Agreement, Plaintiff, on behalf of herself and all of her heirs, executors, administrators and assigns, and Defendants agree as follows:

1.      <u>Dismissal of Action</u>

For and in consideration of the promises of Defendants set forth in this Agreement, the Parties agree to dismiss, or cause to be dismissed, the Action with prejudice. To that end, the Parties shall sign the Stipulation and Order of Dismissal annexed hereto as Exhibit A. Upon execution of this Agreement, Plaintiff shall submit this Agreement and the Stipulation and Order of Dismissal to the Court for approval.

## 2.    Payment/Consideration.

(a)    In consideration of the execution of this Agreement and promises and covenants contained herein, and in full, final, and complete settlement, the Parties acknowledge and agree that this Action is settled and resolved for the gross total amount of One Hundred Thousand Dollars and No Cents ($100,000.00) (the "Settlement Sum"), inclusive of attorneys' fees, costs, and expenses to be paid entirely by Defendants. The Settlement Sum shall be allocated as follows:

      a.  $16,600 payable to Faith Mabry representing alleged unpaid wages which shall be subject to applicable federal, state, and local withholding taxes and reported on an IRS Form W-2. Payments of this portion of the Settlement Sum shall be made by checks payable to Faith Mabry and shall be referred to as "W-2 Payments."

      b.  $49,800 payable to Faith Mabry representing alleged liquidated damages, interest, and damages for emotional distress, which shall be reported on an IRS Form 1099-MISC as "other income." Payments of this portion of the Settlement Sum shall be made by checks payable to Faith Mabry and shall be referred to as "1099 Payments."

      c.  $33,600. payable to Joseph & Kirschenbaum LLP for attorneys' fees and costs. Payments of this portion of the Settlement Sum shall be made by checks payable to Joseph & Kirschenbaum LLP and shall be referred to as "Attorneys' Fee Payments."

(b) Defendants shall pay the Settlement Sum on the following schedule:

| Payment deadline | W-2 Payment amount | 1099 Payment amount | Attorneys' Fee Payment amount |
| --- | --- | --- | --- |
| 7 days after Court approval of the settlement | $15,000.00 | $0 | $0 |
| 37 days after Court approval of the settlement | $1,600 | $5,483 | $0 |
| 67 days after Court approval of the settlement | $0 | $7,084 | $0 |
| 97 days after Court approval of the settlement | $0 | $7,084 | $0 |
| 127 days after Court approval of the settlement | $0 | $7,084 | $0 |
| 157 days after Court approval of the settlement | $0 | $7,083 | $0 |

2

| | | | |
|---|---|---|---|
| 187 days after Court approval of the settlement | $0 | $7,083 | $0 |
| 217 days after Court approval of the settlement | $0 | $7,083 | $0 |
| 247 days after Court approval of the settlement | $0 | $1,816 | $5,267 |
| 277 days after Court approval of the settlement | $0 | $0 | $7,083 |
| 307 days after Court approval of the settlement | $0 | $0 | $7,083 |
| 337 days after Court approval of the settlement | $0 | $0 | $7,083 |
| 367 days after Court approval of the settlement | $0 | $0 | $7,084 |

    (c) If any payment deadline falls on a Saturday, Sunday, or federal holiday, the deadline shall be advanced to the next business day.

    (d) All settlement checks shall be delivered to Michael DiGiulio, Joseph & Kirschenbaum LLP, 32 Broadway, Suite 601, New York, NY 10004.

## 3.   Default & Confession of Judgment.

    (a)   **Effect of Failure to Make Timely Payments.**  In the event that Defendants fail to make a timely payment according to the schedule set forth in Paragraph 2 of this Agreement, the Settlement Sum (less any payments made), shall come immediately due and payable, subject to the notice and cure terms outlined in Paragraph 3(c) herein.

(b)   **Confession of Judgment.**  Simultaneously with the execution of this Agreement, each Defendant shall deliver to Plaintiff's counsel an original copy of an executed affidavit for confession of judgment in the amount of the Settlement Sum of $100,000, less any payments made in the form attached hereto as Exhibit B. The affidavits for confession of judgment must bear original signatures, as opposed to copied or electronic signatures.  Plaintiff's counsel shall hold the affidavits for confession of judgment in escrow and shall not file them in any court unless and until Defendants default in the payment of the Settlement Sum and fail to cure their default in accordance with the notice and cure provisions set forth in Paragraph 3(c).  Upon full payment of the Settlement Sum, Plaintiff's counsel shall destroy or return the original copy of the affidavits for confession of judgment to Defendants' counsel and shall not retain any copies thereof. Each Confession of Judgment may be filed separately, however, the total sum that can be collected against Defendants jointly and or severally pursuant to the four (4) Confessions of Judgment, cannot exceed the Settlement Sum of $100,000.00 less any payments made by Defendants, plus reasonable attorney's fees and costs incurred

(c)   **Notice to Cure.**  If Defendants fail to make any of the payments required under this Agreement, Plaintiffs shall notify Defendants' counsel Michael Chong, Esq. via e-mail to mkc@mkclawgroup.com of Defendants' default.  If Defendants do not cure the default within

seven (7) business days of the notice, all monies owed under this Agreement, less any payments made, shall be immediately due in their entirety, and Plaintiff may file the affidavits for confession of judgment.

       (c)      **Attorneys' Fees and Costs.**  Plaintiff shall be entitled to her reasonable attorneys' fees and costs incurred in effecting the confession of judgment and collecting on a judgment.  In the event of any litigation to enforce a breach of this Agreement by any party, the prevailing party shall be entitled to receive reasonable attorneys' fees and costs up through and including the appellate process.

## 4.    <u>Release.</u>

Plaintiff, on behalf of herself and her heirs, executors, administrators, successors and assigns ("Plaintiff's Releasors"), voluntarily releases and forever discharges Defendants, their parent corporations, subsidiaries, divisions, affiliated entities, and their owners, agents, attorneys, insurers, reinsurers, predecessors, successors and assigns, and their employee benefit plans and programs and their administrators and fiduciaries, both individually and in their official capacities (collectively "Defendants' Releasees") of and from any and all claims asserted in the Action and any and all claims relating to the allegations made by Plaintiff in the Action, including but not limited to claims arising under the Fair Labor Standards Act, New York Labor Law, New York Hospitality Wage Order, Title VII, New York State Human Rights Law, and New York City Human Rights Law, along with any and all gender based claims, retaliation claims, and any and all claims relating to Plaintiff's non-wage employment claims against Defendants. This release shall not apply to those claims, including Workers' Compensation claims, if any, that cannot be released as a matter of law under controlling legal authorities.

## 5.    <u>Plaintiff's Responsibility for Taxes.</u>

(a)    Plaintiff assumes full responsibility for the payment of any and all federal, state and local taxes or contributions which may hereafter be imposed or required to be paid by Plaintiff under any federal or state laws of any kind, with respect to the monies paid by Defendants to Plaintiff pursuant to this Agreement.  Plaintiff expressly acknowledges and warrants that she is, and shall be, responsible for all federal, state, and local tax liabilities which are attributable to her that may result from the payments under this Agreement, and Plaintiff warrants that Defendants shall bear no responsibility for any such tax liabilities, except for the employers' payroll tax contributions (such as FICA) for which Defendants may be liable. Plaintiff agrees to indemnify and hold harmless the Defendants for any taxes, penalties, interest assessed or costs incurred (including but not limited to legal fees) as a result of an audit by the taxing authorities inasmuch as any taxes, penalties or interest assessed are directly related to the payment made in satisfaction of this settlement. Plaintiff will provide her tax ID (via a completed W-9) to Defendants' counsel upon execution of this Settlement Agreement.

(b)    Plaintiff's counsel agrees to be responsible for any taxes associated with the settlement payment made to Plaintiff's counsel hereunder. Plaintiff's counsel agrees to indemnify and hold harmless the Defendants for any taxes, penalties or interest assessed as a result of an audit by the taxing authorities inasmuch as any taxes, penalties or interest assessed are directly related to the

payments to Plaintiff's counsel made in satisfaction of this settlement. Plaintiff's counsel will provide their law firm's tax ID (via a completed W-9) to Defendants' counsel upon execution of this Settlement Agreement.

**6.**     <u>**Non-Admission.**</u>

This Agreement does not constitute an admission that Defendants have violated any law, committed any tort, breached any agreement, or committed any wrongdoing whatsoever, and Plaintiff expressly acknowledges that Defendants have denied and continue to deny any wrongdoing arising out of Plaintiff's employment and separation thereof as well as any liability to Plaintiff or to anyone else. Neither this Agreement nor any of its terms shall be admissible in any proceeding other than in a proceeding to enforce the terms of this Agreement. Defendants have sought to enter this Settlement Agreement solely to resolve this litigation and avoid further expense and costs.

**7.**     <u>**Attorneys' Fees.**</u>

Except as otherwise specifically set forth herein, Plaintiff and Defendants expressly agree to bear their own attorneys' fees, costs and disbursements incurred in this litigation, including the fees, costs and disbursements incurred in negotiating and preparing this Agreement and obtaining the dismissal of the Action with prejudice. No party shall be responsible or liable for the payment of any attorneys' fees for the other party except as set forth herein.

**8.**     <u>**Important Acknowledgments.**</u>

Plaintiff acknowledges that she was represented by counsel of her choosing throughout the negotiation and the execution of the Agreement. Plaintiff further represents that she had sufficient opportunity to consider this Agreement, has reviewed the terms of this Agreement, had the opportunity to confer with her legal counsel, Joseph & Kirschenbaum LLP, in order to obtain advice with respect to the terms of this Agreement, had the opportunity to consider her legal counsel's advice with respect to the Agreement, fully understand the terms of the Agreement, is entering into this Agreement of her own free will and accord after consultation with her legal counsel, and is signing the Agreement knowingly and voluntarily.

It is understood and agreed that the Settlement Sum and the other good and valuable consideration provided for herein are not a mere recital but are the consideration for this Agreement and all terms herein, including the full and final release effected thereby. Plaintiff's counsel represents and warrants that this Agreement, including the monies received by Plaintiff and referenced herein, is a fair and reasonable resolution of a *bona fide* dispute over provisions of the Fair Labor Standards Act and/or time worked, and all claims in Plaintiff's Complaint.

**9.**     <u>**Oral Modifications Prohibited.**</u>

This Agreement represents the entire agreement between Plaintiff and Defendants with respect to the Action. This Agreement cannot be amended, supplemented, or modified nor may

any provision be waived, except by a written instrument executed by or on behalf of the party against whom enforcement of any such amendment, supplement, modification or waiver is sought.

**10.     Choice of Law.**

This Agreement shall be governed by the law of the State of New York, without regard to the choice-of-law or conflicts-of-law principles of any jurisdiction. This court shall retain jurisdiction as to enforcement of the Settlement Agreement.

**11.     Effective Date.**

This Agreement shall become immediately effective upon execution of all Parties.

**12.     Headings.**

The headings used herein are for reference only and shall not in any way affect the meaning or interpretation of this Agreement.

**13.     Counterparts.**

This Agreement may be executed on multiple counterparts, each of which shall be considered an original but all of which shall constitute one (1) Agreement.

**14.     Facsimile and Email Signatures.**

Any party may execute this Agreement by signing or electronically signing on the designated signature block below and transmitting or causing to be transmitted that signature page via facsimile or email to counsel for the other party.  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.  This Paragraph 14 does not apply to the signatures on the affidavits for confession of judgment, which must bear original signatures and not facsimile or e-mailed signatures.

**15.     Severability.**

The invalidity or unenforceability of any provision(s) of this Agreement (other than Paragraph 2) shall not affect the validity or enforceability of any other provision of this Agreement, which shall remain in full force and effect.  In the event that a court of competent jurisdiction determines that Paragraph 2 is invalid or unenforceable, then all monies paid hereunder must be returned immediately to Defendants.

**16.     Status of Settlement if Case Is Not Ultimately Dismissed**.

In the event that the Court fails to dismiss the Action with prejudice as contemplated by this Agreement, this Agreement shall be null and void *ab initio*.  In such case, the Parties shall be

returned to their respective statuses as of the date immediately prior to the Effective Date of this Agreement, and any monies paid by Defendants to Plaintiff and Plaintiff's counsel must be immediately returned, and the Parties shall proceed in all respects as if the Agreement had not been executed.

17.     **No Other Representations or Agreements; Entire Agreement.**

Each party acknowledges that, except as expressly set forth herein, no representations of any kind or character have been made by any other party or parties, agents, representatives, or attorneys to induce the execution of this Agreement. This Agreement constitutes a single integrated contract expressing the entire agreement of the Parties hereto. There is no other agreement or understanding, written or oral, expressed or implied, among the Parties hereto concerning the subject matter hereof, except the agreements set forth in this Agreement. This Agreement constitutes and contains the entire agreement among the Parties and supersedes and replaces all prior negotiations and agreements, proposed or otherwise, written or oral, concerning the subject matter hereof. This Agreement is an integrated document.

**IN WITNESS WHEREOF,** the Parties hereto have executed, or caused their duly authorized officers to execute, this Agreement as of the dates set forth below.

_____
Faith Mabry

Date: 3/7/2024 _____, 2024


_____
LAML, LLC
By:  Brendan Creegan
Title:  Member

Date: 3/7 _____, 2024


_____
240 BBJ Pub Inc.
By:  Brendan Creegan
Title:  Owner

Date: 3/7 _____, 2024


_____
5050 HP LLC
By:  Brendan Creegan
Title:  Member

Date: 3/7 _____, 2024


_____

Date: 3/7 _____, 2024

7

Brendan Creegan

John Creegan       Date: 3/7/24 , 2024
John Creegan

8

# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
FAITH MABRY, on behalf of herself and          CASE NO. 23 CV 5468
others similarly situated,

                    Plaintiff,

            v.

LAML, LLC d/b/a JOHN SULLIVAN'S
BAR & GRILL; 240 BBJ PUB INC., d/b/a
JACK DOYLE'S PUB & RESTAURANT;
5050 HP LLLC, d/b/a THE TAILOR
PUBLIC HOUSE & KITCHEN;
BRENDAN CREEGAN; and JOHN
CREEGAN,
                    Defendants.
-------------------------------------------------------x

## STIPULATION AND ORDER OF DISMISSAL WITH PREJUDICE

IT IS HEREBY STIPULATED that this action has been discontinued and is hereby

dismissed with prejudice and without costs to any party against any other.  The Court retains

jurisdiction to enforce the Parties' Settlement.  This Stipulation may be filed with the Court without

further notice to any party.

Dated: New York, New York

_____, 2024


**JOSEPH & KIRSCHENBAUM LLP**          **LAW OFFICES OF MICHAEL K CHONG, LLC**

By: *Mike DiGiulio*                    By: s/ *Michael K. Chong*
Michael DiGiulio, Esq.                 Michael K. Chong, Esq.
32 Broadway, Suite 601                 2 Executive Drive, Suite 240
New York, New York 10004               Fort Lee, NJ 07024

*Attorneys for Plaintiffs*             *Attorneys for Defendants*

                                       **So Ordered**

                                       _____
                                       Hon. Valerie E. Caproni (U.S.D.J.)

1

# Exhibit B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
FAITH MABRY, on behalf of herself and                    CASE NO. 23 CV 5468
others similarly situated,

               **Plaintiff,**

    v.

LAML, LLC d/b/a JOHN SULLIVAN'S
BAR & GRILL; 240 BBJ PUB INC., d/b/a
JACK DOYLE'S PUB & RESTAURANT;
5050 HP LLLC, d/b/a THE TAILOR
PUBLIC HOUSE & KITCHEN;
BRENDAN CREEGAN; and JOHN
CREEGAN,
               **Defendants.**
---------------------------------------------------------x

## AFFIDAVIT FOR CONFESSION OF JUDGMENT

STATE OF NEW YORK    )
                       ) ss.:
COUNTY OF _____  )

_____, being duly sworn, deposes and says:

    1.    I am the _____Owner_____ of LAML, LLC, a Defendant in the above-captioned action.

    2.    LAML, LLC's address is _210 w 35th ST NYNY 10001_

    3.    I make this affidavit pursuant to 3218 of the New York Civil Practice Law and Rules, in support of Plaintiff's application for the entry of a judgment by confession against LAML, LLC.

    4.    This is a judgment to be confessed for money due. The facts out of which the debt arose and the sum confession due is set forth below.

    5.    Plaintiff's lawsuit (the "Lawsuit") alleged that Defendants (1) failed to pay Plaintiff properly for all overtime hours worked; (2) failed to pay Plaintiff all minimum wage compensation

due; (3) failed to pay Plaintiff spread of hours compensation; (4) failed to provide Plaintiff with the wage statements and wage notices required under New York law; (5) discriminated against Plaintiff based on her gender; and (6) retaliated against Plaintiff for complaining about discrimination.

6.      Defendants filed an Answer denying all allegations in the Lawsuit, denying Plaintiff's entitlement to any relief whatsoever against Defendants, and interposing a number of affirmative defenses.

7.      In or around February 2024, the parties executed a Settlement Agreement and Release ("Agreement") in which the Defendants agreed to pay One Hundred Thousand Dollars ($100,000.00) consisting of monthly payments to be paid on a monthly basis beginning seven (7) days after dismissal of the Lawsuit.

8.      Under the terms of the Agreement, if Defendants are in default in the payment of any of the installments, Plaintiff shall notify Defendants of the default, and Defendants shall have seven (7) business days to remedy their default.

9.      If Defendants do not remedy their default within seven (7) business days of receipt of such notice, I hereby authorize the entry of judgment in the amount of One Hundred Thousand Dollars ($100,000.00), plus all reasonable attorneys' fees and costs incurred by Plaintiff in collecting this sum, and less any payments made by Defendants under the Agreement.

10.     I hereby represent my understanding that upon Defendants' breach of the Settlement Agreement and failure to cure, this Confession of Judgment shall be docketed and entered in a court of compentent jurisdiction, as a judgment for One Hundred Thousand dollars ($100,000) (less any amounts already paid to Plaintiff and Plaintiff's counsel pursuant to the Settlement Agreement), jointly and or severally against: LAML, LLC d/b/a JOHN SULLIVAN'S

2

BAR & GRILL; 240 BBJ PUB INC., d/b/a JACK DOYLE'S PUB & RESTAURANT; 5050 HP

LLLC, d/b/a THE TAILOR PUBLIC HOUSE & KITCHEN; BRENDAN CREEGAN; and JOHN

CREEGAN.

11.     Each of the four (4) Confessions of Judgment in this matter may be filed separately,

however, the total sum that can be collected against Defendants jointly and or severally pursuant

to the four (4) Confessions of Judgment, cannot exceed the Settlement Sum of $100,000.00 less

any payments made by Defendants, plus reasonable attorney's fees and costs incurred.


Dated: New York, New York                    By: _____
       _____MARCH 8_____, 2024               LAML, LLC
                                                  Name: Brendan Creegan
                                                  Title:  member

       Sworn to before me this

       8th  day of _____MARCH_____, 2024

       _____
       Notary Public

              ZUNAIR AHMAD
       NOTARY PUBLIC-STATE OF NEW YORK
              No. 01AH0007009
            Qualified in Kings County
       My Commission Expires 05-05-2027

3

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------x
FAITH MABRY, on behalf of herself and            **CASE NO. 23 CV 5468**
others similarly situated,

           **Plaintiff,**
    v.

**LAML, LLC d/b/a JOHN SULLIVAN'S**
**BAR & GRILL; 240 BBJ PUB INC., d/b/a**
**JACK DOYLE'S PUB & RESTAURANT;**
**5050 HP LLLC, d/b/a THE TAILOR**
**PUBLIC HOUSE & KITCHEN;**
**BRENDAN CREEGAN; and JOHN**
**CREEGAN,**
           **Defendants.**
-----------------------------------------------------x

### AFFIDAVIT FOR CONFESSION OF JUDGMENT

STATE OF NEW YORK    )
                  ) ss.:
COUNTY OF _____   )

_____, being duly sworn, deposes and says:

1.    I am the _____Owner_____ of 240 BBJ Pub Inc., a Defendant in the above-captioned action.

2.    240 BBJ Pub Inc.'s address is 240 W 35th ST NY NY 10001.

3.    I make this affidavit pursuant to 3218 of the New York Civil Practice Law and Rules, in support of Plaintiff's application for the entry of a judgment by confession against 240 BBJ Pub Inc.

4.    This is a judgment to be confessed for money due. The facts out of which the debt arose and the sum confession due is set forth below.

5.    Plaintiff's lawsuit (the "Lawsuit") alleged that Defendants (1) failed to pay Plaintiff properly for all overtime hours worked; (2) failed to pay Plaintiff all minimum wage compensation

1

due; (3) failed to pay Plaintiff spread of hours compensation; (4) failed to provide Plaintiff with the wage statements and wage notices required under New York law; (5) discriminated against Plaintiff based on her gender; and (6) retaliated against Plaintiff for complaining about discrimination.

6.      Defendants filed an Answer denying all allegations in the Lawsuit, denying Plaintiff's entitlement to any relief whatsoever against Defendants, and interposing a number of affirmative defenses.

7.      In or around February 2024, the parties executed a Settlement Agreement and Release ("Agreement") in which the Defendants agreed to pay One Hundred Thousand Dollars ($100,000.00) consisting of monthly payments to be paid on a monthly basis beginning seven (7) days after dismissal of the Lawsuit.

8.      Under the terms of the Agreement, if Defendants are in default in the payment of any of the installments, Plaintiff shall notify Defendants of the default, and Defendants shall have seven (7) business days to remedy their default.

9.      If Defendants do not remedy their default within seven (7) business days of receipt of such notice, I hereby authorize the entry of judgment in the amount of One Hundred Thousand Dollars ($100,000.00), plus all reasonable attorneys' fees and costs incurred by Plaintiff in collecting this sum, and less any payments made by Defendants under the Agreement.

10.     . I hereby represent my understanding that upon Defendants' breach of the Settlement Agreement and failure to cure, this Confession of Judgment shall be docketed and entered in a court of compentent jurisdiction, as a judgment for One Hundred Thousand dollars ($100,000) (less any amounts already paid to Plaintiff and Plaintiff's counsel pursuant to the Settlement Agreement), jointly and or severally

against: LAML, LLC d/b/a JOHN SULLIVAN'S BAR & GRILL; 240 BBJ PUB INC., d/b/a

JACK DOYLE'S PUB & RESTAURANT; 5050 HP LLLC, d/b/a THE TAILOR PUBLIC

HOUSE & KITCHEN; BRENDAN CREEGAN; and JOHN CREEGAN.

11.      Each of the four (4) Confessions of Judgment in this matter may be filed

separately, however, the total sum that can be collected against Defendants jointly and or severally

pursuant to the four (4) Confessions of Judgment, cannot exceed the Settlement Sum of

$100,000.00 less any payments made by Defendants, plus reasonable attorney's fees and costs

incurred.

Dated: New York, New York

    _MARCH 08_____, 2024

By: _____

240 BBJ Pub Inc.

Name: Brendan Creegan

Title: owner

Sworn to before me this

_8_ day of ____MARCH_____, 2024

_____

Notary Public

ZUNAIR AHMAD
NOTARY PUBLIC-STATE OF NEW YORK
No. 01AH0007009
Qualified in Kings County
My Commission Expires 05-05-2027

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
FAITH MABRY, on behalf of herself and
others similarly situated,

                **Plaintiff,**

     v.                                 **CASE NO. 23 CV 5468**

LAML, LLC d/b/a JOHN SULLIVAN'S
BAR & GRILL; 240 BBJ PUB INC., d/b/a
JACK DOYLE'S PUB & RESTAURANT;
5050 HP LLLC, d/b/a THE TAILOR
PUBLIC HOUSE & KITCHEN;
BRENDAN CREEGAN; and JOHN
CREEGAN,
                **Defendants.**
-----------------------------------------------------x

## AFFIDAVIT FOR CONFESSION OF JUDGMENT

STATE OF NEW YORK    )
                              ) ss.:
COUNTY OF _____    )

_____, being duly sworn, deposes and says:

1.     I am the ___Owner___ of 5050 HP LLC, a Defendant in the above-captioned action.

2.     5050 HP LLC's address is _505 8th Avenue NY, NY 10018_.

3.     I make this affidavit pursuant to 3218 of the New York Civil Practice Law and Rules, in support of Plaintiff's application for the entry of a judgment by confession against 5050 HP LLC.

4.     This is a judgment to be confessed for money due.  The facts out of which the debt arose and the sum confession due is set forth below.

5.     Plaintiff's lawsuit (the "Lawsuit") alleged that Defendants (1) failed to pay Plaintiff properly for all overtime hours worked; (2) failed to pay Plaintiff all minimum wage compensation

4

due; (3) failed to pay Plaintiff spread of hours compensation; (4) failed to provide Plaintiff with the wage statements and wage notices required under New York law; (5) discriminated against Plaintiff based on her gender; and (6) retaliated against Plaintiff for complaining about discrimination.

6.      Defendants filed an Answer denying all allegations in the Lawsuit, denying Plaintiff's entitlement to any relief whatsoever against Defendants, and interposing a number of affirmative defenses.

7.      In or around February 2024, the parties executed a Settlement Agreement and Release ("Agreement") in which the Defendants agreed to pay One Hundred Thousand Dollars ($100,000.00) consisting of monthly payments to be paid beginning seven (7) business days after dismissal of the Lawsuit.

8.      Under the terms of the Agreement, if Defendants are in default in the payment of any of the installments, Plaintiff shall notify Defendants of the default, and Defendants shall have seven (7) business days to remedy their default.

9.      If Defendants do not remedy their default within seven (7) days of receipt of such notice, I hereby authorize the entry of judgment in the amount of One Hundred Thousand Dollars ($100,000.00), plus all reasonable attorneys' fees and costs incurred by Plaintiff in collecting this sum, and less any payments made by Defendants under the Agreement.

10.      I hereby represent my understanding that upon Defendants' breach of the Settlement Agreement and failure to cure, this Confession of Judgment shall be docketed and entered in a court of compentent jurisdiction, as a judgment for One Hundred Thousand dollars ($100,000) (less any amounts already paid to Plaintiff and Plaintiff's counsel pursuant to the Settlement Agreement), jointly and or severally

5

against: LAML, LLC d/b/a JOHN SULLIVAN'S BAR & GRILL; 240 BBJ PUB INC., d/b/a

JACK DOYLE'S PUB & RESTAURANT; 5050 HP LLLC, d/b/a THE TAILOR PUBLIC

HOUSE & KITCHEN; BRENDAN CREEGAN; and JOHN CREEGAN.

11.         Each of the four (4) Confessions of Judgment in this matter may be filed

separately, however, the total sum that can be collected against Defendants jointly and or severally

pursuant to the four (4) Confessions of Judgment, cannot exceed the Settlement Sum of

$100,000.00 less any payments made by Defendants, plus reasonable attorney's fees and costs

incurred.

Dated: New York, New York                     By:  _____
       _MARCH 08_____, 2024                          5050 HP LLC
                                                     Name: _Brendan Creegan_
                                                     Title: _member_

       Sworn to before me this

       _8th_ day of ___MARCH_____, 2024

       _____
       Notary Public

                    ZUNAIR AHMAD
            NOTARY PUBLIC-STATE OF NEW YORK
                   No. 01AH0007009
                 Qualified in Kings County
            My Commission Expires 05-05-2027

                            6

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------x
FAITH MABRY, on behalf of herself and                          **CASE NO. 23 CV 5468**
others similarly situated,

      **Plaintiff,**

  **v.**

LAML, LLC d/b/a JOHN SULLIVAN'S
BAR & GRILL; 240 BBJ PUB INC., d/b/a
JACK DOYLE'S PUB & RESTAURANT;
5050 HP LLLC, d/b/a THE TAILOR
PUBLIC HOUSE & KITCHEN;
BRENDAN CREEGAN; and JOHN
CREEGAN,
     **Defendants.**
------------------------------------------------------x

### AFFIDAVIT FOR CONFESSION OF JUDGMENT

    STATE OF NEW YORK  )
             ) ss.:
    COUNTY OF _____ )

Brendan Creegan, being duly sworn, deposes and says:

  1.  My address is _52 Juniper St  Dumont. NJ 07628_

  2.  I make this affidavit pursuant to 3218 of the New York Civil Practice Law and

Rules, in support of Plaintiff's application for the entry of a judgment by confession against me.

  3.  This is a judgment to be confessed for money due.  The facts out of which the debt

arose and the sum confession due is set forth below.

  4.  Plaintiff's lawsuit (the "Lawsuit") alleged that Defendants (1) failed to pay Plaintiff

properly for all overtime hours worked; (2) failed to pay Plaintiff all minimum wage compensation

due; (3) failed to pay Plaintiff spread of hours compensation; (4) failed to provide Plaintiff with

the wage statements and wage notices required under New York law; (5) discriminated against

1

Plaintiff based on her gender; and (6) retaliated against Plaintiff for complaining about discrimination.

5.      Defendants filed an Answer denying all allegations in the Lawsuit, denying Plaintiff's entitlement to any relief whatsoever against Defendants, and interposing a number of affirmative defenses.

6.      In or around February 2024, the parties executed a Settlement Agreement and Release ("Agreement") in which the Defendants agreed to pay One Hundred Thousand Dollars ($100,000.00) consisting of monthly payments to be paid beginning seven (7) days after dismissal of the Lawsuit.

7.      Under the terms of the Agreement, if Defendants are in default in the payment of any of the installments, Plaintiff shall notify Defendants of the default, and Defendants shall have seven (7) business days to remedy their default.

8.      If Defendants do not remedy their default within seven (7) business days of receipt of such notice, I hereby authorize the entry of judgment in the amount of One Hundred Thousand Dollars ($100,000.00), plus all reasonable attorneys' fees and costs incurred by Plaintiff in collecting this sum, and less any payments made by Defendants under the Agreement.

9.      I hereby represent my understanding that upon Defendants' breach of the Settlement Agreement and failure to cure, this Confession of Judgment shall be docketed and entered in a court of compentent jurisdiction, as a judgment for One Hundred Thousand dollars ($100,000) (less any amounts already paid to Plaintiffs pursuant to the Settlement Agreement), jointly and or severally against: LAML, LLC d/b/a JOHN SULLIVAN'S BAR & GRILL; 240 BBJ PUB INC., d/b/a JACK DOYLE'S PUB &

RESTAURANT; 5050 HP LLLC, d/b/a THE TAILOR PUBLIC HOUSE & KITCHEN; BRENDAN CREEGAN; and JOHN CREEGAN.

11.      Each of the four (4) Confessions of Judgment in this matter may be filed separately, however, the total sum that can be collected against Defendants jointly and or severally pursuant to the four (4) Confessions of Judgment, cannot exceed the Settlement Sum of $100,000.00 less any payments made by Defendants, plus reasonable attorney's fees and costs incurred.


Dated: New York, New York                                By: _____
        _MARCH 08_____, 2024                                  Brendan Creegan
        Sworn to before me this

        _8_ day of ___MARCH_____, 2024

        _____
        Notary Public


                ZUNAIR AHMAD
        NOTARY PUBLIC-STATE OF NEW YORK
                No. 01AH0007009
            Qualified in Kings County
        My Commission Expires 05-05-2027

3

# EXHIBIT  2

| Biller | Date | Description | Time | Rate | Total | |
|---|---|---|---|---|---|---|
| Denise Schulman | 03/13/2024 | Discuss Cheeks application with Mike | 0.20 | $500.00 | $100.00 | |
| Denise Schulman | 02/23/2024 | Review letter to court | 0.10 | $500.00 | $50.00 | |
| Denise Schulman | 02/21/2024 | Draft settlement agreement | 0.90 | $500.00 | $450.00 | |
| Denise Schulman | 02/12/2024 | Discuss settlement offer with Mike | 0.10 | $500.00 | $50.00 | |
| Denise Schulman | 01/31/2024 | Discuss settlement offer with Mike | 0.10 | $500.00 | $50.00 | |
| Denise Schulman | 01/26/2024 | Review/edit 216(b) brief | 0.30 | $500.00 | $150.00 | |
| Denise Schulman | 01/26/2024 | Research FLSA calculation of tip credit overtime rate | 0.10 | $500.00 | $50.00 | |
| Denise Schulman | 01/25/2024 | Review/edit 216(b) motion | 0.40 | $500.00 | $200.00 | |
| Denise Schulman | 01/25/2024 | Review paystubs/discuss overtime rate with Mike | 0.10 | $500.00 | $50.00 | |
| Denise Schulman | 01/25/2024 | Research for 216(b) motion | 0.40 | $500.00 | $200.00 | |
| Denise Schulman | 11/30/2023 | Research tip credit notice requirements | 0.20 | $500.00 | $100.00 | |
| Denise Schulman | 11/27/2023 | Discuss damage calc with Mike | 0.20 | $500.00 | $100.00 | |
| Denise Schulman | 08/23/2023 | Discuss amending complaint with Mike | 0.10 | $500.00 | $50.00 | |
| Denise Schulman | 08/07/2023 | Discuss class discovery with Mike | 0.10 | $500.00 | $50.00 | |
| Denise Schulman | 08/01/2023 | Call with Mike re: class discovery issue | 0.20 | $500.00 | $100.00 | |
| Denise Schulman | 07/26/2023 | Discuss sample discovery with Mike | 0.10 | $500.00 | $50.00 | |
| Denise Schulman | 06/15/2023 | Research liquor licenses | 0.10 | $500.00 | $50.00 | |
| Denise Schulman | 06/15/2023 | Edit complaint | 0.50 | $500.00 | $250.00 | |
| | | **Schulman subtotal:** | **4.20** | | **$2,100.00** | |
| | | | | | | |
| Mike DiGiulio | 03/11/2024 | Draft Cheeks letter | 0.70 | $350.00 | $245.00 | |
| Mike DiGiulio | 03/08/2024 | Draft Cheeks letter | 0.50 | $350.00 | $175.00 | |
| Mike DiGiulio | 03/08/2024 | Finalize SA, request original COJs | 0.20 | $350.00 | $70.00 | |
| Mike DiGiulio | 03/08/2024 | Prepare for and attend conference | 2.50 | $350.00 | $875.00 | |
| Mike DiGiulio | 03/07/2024 | Organize documents for sanctions hearing | 0.50 | $350.00 | $175.00 | |
| Mike DiGiulio | 03/07/2024 | Finalize SA, send to client for execution | 0.40 | $350.00 | $140.00 | |
| Mike DiGiulio | 03/07/2024 | Edit SA, send back to defnse | 0.40 | $350.00 | $140.00 | |
| Mike DiGiulio | 03/07/2024 | Review defense filings, finalize SA, send to defense | 0.60 | $350.00 | $210.00 | |
| Mike DiGiulio | 03/06/2024 | Edit SA, send to defense | 0.30 | $350.00 | $105.00 | |
| Mike DiGiulio | 03/05/2024 | Correspond with defense re: SA issues and W-2 | 0.20 | $350.00 | $70.00 | |
| Mike DiGiulio | 03/04/2024 | Confer with defense re: settlement | 0.20 | $350.00 | $70.00 | |
| Mike DiGiulio | 03/04/2024 | Edit SA, send back final redline to defendant | 0.30 | $350.00 | $105.00 | |
| Mike DiGiulio | 03/04/2024 | Review correspondence with defense re: settlement agreement and redline | 0.10 | $350.00 | $35.00 | |
| Mike DiGiulio | 03/01/2024 | Review order to show cause | 0.10 | $350.00 | $35.00 | |
| Mike DiGiulio | 02/26/2024 | Review order | 0.10 | $350.00 | $35.00 | |
| Mike DiGiulio | 02/26/2024 | Finalize letter and file opposing defendant's settlement representation to court | 0.30 | $350.00 | $105.00 | |
| Mike DiGiulio | 02/26/2024 | Draft letter to Judge Caproni re: settlement | 0.30 | $350.00 | $105.00 | |
| Mike DiGiulio | 02/26/2024 | Review D's letter to court | 0.10 | $350.00 | $35.00 | |
| Mike DiGiulio | 02/16/2024 | Call client and defense re: settlement | 0.60 | $350.00 | $210.00 | |
| Mike DiGiulio | 02/15/2024 | Follow up with defense re: settlement | 0.10 | $350.00 | $35.00 | |
| Mike DiGiulio | 02/14/2024 | Call with defense and client re: settlement | 0.70 | $350.00 | $245.00 | |
| Mike DiGiulio | 02/13/2024 | Call with client re: settlement | 0.20 | $350.00 | $70.00 | |
| Mike DiGiulio | 02/05/2024 | Remit counter offer | 0.20 | $350.00 | $70.00 | |
| Mike DiGiulio | 02/05/2024 | Call with client re: settlement demand | 0.40 | $350.00 | $140.00 | |
| Mike DiGiulio | 01/31/2024 | Call with defense re: settlement and collective | 0.50 | $350.00 | $175.00 | |
| Mike DiGiulio | 01/29/2024 | Follow up with defense re: settlement and stip | 0.30 | $350.00 | $105.00 | |
| Mike DiGiulio | 01/26/2024 | Finalize 216(b) motion, confer with client re: declaration | 1.50 | $350.00 | $525.00 | |
| Mike DiGiulio | 01/26/2024 | Finalize motion and exhibits and declarations, TOA, prepare filing for 216(b) motion | 3.80 | $350.00 | $1,330.00 | |
| Mike DiGiulio | 01/26/2024 | Finalize plaintiff declaration for 216(b) motion, send to client for review and signature | 0.20 | $350.00 | $70.00 | |
| Mike DiGiulio | 01/25/2024 | Review partner edits, input changes | 0.40 | $350.00 | $140.00 | |
| Mike DiGiulio | 01/25/2024 | Draft MOL 216(b), draft declarations, organize exhibits | 4.80 | $350.00 | $1,680.00 | |
| Mike DiGiulio | 01/25/2024 | Correspond with defense re: stipulation | 0.40 | $350.00 | $140.00 | |
| Mike DiGiulio | 01/23/2024 | Draft 216(b) motion | 0.60 | $350.00 | $210.00 | |
| Mike DiGiulio | 01/23/2024 | Send 216(b) notices to defense and stip | 0.40 | $350.00 | $140.00 | |
| Mike DiGiulio | 01/22/2024 | Draft 216(b) motion | 0.70 | $350.00 | $245.00 | |
| Mike DiGiulio | 01/18/2024 | Confer with client, remit updated demand | 0.20 | $350.00 | $70.00 | |
| Mike DiGiulio | 01/12/2024 | Remit counter offer to defendants | 0.10 | $350.00 | $35.00 | |
| Mike DiGiulio | 01/11/2024 | Call with client re: settlement | 0.40 | $350.00 | $140.00 | |
| Mike DiGiulio | 01/10/2024 | Confer with client | 0.10 | $350.00 | $35.00 | |
| Mike DiGiulio | 01/07/2024 | Confer with client re: settlement offer | 0.10 | $350.00 | $35.00 | |
| Mike DiGiulio | 01/05/2024 | Review court order re: 216(b) briefing | 0.20 | $350.00 | $70.00 | |
| Mike DiGiulio | 01/05/2024 | Review settlement offer | 0.20 | $350.00 | $70.00 | |
| Mike DiGiulio | 01/05/2024 | Attend initial conference | 1.30 | $350.00 | $455.00 | |
| Mike DiGiulio | 01/04/2024 | Call with defense re: settlement | 0.20 | $350.00 | $70.00 | |
| Mike DiGiulio | 01/03/2024 | Prep for initial conference | 0.20 | $350.00 | $70.00 | |
| Mike DiGiulio | 01/02/2024 | Review joint letter, CMP, deadlines | 0.20 | $350.00 | $70.00 | |
| Mike DiGiulio | 12/22/2023 | Follow up with defense re: joint letter | 0.10 | $350.00 | $35.00 | |
| Mike DiGiulio | 12/17/2023 | Draft cmp and joint letter | 0.90 | $350.00 | $315.00 | |
| Mike DiGiulio | 12/13/2023 | Confer with defense re: 216(b) cert | 0.20 | $350.00 | $70.00 | |
| Mike DiGiulio | 12/05/2023 | Review initial conference order - calender dates | 0.30 | $350.00 | $105.00 | |
| Mike DiGiulio | 11/29/2023 | Attend mediation | 4.10 | $350.00 | $1,435.00 | |
| Mike DiGiulio | 11/29/2023 | Prep for mediation | 0.50 | $350.00 | $175.00 | |
| Mike DiGiulio | 11/28/2023 | Confidentiality agreement for mediation | 0.40 | $350.00 | $140.00 | |
| Mike DiGiulio | 11/28/2023 | Call with client re: mediation | 0.70 | $350.00 | $245.00 | |
| Mike DiGiulio | 11/27/2023 | Finalize classwide damages calculation, send to mediator and defense | 1.90 | $350.00 | $665.00 | |
| Mike DiGiulio | 11/27/2023 | Prepare classwide damages calculation | 2.20 | $350.00 | $770.00 | |
| Mike DiGiulio | 11/27/2023 | Confer with client re: mediation | 0.20 | $350.00 | $70.00 | |
| Mike DiGiulio | 11/22/2023 | Prepare damages calculation | 1.40 | $350.00 | $490.00 | |
| Mike DiGiulio | 11/22/2023 | Call with defense re: docs | 0.20 | $350.00 | $70.00 | |
| Mike DiGiulio | 11/21/2023 | Review classwide time records | 2.10 | $350.00 | $735.00 | |
| Mike DiGiulio | 11/21/2023 | Confer with defense re: classwide production | 0.20 | $350.00 | $70.00 | |
| Mike DiGiulio | 11/21/2023 | Damages calculation | 1.70 | $350.00 | $595.00 | |
| Mike DiGiulio | 11/20/2023 | Draft mediation statement | 2.10 | $350.00 | $735.00 | |

| Biller | Date | Description | Time | Rate | Total | | |
|---|---|---|---|---|---|---|---|
| Mike DiGiulio | 11/15/2023 | Correspond with defense re: classwide documents | 0.40 | $350.00 | $140.00 | | |
| Mike DiGiulio | 11/15/2023 | Finalize mediations statement, send to mediator | 2.10 | $350.00 | $735.00 | | |
| Mike DiGiulio | 11/14/2023 | Call with defense re: time sheets | 0.30 | $350.00 | $105.00 | | |
| Mike DiGiulio | 11/13/2023 | Reschedule meet and confer | 0.10 | $350.00 | $35.00 | | |
| Mike DiGiulio | 11/13/2023 | Cconfer with defense re: meet and confer | 0.10 | $350.00 | $35.00 | | |
| Mike DiGiulio | 11/10/2023 | Set meet and confer with defense re: time records | 0.20 | $350.00 | $70.00 | | |
| Mike DiGiulio | 11/09/2023 | Draft letter motion to compel production | 0.30 | $350.00 | $105.00 | | |
| Mike DiGiulio | 11/08/2023 | Follow up with defense re: meet and confer doc issues | 0.20 | $350.00 | $70.00 | | |
| Mike DiGiulio | 10/31/2023 | follow up with defense re: documents | 0.20 | $350.00 | $70.00 | | |
| Mike DiGiulio | 10/23/2023 | Download class documents, review, write deficiency email | 1.50 | $350.00 | $525.00 | | |
| Mike DiGiulio | 10/18/2023 | Finalize SAC, file SAC | 0.80 | $350.00 | $280.00 | | |
| Mike DiGiulio | 10/17/2023 | Review SAC order | 0.20 | $350.00 | $70.00 | | |
| Mike DiGiulio | 10/11/2023 | Review opp. to motion for leave to amend | 0.30 | $350.00 | $105.00 | | |
| Mike DiGiulio | 10/09/2023 | Confirm mediation date with client | 0.20 | $350.00 | $70.00 | | |
| Mike DiGiulio | 10/06/2023 | Follow up with mediator re: rescheduling | 0.20 | $350.00 | $70.00 | | |
| Mike DiGiulio | 10/05/2023 | Review letter, court order re: SAC | 0.20 | $350.00 | $70.00 | | |
| Mike DiGiulio | 10/04/2023 | Confer with client re: backpay | 0.30 | $350.00 | $105.00 | | |
| Mike DiGiulio | 10/04/2023 | Draft mediation statement, confer with defense | 2.10 | $350.00 | $735.00 | | |
| Mike DiGiulio | 10/04/2023 | Draft mediation statement | 1.00 | $350.00 | $350.00 | | |
| Mike DiGiulio | 10/03/2023 | Draft letter request to amend complaint, file request | 0.50 | $350.00 | $175.00 | | |
| Mike DiGiulio | 10/03/2023 | Draft mediation statement | 1.00 | $350.00 | $350.00 | | |
| Mike DiGiulio | 10/03/2023 | Follow up with defense re: filing amended complaint | 0.20 | $350.00 | $70.00 | | |
| Mike DiGiulio | 10/02/2023 | Follow up re: amended complaint and stip | 0.10 | $350.00 | $35.00 | | |
| Mike DiGiulio | 09/29/2023 | Confer with defense re: stip and amended complaint | 0.30 | $350.00 | $105.00 | | |
| Mike DiGiulio | 09/27/2023 | Amend complaint, add discrimination claims, draft stip, send to defense for review | 1.10 | $350.00 | $385.00 | | |
| Mike DiGiulio | 09/26/2023 | Notice of right to sue letter, seek stipulation for amended from defense, confer with client | 0.40 | $350.00 | $140.00 | | |
| Mike DiGiulio | 09/19/2023 | Call with client re: doc issues | 0.40 | $350.00 | $140.00 | | |
| Mike DiGiulio | 09/19/2023 | Set time to discuss case, and review docs | 0.10 | $350.00 | $35.00 | | |
| Mike DiGiulio | 09/18/2023 | Follow up with client re: signed docs | 0.10 | $350.00 | $35.00 | | |
| Mike DiGiulio | 09/14/2023 | Review defendant production, confer with client re: issues | 0.40 | $350.00 | $140.00 | | |
| Mike DiGiulio | 09/13/2023 | Follow up with defense and client re: settlement | 0.20 | $350.00 | $70.00 | | |
| Mike DiGiulio | 09/13/2023 | Discovery call, call court, call with Judge Caproni | 0.60 | $350.00 | $210.00 | | |
| Mike DiGiulio | 09/12/2023 | Organize mediation production, bates stamp, damages calculation, send to defense | 1.00 | $350.00 | $350.00 | | |
| Mike DiGiulio | 09/12/2023 | Review court order re: mediation docs | 0.10 | $350.00 | $35.00 | | |
| Mike DiGiulio | 09/11/2023 | Call with client re: docs and case update | 0.20 | $350.00 | $70.00 | | |
| Mike DiGiulio | 09/06/2023 | Confer with defense re: classwide docs | 0.20 | $350.00 | $70.00 | | |
| Mike DiGiulio | 09/05/2023 | Follow up with defense re: classwide docs | 0.30 | $350.00 | $105.00 | | |
| Mike DiGiulio | 09/05/2023 | confer with defense re: classwide production | 0.20 | $350.00 | $70.00 | | |
| Mike DiGiulio | 08/24/2023 | Finalize and file FAC and redline | 0.60 | $350.00 | $210.00 | | |
| Mike DiGiulio | 08/24/2023 | Confer with client re: FAC | 0.20 | $350.00 | $70.00 | | |
| Mike DiGiulio | 08/23/2023 | Finalize FAC, send redline to client for approval | 0.50 | $350.00 | $175.00 | | |
| Mike DiGiulio | 08/22/2023 | Call with client, draft FAC | 1.00 | $350.00 | $350.00 | | |
| Mike DiGiulio | 08/22/2023 | Correspond with EEOC re: mediation and right to sue | 0.20 | $350.00 | $70.00 | | |
| Mike DiGiulio | 08/21/2023 | Review EEOC submissions, set mediation date | 0.30 | $350.00 | $105.00 | | |
| Mike DiGiulio | 08/11/2023 | Attend hearing re: class docs | 1.80 | $350.00 | $630.00 | | |
| Mike DiGiulio | 08/09/2023 | Finalize joint letter, file | 0.30 | $350.00 | $105.00 | | |
| Mike DiGiulio | 08/08/2023 | Confer with client re: integrated enterprise liability facts | 0.20 | $350.00 | $70.00 | | |
| Mike DiGiulio | 08/08/2023 | Finalize joint letter, send to defense | 0.20 | $350.00 | $70.00 | | |
| Mike DiGiulio | 08/07/2023 | Draft joint discovery letter | 1.10 | $350.00 | $385.00 | | |
| Mike DiGiulio | 08/07/2023 | Meet and confer in person - classwide docs | 1.10 | $350.00 | $385.00 | | |
| Mike DiGiulio | 08/02/2023 | Confer with defense re: in person meeting | 0.10 | $350.00 | $35.00 | | |
| Mike DiGiulio | 08/01/2023 | Correspond with defense re: in-person meet and confer | 0.10 | $350.00 | $35.00 | | |
| Mike DiGiulio | 08/01/2023 | Confer with partner re: meet and confer rules | 0.10 | $350.00 | $35.00 | | |
| Mike DiGiulio | 08/01/2023 | Confer with mediatior re: schedule | 0.10 | $350.00 | $35.00 | | |
| Mike DiGiulio | 07/31/2023 | Review order re: meet and confer class wide docs | 0.10 | $350.00 | $35.00 | | |
| Mike DiGiulio | 07/28/2023 | Review opposition letter for class wide discovery | 0.40 | $350.00 | $140.00 | | |
| Mike DiGiulio | 07/28/2023 | Correspond with partner and defense re: in person meet and confer, review order | 0.30 | $350.00 | $105.00 | | |
| Mike DiGiulio | 07/26/2023 | Finalize class wide discovery letter, file | 0.40 | $350.00 | $140.00 | | |
| Mike DiGiulio | 07/26/2023 | File request for right to sue letter | 0.40 | $350.00 | $140.00 | | |
| Mike DiGiulio | 07/26/2023 | Draft letter for partner review, classwide discovery, confer with client | 0.10 | $350.00 | $35.00 | | |
| Mike DiGiulio | 07/26/2023 | Mediation issue, classwide discovery issue, confer with defense re: classwide docs | 0.30 | $350.00 | $105.00 | | |
| Mike DiGiulio | 07/25/2023 | Draft classwide letter to court, send to partenr for review, file | 0.80 | $350.00 | $280.00 | | |
| Mike DiGiulio | 07/25/2023 | Confer with defense re: classwide docs and extension | 0.30 | $350.00 | $105.00 | | |
| Mike DiGiulio | 07/25/2023 | Confer with mediator, confer with defense re: classwide data | 0.20 | $350.00 | $70.00 | | |
| Mike DiGiulio | 07/17/2023 | Confer with defense re: mediation and docs and scheduling | 0.30 | $350.00 | $105.00 | | |
| Mike DiGiulio | 07/10/2023 | Confer with defense, consent to extension for answer | 0.10 | $350.00 | $35.00 | | |
| Mike DiGiulio | 06/28/2023 | Confer with client re: filings | 0.20 | $350.00 | $70.00 | | |
| Mike DiGiulio | 06/27/2023 | File complaint, organize eeoc docs | 0.50 | $350.00 | $175.00 | | |
| Mike DiGiulio | 06/27/2023 | Organize wage and hour complaint filing | 0.30 | $350.00 | $105.00 | | |
| Mike DiGiulio | 06/26/2023 | Call with client, remit settlement response to defendant | 0.30 | $350.00 | $105.00 | | |
| Mike DiGiulio | 06/26/2023 | Call with defense re: settlment | 0.40 | $350.00 | $140.00 | | |
| Mike DiGiulio | 06/26/2023 | Confer with client re: settlement and filing case | 0.30 | $350.00 | $105.00 | | |

| Biller | Date | Description | Time | Rate | Total | | |
|---|---|---|---|---|---|---|---|
| Mike DiGiulio | 06/20/2023 | Send initial demand | 0.10 | $350.00 | $35.00 | | |
| Mike DiGiulio | 06/20/2023 | Call with defense | 0.30 | $350.00 | $105.00 | | |
| Mike DiGiulio | 06/20/2023 | Confer with client re: demand authorization | 0.30 | $350.00 | $105.00 | | |
| Mike DiGiulio | 06/20/2023 | Send damages calculation to pamter | 0.30 | $350.00 | $105.00 | | |
| Mike DiGiulio | 06/20/2023 | Draft damages calculation, send to client for review and authorization | 0.50 | $350.00 | $175.00 | | |
| Mike DiGiulio | 06/16/2023 | Finalize complaints, send to partner for remitting to defense | 0.50 | $350.00 | $175.00 | | |
| Mike DiGiulio | 06/16/2023 | Finalize complaints, send to partner, send to defense, confer with client | 0.60 | $350.00 | $210.00 | | |
| Mike DiGiulio | 06/15/2023 | Edit complaints, send to partner for final review and sending out to defense | 0.60 | $350.00 | $210.00 | | |
| Mike DiGiulio | 06/15/2023 | Review complaint with client | 0.40 | $350.00 | $140.00 | | |
| Mike DiGiulio | 06/15/2023 | Edit complaints | 0.50 | $350.00 | $175.00 | | |
| Mike DiGiulio | 06/12/2023 | Corrrespond with client re: review complaints | 0.10 | $350.00 | $35.00 | | |
| Mike DiGiulio | 06/06/2023 | Finalize complaints for client, send to client for review | 0.50 | $350.00 | $175.00 | | |
| Mike DiGiulio | 06/06/2023 | Draft discrimination complaint | 0.60 | $350.00 | $210.00 | | |
| Mike DiGiulio | 06/06/2023 | Review cumia podcast, locate time stamp and show | 0.80 | $350.00 | $280.00 | | |
| Mike DiGiulio | 06/06/2023 | Review cumia shows | 0.50 | $350.00 | $175.00 | | |
| Mike DiGiulio | 06/05/2023 | Draft complaint - wage and hour | 1.80 | $350.00 | $630.00 | | |
| Mike DiGiulio | 06/05/2023 | Review cumia videos | 0.40 | $350.00 | $140.00 | | |
| Mike DiGiulio | 06/05/2023 | Draft wage and hour complaint and discrimination complaint | 1.50 | $350.00 | $525.00 | | |
| Mike DiGiulio | 06/02/2023 | Draft complaint | 1.30 | $350.00 | $455.00 | | |
| Mike DiGiulio | 06/02/2023 | Discuss NYLL 740 claims and pleading issues with partner | 0.50 | $350.00 | $175.00 | | |
| Mike DiGiulio | 05/25/2023 | Call with client re: draft complaint | 1.70 | $350.00 | $595.00 | | |
| | | **DiGiulio subtotal:** | **91.50** | | **$32,025.00** | | |
| | | | | | | | |
| Evelyn Velesaca | 11/28/2023 | download and send signed agreement to mike | 0.10 | 125.00 | $12.50 | | |
| Evelyn Velesaca | 11/28/2023 | send confidentiality agreement to client via docusign | 0.10 | 125.00 | $12.50 | | |
| Evelyn Velesaca | 07/18/2023 | reply to eeoc email re: respondents' email addrtesses | 0.10 | 125.00 | $12.50 | | |
| Evelyn Velesaca | 07/18/2023 | respond to eeoc email | 0.10 | 125.00 | $12.50 | | |
| Evelyn Velesaca | 07/18/2023 | follow up w/ eeoc re: pending charges | 0.20 | 125.00 | $25.00 | | |
| Evelyn Velesaca | 07/11/2023 | file AOS | 0.40 | 125.00 | $50.00 | | |
| Evelyn Velesaca | 07/11/2023 | file AOS | 0.10 | 125.00 | $12.50 | | |
| Evelyn Velesaca | 07/11/2023 | file AOS | 0.50 | 125.00 | $62.50 | | |
| Evelyn Velesaca | 07/06/2023 | fax eeoc charge form | 0.10 | 125.00 | $12.50 | | |
| Evelyn Velesaca | 07/05/2023 | follow up w/ eeoc re: charge | 0.10 | 125.00 | $12.50 | | |
| Evelyn Velesaca | 06/28/2023 | send complaint and summons for service | 0.20 | 125.00 | $25.00 | | |
| Evelyn Velesaca | 06/28/2023 | check docket for issued summons | 0.10 | 125.00 | $12.50 | | |
| Evelyn Velesaca | 06/28/2023 | file eeoc charge form | 0.30 | 125.00 | $37.50 | | |
| Evelyn Velesaca | 06/27/2023 | save final eeoc narrative to file | 0.10 | 125.00 | $12.50 | | |
| Evelyn Velesaca | 06/27/2023 | send eeoc charge form to client via docusign | 0.10 | 125.00 | $12.50 | | |
| Evelyn Velesaca | 06/27/2023 | send eeoc charge form and narrative for attorney to review | 0.20 | 125.00 | $25.00 | | |
| Evelyn Velesaca | 06/27/2023 | draft eeoc charge form and revise narrative | 0.50 | 125.00 | $62.50 | | |
| Evelyn Velesaca | 06/27/2023 | file complaint and update expenses spreadsheet | 0.50 | 125.00 | $62.50 | | |
| Evelyn Velesaca | 06/27/2023 | download signed consent to sue and notify attorney | 0.10 | 125.00 | $12.50 | | |
| Evelyn Velesaca | 06/27/2023 | send civil cover sheet and summons for attorney to review | 0.20 | 125.00 | $25.00 | | |
| Evelyn Velesaca | 06/27/2023 | draft civil cover sheet and summons sheet | 0.60 | 125.00 | $75.00 | | |
| Evelyn Velesaca | 06/27/2023 | open new case file, draft and send consent to sue to client | 0.20 | 125.00 | $25.00 | | |
| | | **Velesaca Subtotal:** | **4.90** | | **$612.50** | | |
| | | | | | | | |
| | | **Total:** | **100.60** | | **$34,737.50** | | |

# EXHIBIT  3

**Pay.gov Payment Confirmation: NEW YORK SOUTHERN DISTRICT COURT**

do_not_reply@psc.uscourts.gov <do_not_reply@psc.uscourts.gov>

Tue 6/27/2023 1:46 PM

**To:**Evelyn Velesaca <evelyn@jk-llp.com>

Your payment has been successfully processed and the details are below. If you have any questions or you wish to cancel this payment, please contact: Helpdesk at 212-805-0800.

   Account Number: 5049496
   Court: NEW YORK SOUTHERN DISTRICT COURT
   Amount: $402.00
   Tracking Id: ANYSDC-27928286
   Approval Code: 138353
   Card Number: ************1143
   Date/Time: 06/27/2023 01:46:25 ET

NOTE: This is an automated message. Please do not reply



Irving Botwinick, Founder
New York State Professional Process Servers
Association

Founding Member National Association
of Professional Process Servers

Associate Member of the following
State Process Servers Association:
Arizona, California, Colorado, Florida, Georgia,
New Jersey, Oregon, Tennessee, Washington

Society of Professional Investigators
Chairman of the Board

Associated Licensed Detectives of
New York State, Inc.
National Council of Investigation
and Security Services
Society of Professional Investigators
World Investigators Network Inc.

**SERVING**
*by* **IRVING INC.**

*"Serving the Legal Community Since 1977."*

**July 11, 2023**

**ATTN: EVELYN VELESACA**

**JOSEPH & KIRSCHENBAUM LLP**
**32 BROADWAY, SUITE 601**
**NEW YORK, NEW YORK 10004**

**INVOICE # SD-10413**

| PLAINTIFF | DEFENDANT | SERVICE | CHARGE |
|---|---|---|---|
| Faith Mabry, on behalf of herself and others similarly situated | LAML, LLC d/b/a John Sullivan's Bar & Grill, et al | Sum. & Compl. On LAML, LLC d/b/a John Sullivan's Bar & Grill | $ 90.00 |
| | | 240 BBJ PUB Inc., d/b/a Jack Doyle's Pub & Restaurant | $ 90.00 |
| | | 505 HP LLC, d/b/a The Tailor Public House & Kitchen | $ 90.00 |
| | | John Creegan | $ 90.00 |
| | | Brendan Creegan | $ 40.00 |
| | | Printing Fees | $ 29.75 |
| | | Postage Fees | $  4.14 |
| | | FINAL BILL: | $433.89 |

**\*DUE UPON RECEIPT\***

*WE ARE PRIVATE INVESTIGATORS LICENSED BY THE NEW YORK STATE DEPARTMENT OF STATE • LICENSE #11000079635*
18 EAST 41st STREET, SUITE 1600 • NEW YORK, NEW YORK 10017
(212) 233-3346 • Fax (212) 349-0338
e-mail: info@servingbyirving.com • website: www.servingbyirving.com • Federal Tax I.D. # 13-3074123

EXHIBIT 4

M6fezivc

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

PAVLE ZIVKOVIC, on behalf of
himself and others similarly
situated,

      Plaintiffs,

      v.              17 Civ. 553 (GHW)

LAURA CHRISTY LLC, doing
business as Valbella, et al.,
                  Telephonic Conference

      Defendants.

------------------------------x
              New York, N.Y.
              June 15, 2022
              4:01 p.m.

Before:

              HON. GREGORY H. WOODS,

              District Judge

              APPEARANCES

JOSEPH & KIRSCHENBAUM LLP
   Attorneys for Plaintiffs
BY:  YOSEF NUSSBAUM
    LUCAS COLIN BUZZARD
    DANIEL MAIMON KIRSCHENBAUM

DEALY SILBERSTEIN & BRAVERMAN LLP
   Attorneys for Defendant Laura Christy LLC
BY:  MARIA LOUISA BIANCO

HAROLD, SALANT, STRASSFIELD & SPIELBERG
   Attorneys for Defendant Laura Christy Midtown LLC
BY:  LEONARD I. SPIELBERG

NEAL SANFORD COMER
   Attorney for Defendants Mr. Ghatanfard and Mr. Luca

           SOUTHERN DISTRICT REPORTERS, P.C.
               (212) 805-0300

```
 1              (Case called)
 2              THE COURT:   So before I begin by taking appearances,
 3    what I'd like to do at the outset is just ask everybody to
 4    please place your devices on mute.  I'm hearing a substantial
 5    amount of background noise.  So if I could just ask everyone to
 6    please place your phones on mute, that would be very helpful.
 7              If you can't place yourselves on mute, and
 8    particularly if you're not participating, we may ask you to, or
 9    mute you.  So again, let me just ask everybody to please place
10    their phones on mute.  The hissing sound that you hear in the
11    background is the sound of someone's phone not being on mute.
12              The line is making the sound now, so, again, I'm going
13    to ask everyone to please place your phones on mute, if you
14    can.  I'm going to begin by taking appearances for the parties.
15    And again, I'll ask that you place yourselves on mute.
16              Let me ask first, who's on the line for plaintiff?
17              MR. NUSSBAUM:   Good afternoon, your Honor.  Yosef
18    Nussbaum for the plaintiff.
19              THE COURT:   Thank you.  And who's on the line on
20    behalf --
21              MR. KIRSCHENBAUM:   Your Honor, Maimon Kirschenbaum.
22    I'm here as well.  Sorry.
23              THE COURT:   Thank you.
24              Who's on the line on behalf of defendant Laura Christy
25    LLC?
```

1          MS. BIANCO:   Good afternoon, your Honor.  Maria Louisa
2     Bianco for Laura Christy LLC.
3          THE COURT:   Thank you.
4          Who's on the line on behalf of Laura Christy Midtown?
5          MR. SPIELBERG:   Good afternoon, Judge.  It's Leonard
6     Spielberg on behalf of Laura Christy Midtown.
7          THE COURT:   Thank you.
8          And who's on the line on behalf of the other
9     defendants, Mr. Ghatanfard and Mr. Luca?
10          MR. COMER:   Good afternoon, your Honor.  This is Neal
11     Comer on behalf of both of those individual defendants.
12          THE COURT:   Thank you.  Good.
13          So let me ask, is there any other lawyer who has not
14     identified themselves who's participating in the call?
15          MR. BUZZARD:   Good afternoon, your Honor.  This is
16     Lucas Buzzard, also for plaintiffs.
17          THE COURT:   Thank you.  Good.
18          So what I'm going to do is I'm going to, again, ask
19     the parties and participants to place your phones on mute.
20     Whoever is dialing in from -- 6775 is your last digits, you're
21     not on mute.  And I'm going to mute the other participant who
22     refuses -- that has just eliminated a substantial amount of the
23     background noise.  Again, please keep yourselves on mute.  The
24     line that I just muted did not seem to be associated with any
25     of the people from whom I just took appearances on behalf of

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1    the parties.  Again, counsel who's dialing in from a 914

2    number, please place your phone on mute.

3           So let me begin with just a brief instructions about

4    the rules that I'd like the parties to follow during this

5    conference.  At the outset, again, please keep your phones on

6    mute at all times, except when you're speaking to me or to the

7    representative of another party.

8           Second, please remember that this is a public

9    proceeding.  Any member of the public or press is welcome to

10   audit today's call.  You should just keep that in mind.

11          Third, please state your name each time that you speak

12   here.

13          Fourth, please abide by instructions from our court

14   reporter that are designed to help the court reporter do their

15   job.

16          And finally, I'm ordering that there be no recording

17   or rebroadcast to follow any portion of today's conference.

18          So, counsel, with that out of the way, today's

19   proceeding, counsel, I scheduled this as an opportunity to

20   discuss the application for an award of attorneys' fees in this

21   case.  As the parties know well, the plaintiffs prevailed at

22   trial with respect to all of the claims presented.  The class

23   plaintiffs are, therefore, entitled to the payment of

24   attorneys' fees pursuant to Section 663 of the New York Labor

25   Law, which I will refer to here as the NYLL.  In addition,

1    Mr. Zivkovic seeks an award of attorneys' fees under

2    Section 8-502(g) of the New York City Human Rights Law, which I

3    will refer to as the NYCHRL.

4              Counsel, I've reviewed all of the timely filed

5    submissions in this case, did all of the submissions in this

6    case pertaining to the application for attorneys' fees, which

7    is the principal subject of this conference.  And I believe

8    that I have a view regarding the application on the basis of

9    that review.

10              I'll give the parties the opportunity if you like to

11    add anything to the written submissions that have been

12    previously provided to the Court, understanding that I've

13    reviewed the materials that have already been submitted to

14    date, and that the Court has established deadlines for the

15    submissions of briefing with respect to the issues.

16              Let me begin with counsel for plaintiffs.

17              Counsel, is there anything that you'd like to add to

18    your -- with this application?

19              MR. NUSSBAUM:   This is Yosef Nussbaum.  Thank you,

20    your Honor.

21              We'll rest on the papers, and we're happy and prepared

22    to address any specific questions the Court may have.

23              THE COURT:   Thank you.

24              Let me turn to counsel for Laura Christy.  Anything

25    that you'd like to add with respect to these issues?

1          MS. BIANCO:   Thank you, your Honor.  Maria Louisa

2     Bianco.  Nothing to add at this time.

3          THE COURT:   Thank you.

4          Counsel for Laura Christy Midtown?

5          MR. SPIELBERG:   No.  I have nothing to add at this

6     time, Judge.

7          THE COURT:   Thank you.

8          Counsel for Mr. Ghatanfard and Mr. Luca?

9          MR. COMER:   Nothing from us either, Judge.  Thank you

10    very much.  This is Neal Comer.

11         THE COURT:   Thank you very much.  So thank you all for

12    that.

13         I'm going to ask you to place your phones on mute.

14    I'm prepared to rule on the application.  I'm going to do so

15    now, I'm going to do it orally.  Please bear with me.  And,

16    again, if you would please keep your phones on mute as I try to

17    provide the reasoning and ultimate conclusion with respect to

18    the application for an award of fees here.

19         After I've discussed the issues that relate to the

20    award of fees, I want to talk some more about the request for

21    the entry of judgment that the parties presented to the Court,

22    just to preview the topic there so that you can be thinking

23    about it.  I expect to talk about one how that proposed form of

24    judgment can and should be modified in response to the ruling

25    that I expect to enter now.

1    And second, I want to talk about the process for

2    collection and distribution of the judgment amount and how the

3    plaintiffs in particular propose for us to set up a process to

4    do that under the supervision of the Court.

5    Before I get to that, however, let's turn to the

6    motion itself.  That is the motion for attorneys' fees.

7    So on May 13, 2022, plaintiffs filed a motion for

8    attorneys' fees.  Dkt. No. 306.  In support of the motion,

9    plaintiffs filed a memorandum of law, Dkt. No. 307 (the "P's

10   Mem."), and an affidavit by Mr. Buzzard, Dkt. No. 308 (the

11   "Buzzard Aff.").  The affidavit from Mr. Buzzard attached,

12   among other things, detailed contemporaneous time records for

13   the attorneys and paralegals who worked on the case for

14   plaintiffs.  In addition to requesting an award of fees under

15   the fee-shifting provisions of the NYLL, plaintiffs request

16   that I approve an award to counsel of one-third of the common

17   fund.  They have also requested that the Court approve up to

18   $30,000 in fees to a claims administrator and $15,000 in

19   administrative payments to each of the class representatives

20   who testified at trial.

21   Counsel for Mr. Ghatanfard, Mr. Luca and Laura Christy

22   Midtown did not oppose the motion.  However, counsel for

23   defendant Laura Christy Midtown LLC ("LCM") filed a declaration

24   in opposition to the motion.  Dkt. No. 309 (the "Opposition").

25   In the opposition, LCM challenges only a subset of the

1   plaintiffs' application for fees.  They ask that the Court not

2   compensate plaintiffs' counsel for the costs associated with

3   litigating two ultimately fruitless motions for summary

4   judgment.  They do not argue that the amount of time spent on

5   those motions was excessive, but, rather, that because the

6   motions did not advance the litigation, they should not be

7   supported by an award of fees.  The declaration was not

8   supported by a memorandum of law.  Plaintiffs filed their reply

9   on June 2, 2022 (the "Reply").  Dkt. No. 312.

10          After reviewing the parties' submissions, I issued an

11  order on June 10, 2022, requesting supplemental briefing

12  regarding the extent to which all of the fees claimed by

13  plaintiffs could be pursued under the NYLL, given that

14  attorneys' fees were expended to develop Mr. Zivkovic's

15  individual claims, which were not brought pursuant to that

16  statute.  Plaintiffs' counsel submitted the requested

17  supplemental briefing on June 13, 2022, together with an

18  affidavit.  Defendants did not submit a response to the

19  supplemental briefing by the date ordered by the Court.

20          I have reviewed the submissions and am prepared to

21  rule on the motion.

22          So Attorneys' Fees, Costs and Expenses.

23          A.  Attorneys' Fees As The Prevailing Party Under the

24  NYLL.

25          In order to evaluate the reasonableness of the fees to

be awarded under the NYLL, the Court begins by calculating the

lodestar.  The lodestar -- "the product of a reasonable hourly

rate and the reasonable numbers of hours required by the

case -- creates a 'presumptively reasonable fee.'"  *Millea* v.

*Metro-N R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting

*Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty of*

*Albany*, 522 F.3d 182, 183 (2d Cir. 2008)).  Second Circuit

precedent requires a party seeking an award of attorneys' fees

to support its request with contemporaneous time records that

show "for each attorney, the date, the hours expended, and the

nature of the work done." *New York State Ass'n for Retarded*

*Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

District courts have "considerable discretion" in determining

what constitutes a reasonable award of attorneys' fees. *Arbor*

*Hill*, 522 F.3d at 190.

     The Second Circuit has directed that district "courts

should generally use the hourly rates employed in the district

in which the reviewing court sits in calculating the

presumptively reasonable fee." *Restivo v. Hesseman*, 846 F.3d

547, 590 (2d Cir. 2017) (quoting *Simmons v. NYC Transit Auth.*,

575 F.3d 170, 174 (2d Cir. 2009)).  Those hourly rates "are the

market rates 'prevailing in the community for similar services

by lawyers of reasonably comparable skill, experience, and

reputation.'" *Gierlinger v. Gleason*, 160 F.3d 858, 882

(2d Cir. 1998) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11

M6fezivc

1   (1984)).

2          In determining a reasonable hourly fee, the Second

3   Circuit has also instructed district courts to consider "all of

4   the case-specific variables." *Arbor Hill*, 522 F.3d at 190.

5   The touchstone inquiry is "what a reasonable paying client

6   would be willing to pay." *Id.* at 184; *see Id.* at 192 ("By

7   asking what a reasonable, paying client would do, a district

8   court best approximates the workings of today's market for

9   legal services.").  The court should "bear in mind that a

10  reasonable paying client wishes to spend the minimum necessary

11  to litigate the case effectively" and "should also consider

12  that [a client] might be able to negotiate with his or her

13  attorneys." *Id.* at 190.

14         A district court may additionally factor into its

15  determination "the difficulty of the questions involved, the

16  skill required to handle the problem, the time and labor

17  required, the lawyer's experience, ability and reputation, the

18  customer fee charged by the bar for similar services, and the

19  amount involved." *OZ Mgmt. LP v. Ozdeal Inv. Consultants,*

20  *Inc.*, a 2010 WL 5538552, at *2 (S.D.N.Y. Dec. 6, 2010)

21  (alterations in original) (quoting *F.H. Krear & Co. v. Nineteen*

22  *Named Trustees*, 810 F.2d 1250, 1263 (2d Cir. 1987), *report and*

23  *recommendation adopted*.  No 09 Civ. 8665 (JGK), 2011 WL 43459

24  (S.D.N.Y. Jan. 5, 2011).

25         "The district court retains discretion to determine

1    what constitutes a reasonable fee." *Millea*, 658 F.3d at 166

2    (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 758

3    (2d Cir. 1998)).  "However, this discretion is not unfettered,"

4    and "the district court must abide by the procedural

5    requirements for calculating those fees articulated by [the

6    Second Circuit] and the Supreme Court." *Id.*  "Attorneys' fees

7    must be reasonable in terms of the circumstances of the

8    particular case ..." *Alderman v. Pan Am World Airways*, 169 F.3d

9    99, 102 (2d Cir. 1999).

10        Mr. Kirschenbaum billed 129.3 hours to this case at a

11   rate of $550 per hour.  Mr. Nussbaum billed the most hours to

12   this case -- for the New York Labor Law claims, 409.8 hours as

13   a partner, at a rate of $500 per hour, and before that, 432.8

14   hours as an associate at a rate of $400 per hour.  Mr. Buzzard,

15   an associate, billed 234.4 hours to the NYLL claims in this

16   case at a rate of $400 per hour.  Leah Seliger, an associate,

17   billed 17.7 hours to the case at a rate of $400 per hour.

18   Denise Schulman billed 10.6 hours to the case at a rate of $500

19   per hour.  Six separate paralegals worked on the matter for a

20   total of 101.7 hours, billing $125 per hour.

21        "In determining the number of hours reasonably

22   expended for purposes of calculating the lodestar, the district

23   court should exclude excessive, redundant or otherwise

24   unnecessary hours, as well as hours dedicated to severable

25   unsuccessful claims." *Quaratino v. Tiffany & Co.*, 166 F.3d at

1    422, 425 (2d Cir. 1999).

2              I have reviewed all of the billing records presented

3    by plaintiffs.  Having done so, I conclude that the total

4    number of attorney hours expended in this matter to be

5    "reasonable number of hours required by the case."  *Millea v.*

6    *Metro-North R.R., Co.* at 658 F.3d 154, 166 (2d Cir. 2011).

7    This case was litigated over an extended period and proceeded

8    through discovery, class certification, summary judgment motion

9    practice and trial.  As a result, plaintiffs were required to

10   expend a substantial amount of time working on the case.

11             I have looked at each of the billing records, and I

12   did not identify any that seemed to be excessive.  Indeed, I

13   was often impressed by the relative efficiency of plaintiffs'

14   counsel in briefing motions presented to the Court.  In

15   particular, I think the amount of time that they worked to

16   brief the pair of summary judgment motions, which are the focus

17   of LCM's declaration, was very reasonable -- they charged

18   relatively little to brief each of those substantial motions.

19             I do not believe that I should reduce the amount of

20   plaintiffs' recoverable fees as a result of the fact that the

21   summary judgment motions that they brought were unsuccessful

22   and did not, ultimately, advance the ball.  Before I turn to

23   the substance of the argument, let me first say that LCM's

24   declaration in opposition to the motion was not properly placed

25   before the Court.  As counsel for plaintiffs correctly argued,

M6fezivc

1    it did not comply with Local Rule 7.1, which provides the

2    following:

3              "Except as otherwise permitted by the Court, all

4    motions and all oppositions thereto shall be supported by a

5    memorandum of law, setting forth the points and authorities

6    relied upon in support of or in opposition to the motion, and

7    divided, under appropriate headings, into as many parts as

8    there are points to be determined.  Willful failure to comply

9    with this rule may be deemed sufficient cause for the denial of

10   a motion or for the granting of a motion by default."

11             Local Civil Rule 7.1.  "Failure to file a memorandum

12   of law in opposition to the opposing party's motion is, by

13   itself, a sufficient basis to grant the motion." *Kamara v.*

14   *United States*, 2005 WL 2298167 at *1 (S.D.N.Y. Sept. 20, 2005)

15   (citing *Loew v. Kolb*, 2003 WL 22271221 at *2 (S.D.N.Y.

16   September 30, 2003).  It is within the discretion of the Court

17   to consider the opposition notwithstanding its failure to

18   comply with the local rules.  I am exercising my discretion to

19   consider it here, but I think that it is worthwhile to

20   highlight the fact that the declaration does not comply with

21   the rule.  More substantively, it fails to provide any legal

22   support for the position that it advances.

23             At the outset, I recognize that LCM's motion rests in

24   part on comments made by me at the time the briefing schedule

25   was set for the second motion.  As the record reflects, I

M6fezivc

1    thought that the proposed motion was likely to be a waste of

2    time, and I wanted plaintiffs to think carefully before

3    bringing the motion.  I did not say then that I would not award

4    attorneys' fees for the motion; rather, that I would take the

5    issue into account when considering an application for

6    attorneys' fees.  I have done so here.

7            Having done so, I do not find a basis to exclude those

8    costs from the attorneys' fees recoverable by plaintiffs.

9    While unsuccessful -- and in my view a bit of a waste of

10   time -- I do not think that they were frivolous.  I granted

11   plaintiffs leave to file them, and plaintiffs did prevail at

12   trial with respect to the issues advanced in the motions.

13   Section 663 of the NYLL states that plaintiffs "shall recover"

14   "all reasonable attorneys' fees."  I do not believe that the

15   fees incurred in pursuing those motions were unreasonable in

16   amount or type; therefore, they are compensable under the

17   statute.

18           Some of the rates proposed by counsel exceed those

19   that have been endorsed by recent decisions in this district.

20   "Courts in this district have determined in recent cases that a

21   fee ranging from 250 to $450 is appropriate for experienced

22   litigators in wage-and-hour cases."  *Tendilla v. 1465 Espresso*

23   *Bar LLC*, 2021 WL 2209873, at *3 (S.D.N.Y. June 1, 2021)

24   (quoting *Yuquilema v. Manhattan's Hero Corp.*, 2014 WL 4207106,

25   at *14 (S.D.N.Y. Aug. 20, 2014).  Additionally, courts in this

1  district have determined "$175 to $250 per hour is an

2  appropriate range for junior attorneys."  *Reinoso v. Cipriani*,

3  2019 WL 2324566, at *3 (S.D.N.Y. May 30, 2019).   Associates

4  with three to four years of experience are usually awarded fees

5  of 200 to $275 per hour.  *See Hernandez v. JRPAC Inc.*, 2017 WL

6  66325, at *2 (S.D.N.Y. Jan. 6, 2017) (finding rate of $250 per

7  hour for attorney with three to four years of experience was

8  reasonable).  "Rates in excess of $225 per hour are reserved

9  for FLSA litigators with more than three years' associate

10  experience" while "associates with one to three years of

11  experience have been awarded rates ranging from $150 to $200

12  per hour."  *Lu Wan v. YWL USA Inc.*, 2021 WL 1905036, at *6

13  (S.D.N.Y. May 12, 2021).

14         Courts in this district have also awarded a standard

15  hourly paralegal rate of $75 unless the parties have shown that

16  the paralegal has specialized skills.  *Lu Wan v. YWL USA Inc.*,

17  2021 WL 1905036, at *5 (S.D.N.Y. May 12, 2021) (citing *Knox v.*

18  *John Varvatos Enters. Inc.*, 2021 WL 608345, at *6 (S.D.N.Y.

19  Feb. 17, 2021)).

20         I recognize the issues that plaintiffs raise regarding

21  the use of case precedents in establishing appropriate rates

22  for counsel -- namely, that the use of precedent anchors rates

23  in the past.  I have also reviewed the aggregate data presented

24  by plaintiffs in their declaration regarding prevailing hourly

25  rates in New York for employment litigators.  In New York City,

M6fezivc

1    first quartile partners billed $469 per hour, where third

2    quartile partners billed $794 per hour.  Associates in those

3    quartiles billed at 315 and $571 per hour respectively.  The

4    rates that I just recited from the case law present a range

5    that is lower than even the first quartile rates.  Accordingly,

6    I believe that an upward adjustment -- above the rates that I

7    just recited based on the case law -- is appropriate based on

8    my knowledge of the case and prevailing rates.  Because the law

9    firm was retained on a contingency basis, I do not have

10   empirical evidence regarding the amount that their clients are

11   willing to pay.

12              Mr. Kirschenbaum's hourly rate, $550, exceeds the top

13   of the range that courts in this district have awarded to

14   partners with significant employment litigation experience in

15   FLSA cases.  At the same time, I recognize Mr. Kirschenbaum's

16   years of experience in this practice area.  Therefore, I will

17   approve an hourly rate of $500 per hour for Mr. Kirschenbaum.

18   Given their experience in the field, I approve the same hourly

19   rate for each of the partners involved in the case.  The hourly

20   rates of each of the associates of the firm are supported as

21   well.  Mr. Buzzard has been practicing since 2010; Ms. Seliger

22   has been practicing since 2002.  Given their experience and the

23   nature of the work that they performed in this case, a fee at

24   the top of the associate range is appropriate in this case.

25              Counsel has provided detailed biographies for each of

1    the paralegals who have worked on the case.  Each has

2    sufficient education and experience to command a rate higher

3    than the $75 per hour rate that I described as being supported

4    by the case law.  Based on my knowledge of market conditions, I

5    believe that the proposed rate of $125 per hour is appropriate

6    for each of them as a result of their specialized skill and

7    training, as well as the efficient use of their time in this

8    case as demonstrated in the billing records.

9            As a result, I calculate plaintiffs' attorneys' fees

10   as follows:

11           Mr. Kirschenbaum, a rate of $500 per hour for 129.3

12   hours; total, 64,500.

13           Mr. Nussbaum, who's a partner, $500 per hour for 409.8

14   hours, totaling $204,900.

15           Mr. Nussbaum as an associate, at a rate of $400 an

16   hour, for 432.8 hours, yielding $173,120.

17           Mr. Buzzard at a rate of $400 for 234.4 hours,

18   yielding $94,320.

19           Ms. Seliger at a rate of $400 an hour for 17.7 hours,

20   yielding $7,096.

21           Ms. Schulman at a rate of $500 per hour for 10.6

22   hours, yielding $5,300.

23           And paralegals at a rate of $125 for 101.7 hours,

24   yielding $12,712.50, aggregating $561,948.50.

25           This is the amount of attorneys' fees that plaintiffs'

1   counsel are entitled to under the NYLL.  This is also the

2   lodestar against which I will measure the proposed percentage

3   of fund award.  Again, the total was $561,948.50.

4           The Costs as the Prevailing Party Under the NYLL.

5           Plaintiffs' counsel also moves the Court for

6   reimbursement of $20,200.57 in litigation expenses under the

7   NYLL.  *See* P's Mem. at 16-17.  The costs for which plaintiffs

8   seek reimbursement include filing and service costs, postage,

9   deposition costs, interpreting fees and transcripts.  The costs

10  for which they seek reimbursement are properly compensable

11  under the NYLL.  Therefore, the Court awards plaintiffs

12  $20,200.57 in litigation costs.

13          C.  Attorneys' Fees as the Prevailing Party Under the

14  NYCHRL.

15          The NYCHRL provides that a court, "in its discretion,

16  may award the prevailing party reasonable attorneys' fees,

17  expert fees and other costs."  N.Y.C. Admin. Code

18  Section 8-502(g).  Here, I believe that as the prevailing

19  party, counsel for Mr. Zivkovic is entitled to reasonable

20  attorneys' fees on account of his success litigating the

21  discrimination claims against defendants Valbella Midtown,

22  Mr. Ghatanfard, and Mr. Luca.  As with the NYLL claims, the

23  Court must evaluate the reasonableness of the requested fees.

24  For the reasons described before, I conclude that the rates

25  billed by Messrs. Nussbaum and Buzzard -- the only people who

1    billed on account of these claims -- are reasonable.

2            Mr. Nussbaum billed in the aggregate only 14.2 hours

3    with respect to these claims; Mr. Buzzard billed only 1.4

4    hours.  This amount of time to pursue claims that proceeded

5    through a successful trial is very reasonable.  Indeed, it is

6    extraordinarily little.  While Mr. Zivkovic's assault claim is

7    not subject to the fee-shifting provisions of the NYCHRL, the

8    work to prosecute that claim is clearly inextricably

9    intertwined with the NYCHRL claims the conduct that underpinned

10   the discrimination claim was also at the heart of the assault

11   claim.  "Where the district court determines that the

12   successful and unsuccessful claims are 'inextricably

13   intertwined' and 'involve a common core of facts or [are] based

14   on related legal theories,' it is not an abuse of discretion

15   for the Court to award the entire fee."  *Reed v. A.W.*

16   *Lawrence & Co.*, 95 F.3d 1170, 1183 (2d Cir. 1996).

17           For these reasons I'm awarding to Mr. Zivkovic $7,060

18   in attorneys' fees pursuant to the NYCHRL.  This award will be

19   entered against Valbella Midtown, Mr. Ghatanfard, and Mr. Luca.

20           D.  Percentage of Fund Recovery

21           In addition to the recovery of attorneys' fees under

22   the NYLL, plaintiffs' counsel seeks an award of one third of

23   the common fund recovery.  First off, I want to be clear that

24   the common fund recovery here is $4,509,868.78 -- the common

25   fund recovery does not include the amount awarded to

1    Mr. Zivkovic individually, which amounts to $680,000.  I do not

2    believe that I need to approve the distribution of a portion of

3    that recovery to his counsel pursuant to whatever fee

4    arrangement they have in place.  I am focused on the common

5    fund recovery for the benefit of the class.  33 percent of the

6    common fund is $1,503,274.56.

7           Counsel may recover a percentage of the common fund in

8    addition to statutory attorneys' fees.  See *Cnty. of Suffolk v.*

9    *Long Island Lighting Co.*, 907 F.2d 1295, 1327 (2d Cir. 1990)

10   ("The purpose of fee-shifting statutes, however, is to

11   encourage the prosecution of certain favored actions by private

12   parties.  Under the facts herein, we perceive no basis for

13   concluding that giving effect to the equitable fund doctrine

14   would conflict with this purpose.").  Here, too, I perceive no

15   basis to conclude that giving effect to the equitable fund

16   doctrine would conflict with the purpose behind the

17   fee-shifting provisions of the NYLL.

18          The trend in the Second Circuit is to use the

19   percentage of the fund method to compensate attorneys in common

20   fund cases, although the Court has discretion to award

21   attorneys' fees based on either the lodestar method or the

22   percentage-of-recovery method.  See *Fresno Cty. Employees' Ret.*

23   *Ass'n v. Isaacson/Weaver Family Tr.*, 925 F.3d 63, 68 (2d Cir.

24   2019).

25          The notice provided to class members advised that

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1  class counsel would apply for attorneys' fees for up to

2  one-third of the settlement fund.  No class member objected to

3  that provision.

4          1. *Goldberger* Factors.

5          Reasonableness is the touchstone when determining

6  whether to award attorneys' fees.  In *Goldberger v. Integrated*

7  *Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000), the Second Circuit

8  set forth the following six factors to determine the

9  reasonableness of a fee application:  (1) the time and labor

10  expended by counsel; (2) the magnitude and complexities of the

11  litigation; (3) the risk of the litigation; (4) the quality of

12  the representation; (5) the requested fee in relation to the

13  settlement; and (6) public policy considerations.  *Id.* at 50.

14          2.  Class Counsel's Time and Labor

15          Plaintiffs' counsel spent a substantial amount of time

16  on this litigation, as detailed in the billing records provided

17  to the Court.  That labor was appropriate, given the fact that

18  the case was fully litigated through trial.  This factor weighs

19  in favor of the requested award of fees.

20          3.  Magnitude and Complexity of the Litigation

21          The size and difficulty of the issues in a case are

22  significant factors to be considered in making a fee award.

23  *In Re Prudential Sec. Inc. Ltd. P'ship Litig.*, 912 F.Supp. 97,

24  100 (S.D.N.Y. 1996).  This case is one of some magnitude,

25  concerning separate subclasses containing many individuals.

M6fezivc

1    The case proceeded to trial and raised complex issues of law.

2    The amount sought by plaintiffs' counsel is commensurate with

3    the magnitude and complexity of this litigation.

4         4.  The Risk of Litigation

5         Plaintiffs' counsel faced significant risk in

6    prosecuting this action and proving the merits of the claims.

7    And, given the complexity of the case, the risk was very large,

8    and would have required extensive work, as it did.  Plaintiffs'

9    counsel bore that risk on a contingency basis over an extended

10   period of time.  This factor weighs in favor of granting

11   plaintiffs' counsel's request.

12        5.  Quality of Representation

13        Plaintiffs' counsel have considerable experience in

14   wage and hour class action lawsuits, such as this.  They did

15   well in presenting the issues to the Court and the jury.  I

16   questioned the wisdom of their partial summary judgment

17   motions -- predicting that they would merely delay the final

18   resolution of the case -- but nonetheless, I find that the

19   quality of their representation was high.  Accordingly, I find

20   that this *Goldberger* factor weighs in favor of approving the

21   requested fee award.

22        6.  When determining whether a fee award is

23   reasonable, courts consider the social and economic value of

24   the class action, "and the need to encourage experienced and

25   able counsel to undertake such litigation."  *In re Sumitomo*

1   *Copper Litig.*, 74 F.Supp. 2nd 393, 399 (S.D.N.Y. 1999). Here,

2   the Court sees considerable public benefit to pursuing these

3   claims, particularly considering that some of the class

4   members' claims are for a relatively small dollar amount.

5   *Berni v. Barilla G. e R Fratelli S.p.A.*, 332 F.R.D., 14, 36

6   (E.D.N.Y. 2019), vacated and remanded sub on other grounds nom.

7   *Berni v. Barilla S.p.A.*, 964 F.3d 141 (2d Cir. 2020) ("the very

8   small claims of the members of the class when taken separately

9   would not justify the expense of litigation."). In addition,

10  "there is ... commendable sentiment in favor of providing

11  lawyers with sufficient incentive to bring common fund cases

12  that serve the public interest." *Goldberger*, 209 F.3d at 51.

13  Accordingly, public policy, and more specifically, the goal of

14  incentivizing lawyers to bring private enforcement actions such

15  as this one, favors granting plaintiffs' counsel's request.

16          After considering all the *Goldberger* factors, the

17  requested fee award appears to be reasonable.

18          7.  Lodestar "Cross Check"

19          To ensure the reasonableness of a fee awarded under

20  the percentage of the fund method, district courts may

21  cross-check the proposed award against counsel's lodestar. *See*

22  *Goldberger*, 209 F.3d at 50.

23          The lodestar in this case is $561,948.50. That means

24  that the requested fees of $1,503,274.56 represents a

25  multiplier of 2.675 of the lodestar calculated by the Court.

1   It would be a higher lodestar if I include the direct fee

2   recovery under the NYLL.  I'm going to analyze this using the

3   2.65 number, but my conclusion would be the same even if I used

4   the higher number.

5          This lodestar multiplier falls well within the range

6   of appropriate lodestar multipliers; indeed, courts often award

7   lodestar multipliers of up to eight times the lodestar, and in

8   some cases even higher.  *Viafara v. MCIZ Corp.*, 2014 WL

9   1777438, at *14 (S.D.N.Y.. May 1, 2014).

10         The requested fee award is within the range of what

11  courts in this circuit regularly award in class actions such as

12  this one, whether calculated as a percentage of the fund or in

13  relation to class counsel's lodestar.  Moreover, the factors

14  established for the review of attorneys' fees awards in

15  *Goldberger* supports the conclusion that the requested fee is

16  reasonable.

17         D.  Service Awards for Class Representatives

18         The service awards requested for the class

19  representatives here are excessive.  An incentive award may be

20  given to compensate named plaintiffs for efforts expended "for

21  the benefit of the lawsuit."  *Dornberger v. Metro Life Ins.*

22  *Co.*, 203 F.R.D. 118, 124 (S.D.N.Y. 2001).  Here, plaintiffs'

23  counsel seek an award of $15,000 for each of the four class

24  representatives who testified at trial in this case.  Counsel

25  asserts that each of the class representatives "participated in

1   the litigation by producing documents, sitting for a

2   deposition, and preparing for trial."  Pls. Mem. at 25.

3          First off, the Court does not find that a payment to

4   Zivkovic -- who's been awarded $680,000 in this case as a

5   result of his direct claims in this case -- is either necessary

6   or appropriate.  *See e.g. Silverberg v. People's Bank*,

7   23 Fed. Appx. 46, 48 (2d Cir. 2001); *Brown v. Steinberg*, 1990

8   U.S. Dist. LEXIS 13516, at *11.  Mr. Zivkovic has been amply

9   compensated for his time testifying at trial.

10          "In calculating incentive payments, courts consider

11   'the existence of special circumstances, including the personal

12   risk (if any) incurred by the plaintiff applicant in becoming

13   and continuing as a litigant, the time and effort expended by

14   that plaintiff in assisting in the prosecution of the

15   litigation or in bringing to bear added value (e.g., factual

16   expertise), any other burdens sustained by the plaintiff in

17   lending himself or herself to the prosecution of the claim and

18   of course, the ultimate recovery.'" *Frank v. Eastman Kodak Co.*,

19   228 F.R.D. 174, 187 (W.D.N.Y. 2005) (quoting *Roberts v. Texaco,*

20   *Inc.*, 979 F.Supp. 185, 200 (S.D.N.Y. 1997)).  Plaintiffs'

21   application for an incentive payment to Mr. Zivkovic does not

22   demonstrate a "level of special circumstances warranting an

23   incentive award." *Silverberg*, 23 Fed. Appx. at 48.

24          As noted, Mr. Zivkovic was pursuing individual claims,

25   as well as his classwide claims.  His testimony at trial

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1    contained testimony both about the classwide matters as well as

2    about his individual claims.  Having observed his individual

3    testimony and the amount of time and labor involved, I don't

4    believe that there is a need for additional payment to

5    Mr. Zivkovic as a result of his work, given the amount of

6    recovery for each of the class members.

7              There is "no indication that Mr. Zivkovic assumed a

8    risk or inconvenience not shared by the other class members

9    which is of such a magnitude to merit" an incentive award, and

10   the plaintiffs haven't provided specific evidence of any

11   purported risks magnitude.  Here, Mr. Zivkovic was amply

12   motivated to provide testimony, I believe, in support of both

13   his individual claims, as well as those on behalf of the class.

14             For the same reasons, I don't believe that the record

15   supports granting each of the testifying class representatives

16   other than Mr. Zivkovic an award of the size that has been

17   requested.  The amount of work that they did as described does

18   not appear to justify an award of $15,000 each.  The amount of

19   work that they did as described in the affidavit, and based on

20   my observations of the testimony of each of the individuals,

21   was more modest.  As a result, I will approve an incentive

22   award to each of the three representative plaintiffs who

23   testified at trial other than Mr. Zivkovic -- that is, Sanchez,

24   Marin and Rendon -- in the amount of $5,000 each.

25             III

1          In conclusion, I'm awarding plaintiffs' counsel

2     $561,948.50 in attorneys' fees pursuant to the fee-shifting

3     provisions of the NYLL.  I am awarding them $20,200.57 in costs

4     pursuant to the statute.  Plaintiffs' counsel are entitled to

5     an award of 33.3 percent of the common fund recovery for the

6     class action, or $1,503,274.56.  I am also awarding lead

7     plaintiffs Sanchez, Marin and Rendon a representative fee of

8     $5,000 each.  The obligation to pay the amounts that I have

9     just described is borne jointly and severally by Valbella

10    Midtown, Valbella Meatpacking and Mr. Ghatanfard.  In addition,

11    I am awarding counsel for Mr. Zivkovic $7,060 in attorneys'

12    fees pursuant to the NYCHRL.  The obligation to pay this amount

13    will be borne jointly and severally by Valbella Midtown,

14    Mr. Ghatanfard, and Mr. Luca.

15          So thank you very much for your patience, counsel, as

16    I got through that.  My proposal would be that you provide me

17    with a new form of judgment that includes the award of fees

18    that I just described.  The attorneys' fees should be included

19    in the judgment.  As I understand the law, interest on this

20    component of the award does not begin to accrue until judgment

21    with respect to it has been entered.

22          So what I would propose is that the parties present to

23    me a revised form of judgment consistent with this decision

24    that would also award attorneys' fees in the amount that I just

25    described.  I could then enter the judgment, and the parties

1   could go off to do whatever you want to do next with respect to

2   the case.

3           Separately, I want to spend a little bit of time

4   talking about claims administration and the process going

5   forward.  I did not grant the request that I approve $30,000

6   for a payment of a claim administrator.  I didn't want address

7   that because I'm not sure that I'm yet -- I should say I don't

8   believe that I'm in a position yet to grant that request.  I

9   would like to review the résumé and qualifications of the

10  proposed claim administrator, as well as their costs and any

11  applications for expense reimbursement before I provide

12  authorization for their fee.

13          The other thing that I want to -- so I want to talk

14  about how it is that I'll be getting from you information about

15  the claims administrator who will be doing the distribution

16  work.  There are two other data points regarding the case going

17  forward that I want to talk with the parties about, perhaps

18  principally plaintiff.

19          One is once we have a claims administrator on board, I

20  would expect to see a more detailed plan of distribution than

21  what's been described to me to date.  I have unsworn

22  distribution percentages for the class members, but first I

23  would need for that information to be presented to me in an

24  affirmation or affidavit.

25          Second, more significantly, I'd like to see how it is

M6fezivc

1    that the claims administrator is planning to get the money out

2    to recipients, and how it will handle issues such as people

3    that they're not able to track down; how any overage, to the

4    extent there is any, will be allocated.

5              So there are a number of distribution-related issues

6    that, counsel, you're familiar with, which I just don't have in

7    front of me, and I'm not in a position to endorse.  And I think

8    that the process there would be helped along by the presence of

9    a claims administrator who can help the plaintiffs' counsel

10   present a more detailed proposal to me.

11             As a threshold, however, with respect to that issue, I

12   recognize that the first point is to make sure that there's

13   something to distribute.  And the issues there are twofold:

14   One is when will money be coming from the defendants; none of

15   them, to my knowledge, have declared bankruptcy, so I assume

16   that they are going to be paid, be paying or pursued for

17   payment at some point.

18             And two, to the extent that payment comes in over time

19   or incrementally -- not that I'm saying that it should or will,

20   but I would like to know how the plaintiffs wish to preserve

21   any moneys that come in for the payment of the common fund or

22   otherwise, and how they will be divvied up, where there are,

23   I'll call it, competing obligations.

24             So, for example, Mr. Ghatanfard and Midtown owe both

25   class obligations and the obligations to Mr. Zivkovic.  So in

1   the hypothetical scenario in which we don't receive full

2   payment with respect to all of the claims up front, how will

3   allocation decisions be made with respect to the cash that is

4   received?

5          So I usually like to assume that everything will be

6   paid up front quickly, and maybe that will be the case here.

7   But I want to at least acknowledge that that is a part of the

8   plan here as to which I don't have much information, and that

9   which I think I need to know more in order to develop a plan

10  for depositing any funds received, and then distributing them.

11         All of this is brought on by your request for

12  appointing, or I should say approving, the compensation of a

13  claims administrator.  I think there are a number of other

14  threshold issues that we need to address, and as to which I

15  will want to solicit your views, counsel for plaintiffs.

16         So I apologize for the monologue.  My two questions

17  are, one, what's your view about sending me a revised proposed

18  judgment reflecting the things that we just talked about; and

19  two, what are your proposals regarding how to collect and

20  obtain more detail regarding the distribution of any funds from

21  the defendants here?  And I'll hear from each party in turn

22  with respect to each of those issues, beginning with number one

23  regarding the judgment.

24         Counsel for plaintiffs, what do you think about

25  whether or not you can give me a new proposed judgment

1    reflecting the attorneys' fees as well?

2              MR. NUSSBAUM:   Thank you, your Honor.  Yosef Nussbaum

3    for plaintiffs and the class.

4              We can -- we can get a new proposed judgment to the

5    Court pretty quickly.  We'd want to send it to defendants

6    first, just to run it by them.

7              There is one issue that we would like to include in

8    this new proposed judgment that I don't think is an earlier

9    draft, which is to actually include the names of all of the --

10   the subclass members who are the beneficiaries of the judgment.

11   In preparing for the conference, I think that Rule 23 requires

12   the names of all these individuals to be put in the judgment,

13   and I don't think that was in the previous draft, but we would

14   like to incorporate that as well as, you know, the attorneys'

15   fees that the Court awarded today.

16             I'm happy to address the second issue as well.  I

17   don't know if the Court wants to hear from all the parties

18   first.

19             THE COURT:   Thank you.  I'll hear from the other

20   parties first.

21             With respect to the identity of the class members,

22   I'll come to you in a moment.  I'm not going to take a position

23   on that.  I certainly don't mind if you and the defendants talk

24   about adding additional issues to it.

25             Let me turn to counsel, first, for Mr. Ghatanfard and

M6fezivc

1    Mr. Luca, just on issue one, namely the judgment proposal.  Can

2    you work with counsel for plaintiffs to develop a new proposed

3    judgment to present to me for hopefully prompt entry?  Counsel

4    for Mr. Luca and Ghatanfard?

5              MR. COMER:   Your Honor, this is Neal Comer.

6              I would certainly be prepared to look at what they

7    draft and go through it with them.  And if it's what your Honor

8    has ruled, then I suppose we would not object to it.

9              THE COURT:   Thank you.

10             Counsel for Midtown?

11             MR. SPIELBERG:   Yes, Judge.  We would be in the same

12   position.

13             THE COURT:   Thank you.

14             Counsel for Meatpacking?

15             MS. BIANCO:   Maria Louisa Bianco.  I agree, your

16   Honor.

17             THE COURT:   Thank you.

18             So let's turn to issue two -- I'm sorry, let me finish

19   up with issue one.

20             Issue one, counsel for plaintiffs, please coordinate

21   with your colleagues on the other side, present me with a

22   proposed form of judgment promptly.  I will review it promptly

23   and try to execute it and enter it so that there is a judgment

24   on the boards in the case.

25             With respect to issue two, counsel for plaintiffs, how

1    do you respond?

2              MR. NUSSBAUM:   Thank you, your Honor.  Yosef Nussbaum

3    for the plaintiffs again.

4              We appreciate the Court's comments on engaging a

5    claims administrator to work through the nitty-gritty issues of

6    how the -- any funds that are recovered would be distributed.

7    What we would do is we would send out a request for a bid.

8    There are a few of the claims administrators that I'm sure your

9    Honor has seen before in labor law class actions; try to find

10   who can get us the best quote.  I have to explain to them

11   exactly what it is we're going to need here.  And as the Court

12   highlighted, one of the important issues would be to figure out

13   where the subclasses are today, or the most recent contact

14   information that we can get for them, for a significant part of

15   the task here would be skip tracing and the like, to try to get

16   the class members' most recent addresses.  Once we find someone

17   who, or a company that gives us, you know, the best proposal,

18   we would then submit to the Court a letter and then try to

19   outline exactly what the specifics of the proposal are for your

20   Honor's approval.

21             In terms of allocating the judgment, what we would

22   suggest and what we've seen in the past is to allocate it on a

23   pro rata basis.  So, you know, the judgment, you know, is

24   $6 million, and $100,000 comes in, and that's -- you know, we

25   know the percentages of how that 6 million number was being

1    divided to all of the -- all of the judgment creditors; we
2    would just divide it accordingly.
3                THE COURT:   Thank you.
4                Let me just pause --
5                MR. NUSSBAUM:   There's one other --
6                THE COURT:   I'll remind you of the one other -- just
7    pause you on the one issue.
8                I don't know when moneys will be coming in in respect
9    of this judgment and in what increments.  So just one issue to
10   put on the table for your consideration, as you're thinking
11   about that issue, is the size of checks to class members.
12               So I can imagine a situation in which, hypothetically,
13   not the full amount is paid up front, and in which a smaller
14   amount is instead received.  There will be a question about
15   whether and to what extent those moneys should be distributed
16   at all, perhaps, to class members until they hit a trigger
17   amount at which it makes sense to do the work, to do the
18   distribution.  So just an issue to think about.  Again, I
19   don't -- I'm going to assume that the defendants are going to
20   pay promptly and in full, since none have gone bankrupt, but it
21   may be that that is a nuance worth thinking about here.
22               The other issue that I'd raised was the simple
23   question of where money goes when it comes in, assuming money
24   comes in.  Typically I'm asked to approve something like an
25   escrow arrangement into which cash will be deposited and held

1    for distribution in accordance with a preapproved plan of

2    distribution.  One thing that I don't have here yet is such an

3    application that is to establish some kind of an escrow account

4    into which these moneys will be deposited and only be released

5    subject to the distribution.  That's the other issue that I

6    wanted to ask you to consider, and either address here or in

7    your next submission to the Court.

8              Any thoughts on that, counsel for plaintiffs?

9              MR. NUSSBAUM:   Thank you, your Honor.  Yosef Nussbaum

10   again.

11             We would open an escrow account and ask that the Court

12   allow us any moneys that come in be deposited into -- into the

13   class counsel's escrow account.

14             THE COURT:   Thank you.  Good.

15             MR. NUSSBAUM:   I do have one comment on the Court's

16   previous discussion on if the judgment's paid in installments,

17   how to handle that.  And I have a little bit of experience with

18   this in the past.  I think the situations are too numerous to

19   go through now and would not be fruitful to go through now, but

20   I think we would have to keep the Court involved and, you know,

21   ask for the Court's permission.

22             You know, if a number that was too small came in to

23   justify sending checks to about 400 class members, we would ask

24   the Court's permission to continue to hold the money in escrow

25   until more money came in that would justify sending checks out.

M6fezivc

```
 1            THE COURT:   Thank you.
 2            That's my assumption.  It may be that in whatever
 3    proposal you give me, you want to consider prebaked trigger
 4    points so you don't need to come to me for preapproval for each
 5    distribution.  But I'll leave that to you.  Thank you for being
 6    on top of the question.
 7            I think this might be, too, principally an issue for
 8    counsel for plaintiffs, but if there's any defendant who wishes
 9    to be heard with respect to those issues, I welcome any
10    comments.
11            First, counsel for Mr. Luca and Ghatanfard?
12            MR. COMER:   Neal Comer here, Judge.
13            No, your Honor.  No further comment.
14            THE COURT:   Thank you.
15            Counsel for Midtown?
16            MR. SPIELBERG:   Leonard Spielberg.  No further
17    comment, Judge.
18            THE COURT:   Thank you.
19            Counsel for Meatpacking?
20            MS. BIANCO:   Maria Lisa Bianco.  Nothing from me, your
21    Honor.
22            THE COURT:   Thank you very much.
23            I look forward to seeing the judgment, and then the
24    parties will be off to the races.
25            So, counsel for plaintiffs, please do think about the
```

M6fezivc

1    distribution escrow issues and present whatever you think is

2    appropriate to the Court for approval well in advance of

3    receipt of funds.

4            Thank you all very much.  This proceeding is

5    adjourned.

6            (Adjourned)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT  5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————
                              :

NINO MARTINENKO, on behalf of herself  :
and others similarly situated,             :
                              :
                Plaintiff,    :
                              :
      - against -         :
                              :
212 STEAKHOUSE, INC., and      :
NIKOLAY VOLPER,            :
                              :
              Defendants.  :
—————————————————————:

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __4/12/2023__

22-CV-518 (JLR) (RWL)

**REPORT AND RECOMMENDATION
TO HON. JENNIFER L. ROCHON:
<u>MOTION FOR SANCTIONS</u>**

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

This is an action for unpaid wages and other violations of the Federal Labor Standards Act ("FLSA") and the New York Labor Law (NYLL). The Court previously awarded reasonable attorney's fees to Plaintiff Nino Martinenko ("Plaintiff" or "Martinenko") against Defendants 212 Steakhouse, Inc. ("212") and its owner Nikolay Volper ("Volper") for having to move to compel Defendants to comply with their discovery obligations. Since then, Plaintiff asserts, Defendants have committed further discovery violations meriting sanctions. Accordingly, Plaintiff has moved for additional sanctions pursuant to Federal Rule of Civil Procedure 37 ("Rule 37"). In particular, Plaintiff seeks (1) factual findings directly related to documents and information allegedly withheld by Defendants in violation of the Court's orders; (2) a finding that Defendants are in contempt and imposition of a coercive fine until they produce outstanding records; (3) payment of a court reporter's fee incurred when Defendant 212 failed to appear for its deposition on the first date for which it was noticed; and (4) payment of Plaintiff's attorney's fees incurred in connection with the instant motion and the subject discovery violations.

1

The matter has now been referred to me for determination of the amount of fees to be awarded in connection with the earlier motion to compel, and whether further sanctions should be awarded against Defendants for additional violations. For the reasons set forth below, I recommend that the Plaintiff's motion be GRANTED IN PART and DENIED IN PART.

## Factual and Procedural Background

The facts are derived primarily from the docket, the Declaration of Denise A. Schulman, dated October 31, 2022 (Dkt. 63) ("Schulman Decl."), the Declaration of Nino Martinenko, dated October 31, 2022 (Dkt. 64) ("Martinenko Decl."), and the accompanying exhibits to those declarations.

**A.    The Claims, The Collective, And The Putative Class**

212 operates a restaurant in midtown New York called 212 Steakhouse. Volper is the owner of 212. Martinenko worked at 212 as a server from 2016 through 2018, and then again from early 2021 through December 2021. On January 20, 2022, Martinenko filed her Complaint, alleging that she was subject to multiple improper pay practices applicable to all front-of-house employees who worked at 212: Defendants' deduction of a tip credit without having provided employees the requisite notice; failure to pay one-and-a-half times regular rate of pay for overtime hours worked in excess of 40 per week; failure to pay the requisite "spread-of-hours" premium for working more than 10 hours in one day; and failure to provide requisite wage notices and statements. (*See generally* Dkt. 1.)

On April 4, 2022, Martinenko moved for conditional certification of a collective action on her FLSA claim. (Dkt. 19.) The Court granted that motion on April 26, 2022,

authorizing Martinenko to send notice of the collective action to all front-of-house employees employed by Defendants on or after January 20, 2019.  *Martinenko v. 212 Steakhouse Inc.*, No. 22-CV-518, 2022 WL 1227140 (S.D.N.Y. April 26, 2022).  On May 3, 2022, Defendants produced a collective list of 24 front-of-house employees, following which Martinenko disseminated the Court-approved notice.  (DiGiulio Decl. ¶ 5.[1])  One former employee, Dagmara Huk, joined as an opt-in Plaintiff.  (Dkt. 32.)

On December 9, 2022, Martinenko moved for class certification of the NYLL claims pursuant to Federal Rule of Civil Procedure 23.  The putative class is defined as "all tipped employees – servers, runners, bussers, and bartenders – who worked for Defendants at any time on or after January 20, 2016 at 212 Steakhouse."  (Dkt. 70.)  That motion is being decided concurrently with the instant motion for sanctions and will be referred to herein as the "Class Cert. R&R."

## B.    Defendants' Initial Failure To Comply With Discovery And Court Orders

Martinenko served discovery requests on Defendants on April 7, 2022.  (Schulman Decl. ¶ 7.)  Defendants did not respond to those requests by May 9, 2022, when responses were due.  (*Id*. at ¶ 8.)  On May 19, 2022, Martinenko's counsel e-mailed Defendants' counsel to request a meet and confer.  Defense counsel responded to that e-mail on May 23, 2022 by informing Martinenko's counsel that his father had recently passed away.  (*Id*. at ¶ 9.)  As defense counsel did not answer the question when he would be able to respond to the outstanding discovery requests, Martinenko asked the Court to set a reasonable deadline for Defendants' responses.  (Dkt. 33; Schulman Decl.

---

[1] "DiGiulio Decl." refers to the Declaration Of Michael DiGiulio filed in support of Plaintiff's motion for class certification at Dkt. 72.

¶ 10.)   On May 27, 2022, the Court ordered Defendants to file a responsive letter by June 1, 2022.   (Dkt. No. 34.)   Defendants neither filed a letter nor responded to Plaintiff's discovery requests.   (Schulman Decl. ¶ 11.)

On June 13, 2022, Plaintiff asked the Court to order Defendants to fully respond to Martinenko's discovery requests and produce all responsive documents by June 27, 2022.   (Dkt. 36.)   The Court so ordered on June 13, 2022.   (Dkt. 37.)   Defendants, however, did not respond to Martinenko's discovery requests or produce *any* responsive documents by June 27, 2022.   (Schulman Decl. ¶ 13.)

On June 30, 2022, Martinenko moved for sanctions pursuant to Rule 37(b)(2) and to compel Defendants to respond to Martinenko's discovery requests.   (Dkt. 38.)   On July 5, 2022, the Court ordered Defendants to respond to Plaintiff's discovery requests by July 15, 2022 and authorized Martinenko to move for her reasonable expenses incurred in connection with the motion.   (Dkt. 41.)   Defendants did not comply with the Court's July 15, 2022 order.   While Defendants produced some discovery, they did not provide complete responses to Martionenko's discovery requests or produce all responsive documents by July 15, 2022.   (Schulman Decl. ¶ 16.)   Accordingly, on July 18, 2022, Martinenko filed a status report outlining the discovery that remained outstanding.   (Dkt. 43.)

The Court held a conference on July 22, 2022 regarding the matters raised in Martinenko's status report.   (Schulman Decl. ¶ 19 and Ex. 4 (transcript of conference).)   At the conference, the Court ordered Defendants to produce three sets of materials by August 5, 2022.  First, either (1) "a stipulation to the plaintiff indicating that the individual defendant had sole ownership of the restaurants, and further indicating that the corporate

4

defendant's gross annual sales exceeded that which would be sufficient for the corporate defendant to be considered an employer under FLSA and the New York Labor Law," or (2) documents, including tax returns, responsive to Requests for Production Nos. 19, 24, 26, and 27.[2]  (Schulman Decl. Ex. 4 at 8:15-9:4.)  Second, documents produced in prior wage and hour litigation against Defendants.   (*Id*. at 11:25-12:10 (referencing Request for Production No. 61).)  And third, documents responsive to Request for Production No. 29, which requested "[a]ll documents reflecting the amount of tips paid by the Restaurant's customers during the Liability Period."   (*Id*. at 13:7-19; Dkt. 43-2 at 6.)

The Court also ordered Defendants to produce several additional categories of documents by August 19, 2022: all bank statements from the liability period (Schulman Decl. Ex. 4 at 10:3-15); all putative class members' time records and pay records, including wage statements, with the option to redact names and contact information (*id*. at 6:20-7:20); a class list with the option to replace names with  numeric identifiers (*id*. at 13:20-14:22); and the identities of class members who Defendants claimed have released their wage and hour claims (*id*. at 14:24-15:4).

At the July 22, 2022 conference, the Court stated that it was "prepared to impose sanctions" for Defendants' failure to produce all of Martinenko's pay records and that such sanctions could include "finding facts in favor of the plaintiff."   (*Id*. at 3:20-25.)   Although

---

[2] The Court's order at the July 22, 2022 conference with respect to "4 and 5" (Schulman Decl. Ex. 4 at 8:18) refers to points 4 and 5 on page 2 of Plaintiff's July 18, 2022 letter. (*See id*. at 2:9-23 (stating that the Court will address the categories in Plaintiff's letter in order, and starting with Plaintiff's point 1 on the first page of her letter).)    Point 4 addressed documents sufficient to show Volper's ownership interest in the restaurant throughout the liability period (being responsive to Request for Production No. 19), and point 5 addressed documents reflecting gross annual sales and other financial items (being responsive to Requests for Production Nos. 24, 26, and 27).   (Dkt. 43 at 2.)

the Court declined to impose sanctions at that time with respect to some of the documents yet to be produced (*id.* at 7:11-12), the Court indicated its willingness to impose additional sanctions if Defendants continued to violate the Court's orders (*id.* at 12:10-11 (Department of Labor case materials), 13:18-19 (tip documents).)  The Court directed Martinenko to make any sanctions motion, including with respect to seeking fees in connection with her June 30, 2022 motion to compel, after August 5, 2022.  (*Id.* at 15:15-23.)  The Court subsequently approved Martinenko's request to extend her time to make her sanctions motion until after she took a 30(b)(6) deposition of 212.  (Dkt. 50.)  Martinenko deposed Volper in that capacity on October 6, 2022, and questioned him about documents relevant to the case.  (Schulman Decl. ¶ 24 and Ex. 7.)

**C.    Defendants' Continued Non-Compliance**

Defendants produced some responsive documents and information, but did not fully comply with the Court's June 13, July 5, and July 22, 2022 orders.  The items at issue include the following.

**1.  Documents Concerning The Restaurant's Ownership And Revenue**

Defendants complied in part with the July 22, 2022 order's directive to provide a stipulation or documents identifying the restaurant's owners and annual revenue throughout the liability period.  Electing to produce documents, Defendants produced 212's tax returns for 2016 through 2020, which indicate that in each of those years the restaurant's gross sales exceeded $500,000 and that Volper was the sole owner. Defendants have not, however, provided any revenue or ownership documents or information for 2021 or 2022.  (Schulman Decl. ¶ 25.)  As of Volper's deposition, no 2021 and 2022 tax returns had been completed.  (Schulman Decl. Ex. 7 at 139:16-19.)  At

deposition, Volper testified that he formed and owns 212 but could not answer whether anyone else owned stock in the business at any time without consulting documentation; he also had not calculated whether 2021 revenue was higher than 2020 revenue, even though both ownership and annual revenue throughout the liability period were topics identified in the deposition notice. (Schulman Decl. Ex. 7 at 16:20-17:10, 139:24-140:3; Ex. 5 at Matters Nos. 15, 16.)

### 2. Tip Sheets

The Court ordered Defendants to produce all tip sheets from the liability period (January 20, 2016 to the time of trial). Defendants have produced daily tip sheets from the period January 4, 2021 to July 3, 2021. (Schulman Decl. ¶ 26.) Volper testified at his October 2022 deposition that he had tip sheets, that had not been produced, from two to three of the immediately preceding months. (Schulman Decl. Ex. 7 at 145:11-18.) Volper also acknowledged that the restaurant maintains weekly tip sheets, even though it has not produced any. (Schulman Decl. Ex. 7 at 145:19-147:14; *see also* Martinenko Decl. ¶¶ 8-12.) At the same time, Volper testified that he produced whatever tip sheets he had found "so far" and that "whatever I find I passed to my attorney." (Schulman Decl. Ex. 7 at 144:19-25.)

### 3. Bank Statements

The Court ordered Defendants to produce all bank statements for the liability period. On August 19, 2022, Defendants produced 212's bank statements from July 2016 to December 2021. (Schulman Decl. ¶ 27.) Even though Defendants produced those documents in August 2022, they did not produce any 2022 bank statements. (Schulman Decl. ¶ 29.)

7

#### 4. Class Members' Pay Records And Wage Statements

The Court ordered Defendants to produce all putative class members' pay records and wage statements from the liability period. Defendants have not produced any of these documents, with the exception of having produced wage statements for Martinenko and Huk.[3] (Schulman Decl. ¶¶ 31-33.) At deposition, Volper testified that one type of pay record used by 212 is a confirmation document employees sign when they receive their pay; the restaurant also prepares a weekly document including hours and payroll information for front- and back-of-house employees. (Martinenko Decl. ¶ 15-19 and Exs. 4, 5; Schulman Decl. Ex. 7 at 90:11-92:4, 105:20-108:4.) In response to the question whether the restaurant maintains those records, Volper testified "I believe we have such records, yes." (Schulman Decl. Ex. 7 at 91:3-7.)

#### 5. Class Members' Time Records

The Court ordered Defendants to produce all putative class members' time records from the liability period. The only responsive documents Defendants have produced are (1) Martinenko and Huk's time records, and (2) time records for two individuals who previously sued Defendants for wage and hour violations. (Schulman Decl. ¶¶ 12, 34; Ex. 12.) Defendant Volper testified that he obtained Martinenko and Huk's time records from 212's "POS" (point-of-sale) system, and that he can obtain the same type of records for all employees going back to 2016. (Schulman Decl. Ex. 7 at 41:7-18, 80:16-82:2.)

---

[3] Some pay records to some extent have been produced indirectly as images of cashed checks that are included in the bank statements for the period from November 2020 to December 2021. (Schulman Decl. ¶ 31.) Those checks are not wage statements, and the check images are insufficient to establish employees' hours or rates of pay, as the checks (1) do not distinguish between wages and tip income for front-of-house employees and (2) appear to reflect net pay after withholdings, and thus do not reflect employees' gross pay. (Schulman Decl. ¶ 32; Ex. 10.)

Volper further testified that the restaurant sends time records to its accountant to process payroll.  (*Id*. at 44:15-45:17.)   Defendants have not submitted any evidence indicating that they made any attempt to obtain the time records from their accountant or to access POS time records for employees other Martinenko, Huk, and two employees who previously sued the restaurant.

### 6.  Class List

Defendants have produced two employee lists, one for the collective action, and one for the putative class action.  First, on May 3, 2022, in accordance with the Court's order granting Plaintiff's motion for conditional collective certification of her FLSA claims, Defendants produced a list that purported to include all of the restaurant's front-of-house personnel employed at the Restaurant on or after January 20, 2019.  (Schulman Decl. ¶ 5 and Ex. 1.)

Second, as noted above, on July 22, 2022 the Court ordered Defendants to produce a putative class list and gave Defendants the option of replacing putative class members' names with numeric identifiers.  The class was defined in Plaintiff's document requests as all non-exempt employees of the 212 Steakhouse restaurant from January 20, 2016 to the time of trial.  (Schulman Decl. Ex. 2 at definitions of "Liability Period" and "Class Members").)  On August 19, 2022, Defendants produced their purported class list. (Schulman Decl. ¶ 37 and Ex. 13.)

Even though the class list was supposed to include employees who worked during any portion of the three years not covered by the collective list (January 20, 2016 to January 19, 2019), the only front-of-house employees included in the class list are the individuals identified on the collective list.  That is evident by comparing the dates of

9

employment and positions of the individuals on both lists. (*Compare* Schulman Decl. Ex. 1 *to* Ex. 13; *see also* Schulman Decl. Ex. 7 at 169:5-10.)  If the front-of-house portion of the class list were accurate, that would mean that 212 did not employ any front-of-house staff from January 20, 2016 to January 19, 2019 that it did not also employ after January 19, 2019.  That scenario is implausible, particularly given the restaurant's high turnover (Schulman Decl. Ex. 7 at 175:3-22); indeed, Martinenko identified 11 front-of-house employees by name whom she worked with during her first period of employment, which ended in 2018, who are not identified on the collective list. (Martinenko Decl. ¶ 21.) Some of those individuals are included in the limited weekly tip sheets in Martinenko's possession. (Martinenko Decl. ¶ 21 and Ex. 2.)  At deposition, Volper further confirmed the existence of a number of front-of-house staff who were not included in either the collective or class list.[4]  (Schulman Decl. Ex. 7 at 171:18-175:19.)

## D.    Additional Transgressions

In addition to Defendants' continued discovery deficiencies, Martinenko asserts two additional incidents meriting sanctions.

---

[4] The scant documents produced by Defendants show that even the collective list was incomplete.  While Defendants have produced just a few months of daily tip sheets, all from the year 2021, three front-of-house employees are listed on those tip sheets who were not included in the collective list.  (Martinenko Decl. ¶ 22 and Exs. 1, 2.)  The listing of back-of-house employees (chefs, cooks, and dishwashers) on the class list is also deficient.  The class list includes at most two back-of-house employees who worked at the restaurant in July 2021.  (*See* Schulman Decl. Ex. 13.)  Yet, a payroll document provided by Martinenko shows that the restaurant employed six back-of-house employees in the week ending July 25, 2021.  (Martinenko Decl. ¶ 17 and Ex. 5.) Defendants never consulted those documents when preparing the class list. (Schulman Decl. Ex. 7 at 168:10-19.)  Although Martinenko requested a class list including both back-of-house and front-of-house employees, she has moved for certification of a class of only front-of-house employees.

### 1. Department Of Labor Case

Plaintiff requested documents related to wage and hour investigations or audits conducted by the federal or New York Department of Labor ("DOL"). (Schulman Decl. Ex. 2 at Request No. 57.) Defendants' response referenced attached documents but did not produce any responsive documents. Martinenko raised this deficiency in her July 18, 2022 letter. (Dkt. 43 at 2.) At the July 22, 2022 conference, defense counsel clarified that there in fact was no DOL case. (Schulman Decl. Ex. 4 at 10:16-11:6.) At his deposition, however, Volper testified that 212 was audited by the New York DOL, the audit resulted in the restaurant having to pay penalties, and Defendants do possess documents relating to that audit. (Schulman Decl. Ex. 7 at 193:16-194:20.) Based on Volper's testimony, Martinenko contends that defense counsel made a material misrepresentation to the Court. According to defense counsel, however, the DOL investigation concerned unemployment insurance, not wage and hour issues. (Def. Mem. at 7.[5]) At the sanctions hearing before this Court, Plaintiff's counsel confirmed that they do not seek sanctions with respect to the DOL documents.

### 2. 212's Non-Appearance For Deposition

On August 11, 2022, Martinenko served a deposition notice on 212 for a September 22, 2022 deposition of its corporate representative. (Schulman Decl. ¶ 21 and Ex. 5.) In an August 31, 2022 letter to the Court asking to defer making a sanctions motion until after the deposition, Martinenko noted the scheduled deposition date. (Dkt. 49.) Yet, no witness or counsel appeared for the deposition on September 22, 2022.

---

[5] "Def. Mem." refers to Defendants Memorandum Of Law In Opposition Of Plaintiff's Motion For Sanctions And Attorney Fees at Dkt. 67.

(Schulman Decl. ¶ 22.)   The court reporter issued an invoice for $313 to Martinenko for having appeared at the deposition that did not go forward.  (Schulman Decl. ¶ 22 and Ex. 6.)  By order of the Court, the deposition was rescheduled for and proceeded on October 6, 2022.  (Schulman Decl. ¶ 23.)

**E.     The Instant Motion For Sanctions**

Martinenko filed the instant motion on November 1, 2022.  (Dkt. 61.)  She seeks three forms of sanctions.   First, Martinenko requests that certain facts be deemed established.  Those facts are (1) the putative class is sufficiently numerous for purposes of class certification; (2) 212's gross annual sales in 2021 and 2022 exceeded $500,000; (3) Volper was the sole owner of 212 during 2021 and 2022; (4) all front-of-house employees who clocked in and out on the restaurant's POS system were paid the applicable New York tip credit minimum wage for the hours for which they were clocked in; (5) Defendants paid putative class members their regular rate for overtime hours (rather than time-and-a-half); and (6) Defendants did not pay putative class members a premium for spread-of-hours.  (Pl. Mem. at 13-17.[6])  Second, Martinenko asks that the Court impose a coercive monetary sanction on Defendants until they produce putative class members' time records and tip sheets.  Third, Martinenko asks that Defendants be required to pay Plaintiff's attorneys fees and costs caused by their failure to comply with discovery and the Court's orders.  (Pl. Mem. at 13.)

Defendants filed an opposing brief on November 15, 2022.  (Dkt. 65.)  Defendants' brief was accompanied by an affidavit in Volper's name that is unsigned and largely vague

---

[6] "Pl. Mem." refers to Plaintiff's Memorandum Of Law In Support Of Motion For Sanctions Pursuant To Fed. R. Civ. P. 37 at Dkt. 62.

and conclusory. (Dkt. 65-1.) Martinenko filed a reply brief on November 22, 2022. (Dkt. 68.) On April 4, 2023, the Court held a sanctions hearing. The Court asked several questions of Defendants' counsel and Volper, the latter of which testified under oath. Plaintiff and defense counsel both were given the opportunity to question Volper.

In general, the Court found Volper's testimony to be not credible, evasive, and vague. Volper testified that he searched for more documents after the July 22, 2022 hearing but that he did not have more documents to produce because either (1) his employees discarded them (although he did not specify which ones or testify as to why he did not preserve them at the outset of the litigation); or (2) he could not act diligently due to his anxiety and depression (even though Defendants have not provided any substantiation to indicate that Volper's anxiety or depression incapacitated him or was so severe that he could not comply with document production requirements); and (3) he did not receive authorization from his employees to produce documents with their personally identifying information (which, of course, is no excuse for not producing documents given the Court's previous orders explicitly requiring their production, the availability of redaction, and Defendants' failure to seek a protective order). Defense counsel's assertions that Volper's deposition testimony about the existence of various documents may have been mistaken is no more credible than Volper's testimony at the hearing. Had Volper believed he had given mistaken deposition testimony, he had months to make corrections. The record, however, is devoid of any such corrections having been made.

### Legal Standards For Discovery Sanctions Pursuant To Rule 37

Sanctions may be imposed under Rule 37 for a variety of discovery transgressions, including failure to comply with a court order and failure to comply with a discovery request

13

even in the absence of a court order. Rule 37(b)(2)(A) establishes the power of the court where the action is pending to award sanctions for not obeying a discovery order. Such sanctions may include:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party; or
>
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

*See generally Yukos Capital S.A.R.L. v. Feldman*, 977 F.3d 216, 234 (2d Cir. 2020) ("If a party fails to obey an order to provide or permit discovery, a district court may sanction the transgressing party in numerous ways of varying severity") (citing Fed. R. Civ. P. 37(b)(2)(A)).

Violating a court order also implicates payment of attorney's fees. Thus, "[i]nstead of or in addition to the orders [set forth in Rule 37(b)(2)(A)], the court ***must*** order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Rule 37(b)(2)(C) (emphasis added). Similarly, in certain instances, an award of attorney's fees is presumptively mandatory even in the absence of a court order. For instance, if a party fails to appear for its own deposition, the Court may impose any of the sanctions listed in

14

Rule 37(b)(2)(A) for violating a court order, and "***must***" at least require the non-appearing party and/or its attorney to pay reasonable expenses and attorney's fees, unless the failure was substantially justified or other circumstances make an award of expenses unjust. Rule 37(d)(3) (emphasis added).

In the absence of a court order, Rule 37(c)(1) permits sanctions to be imposed when a party fails to provide information or identify a witness as required by Rule 26(a) or (e). Rule 37(c)(1) provides that:

> [i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> (A) may order the payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
> (B) may inform the jury of the party's failure; and
>
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Rule 37's sanctions serve three purposes: "[f]irst, they ensure that a party will not benefit from its own failure to comply. Second, they are specific deterrents and seek to obtain compliance with the particular order issued. Third, they are intended to serve a general deterrent effect on the case at hand and on other litigation, provided that the party against whom they are imposed was in some sense at fault." *Roberts v. Bennaceur*, 658 Fed. Appx. 611, 614 (2d Cir. 2016) (quoting *Southern New England Telephone Co. v. Global NAPs Inc.*, 624 F.3d 123, 149 (2d Cir. 2010)); *see also* Gregory P. Joseph, 1 *Sanc. Fed. Law of Lit. Abuse* § 47 (2022) ("Rule 37 authorizes the Court to sanction certain types of discovery abuses for the purpose of (1) penalizing the culpable party or attorney;

15

(2) deterring others from engaging in similar conduct; (3) compensating the court and other parties for the expense caused by the abusive conduct; and (4) compelling discovery").

Whether and to what extent to impose sanctions under Rule 37 is within the court's "wide discretion." *Ayinola v. Lajaunie*, 855 Fed. Appx. 30, 32 (2d Cir. 2021); *accord Design Strategy, Inc. v. Davis*, 469 F.3d 284, 294 (2d Cir. 2006) ("A district court has wide discretion to impose sanctions, including severe sanctions, under [Rule] 37"). Exercise of that discretion is guided by several factors: (1) the willfulness of the non-compliant party; (2) the efficacy of lesser sanctions; (3) the duration of the non-compliance; and (4) whether the non-compliant party had been warned that non-compliance would be sanctioned. *Funk v. Belneftekhim*, 861 F.3d 354, 366 (2d Cir. 2017). "These factors are not exclusive and none is dispositive, '[b]ecause the text of [Rule 37] requires only that the district court's orders be just,' and 'because the district court has wide discretion in imposing sanctions under Rule 37.'" *Coach, Inc. v. O'Brien*, No. 10-CV-6071, 2012 WL 1255276, at *8 (S.D.N.Y. Apr. 13, 2012) (quoting *Southern New England Telephone*, 624 F.3d at 144).

## Discussion

The Court addresses the sanctions issues as follows. First, the Court considers whether any of the evidentiary sanctions requested should be imposed, and finds that several should. Second, the Court assesses whether coercive sanctions for contempt are warranted, and finds that they are. Third, the Court addresses Plaintffs' request for sanctioning 212's failure to appear at deposition when first noticed, and finds that Defendant should pay expenses incurred by Martinenko. Finally, the Court turns to

discussion of Martinenko's request for reasonable attorney's fees and costs expended in connection with the sanctions motion.

## A.    Sanctions Deeming Certain Facts Established

As noted above, Rule 37(b)(2)(A)(i) permits courts to sanction a party for violating a discovery order by deeming certain facts established. Such sanction is warranted for failure comply with a court order "when the failure to comply with a court order is due to willfulness or bad faith, or is otherwise culpable." *Daval Steel Products, Division of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991); *see also Southern New England Telephone Co.*, 624 F.3d at 147 (Supreme Court precedent "permits a court to presume from a party's willful failure to answer a discovery request relating to a particular issue that the facts of that issue are established against the noncompliant party") (discussing *Insurance Corporation of Ireland Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 102 S. Ct. 2099 (1982)). "Noncompliance with discovery orders is considered willful when the court's orders have been clear, when the party has understood them, and when the party's non-compliance is not due to factors beyond the party's control." *Baba v. Japan Travel Bureau International*, 165 F.R.D. 398, 402-03 (S.D.N.Y. 1996) (Sotomayor, J.), *aff'd*, 111 F.3d 2 (2d Cir. 1997); *accord Joint Stock Company Channel One Russia Worldwide v. Infomir LLC*, No. 16-CV-1318, 2019 WL 4727537, at *32 (S.D.N.Y. Sept. 26, 2019), *aff'd*, 2020 WL 1479018 (S.D.N.Y. March 26, 2020).

Martinenko argues that Defendants repeatedly and willfully failed to comply with the Court's orders requiring production of documents and that a sanction should be imposed by deeming several facts established without further proof. Those facts include

17

the following: (1) the putative class is sufficiently numerous for purposes of class certification; (2) 212's gross annual sales in 2021 and 2022 exceeded $500,000; (3) Volper was the sole owner of 212 in 2021 and 2022; (4) all front-of-house employees who clocked in and out on the restaurant's POS system were paid the applicable New York tip credit minimum wage for the hours for which they were clocked in; (5) Defendants paid putative class members their regular rate of pay for overtime hours; and (6) Defendants did not pay putative class members a spread-of-hours premium. (Pl. Mem. at 13-17.) Defendants respond that they complied and produced whatever documents and information they had or otherwise did not understand that certain material was called for. To determine if and what sanctions are appropriate, the Court examines in turn the documents at issue and each requested established fact.

### 1. Class List And Numerosity

As discussed above, the Court ordered Defendants to provide a putative class list, with the option to redact names. Defendants produced a list, but one that was not complete. The list, which included 24 front-of-house employees, did not include names of various front-of-house employees recalled by Martinenko or later identified by Volper at deposition when prompted with additional information by inquiring counsel. It also did not include any front-of-house employees who were employed at the restaurant any time during 2016-2019 but not thereafter. Martinenko asserts that Defendants acted willfully because at the time they produced the class list, they possessed documents, such as tip sheets and pay records, identifying putative class members who were not on the list produced. (Pl. Mem. at 14-15.)

Determining an accurate number of front-of-house employees who worked for 212

18

since 2016 is important because one of the requirements for federal class certification is numerosity, which is satisfied when "the class is so numerous that joinder of all members is impracticable." Rule 23(a)(1). As set forth in the Court's concurrent Class Cert. R&R, numerosity generally is presumed satisfied when there are at least 40 putative class members. *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). "Classes that encompass 'fewer than 20 members will likely not be certified absent other indications of impracticability of joinder,' while prospective classes of twenty to forty members fall into a 'gray area.'" *Jianmin Jin v. Shanghai Original, Inc.*, No. 16-CV-5633, 2018 WL 1597389, at *11 (E.D.N.Y. April 2, 2018) (quoting 1 *Newberg On Class Actions* § 3:12 (5th ed. 2011)). "[P]articularly in cases falling into the gray area between 21 and 40 class members, courts must consider factors other than class size." *Ansari v. New York University*, 179 F.R.D. 112, 114 (S.D.N.Y. 1998). The established fact that Martinenko seeks as a sanction for Defendants' failure to provide a complete class list would obviate the need for that analysis.

It is clear to the Court that Defendants have not been sufficiently diligent in compiling the class list, particularly given the omissions noted by Martinenko. But the Court need not resolve whether an evidentiary sanction as to numerosity is warranted. That issue is moot because, as set forth in the concurrent Class Cert. R&R, the Court already has determined that the class is sufficiently numerous. Accordingly, I recommended denying as moot the requested evidentiary sanction concerning numerosity.

### 2. Revenue And Ownership

The Court gave Defendants the option of either providing a stipulation that 212's

revenue exceeded $500,000, and Volper was the sole owner, each year during the period of liability, or, alternatively, documents reflecting 212's gross annual sales and documents sufficient to show Volper's ownership interest throughout the liability period. Defendants did not give a stipulation and therefore were required to produce a full set of responsive documents. Defendants complied in part, producing tax returns revealing the relevant information for 2016 through 2020. Defendants did not, however, fully comply. They failed to produce documents addressing revenue or ownership for 2021 or the partial 2022 year.

The only excuse Defendants offer is that they produced all tax returns they had. (Def. Mem. at 3.) That, however, is no excuse at all. The Court ordered production of responsive documents "including" tax returns. The Court's directive was limited neither by type of document or to any subset of documents. If Defendants did not yet have tax returns for 2021 and 2022, which would be understandable, they were obligated to produce other documents providing the information.

In opposing the instant motion, Defendants state that they "will concede that the restaurant grossed in excess of $500,000.00 in 2021 and 2022." (Def. Mem. at 5.) That representation is too little, too late. It addresses only revenue and not ownership, and Defendants previously were given the option of so stipulating rather than waiting for Plaintiff to file a sanctions motion to do so. At the April 4, 2023 hearing defense counsel refused to stipulate to Volper's full ownership for 2021 and 2022 and asserted that there is no documentation at all about Volper's ownership since 2021 and 2022 tax returns have not yet been prepared. That assertion, however, cannot be squared with Volper's deposition testimony that he could not answer the ownership question because he

20

needed to consult relevant documents.

Accordingly, I recommend that a sanction be imposed pursuant to Rule 37(b)(2)(A)(i) establishing the facts that 212's revenue exceeded $500,000, and Volper was sole owner, during 2021 and 2022. This sanction is both justified and just. Defendants willfully did not fully comply. The period of noncompliance has been several months; indeed, the requests were served on April 7, 2022; the Court repeatedly and clearly ordered compliance by orders dated May 27, June 13, July 5, and July 22, 2022; Martinenko filed the instant motion on November 1, 2022; and, at least as of the time of Martinenko's reply on November 22, 2022, Defendants still had not produced the missing responsive information. And, as the discovery deadline has passed without any request for extension by Defendants, and Defendants previously have been given ample opportunity to supply the requested information by stipulation or document production, the Court finds that no lesser sanction would be effective at this juncture.

### 3. Defendants' Payment Practices

Martinenko asserts that Defendants willfully failed to produce, as requested during discovery and so ordered by the Court, pay records for putative class members. As a sanction, Martinenko asks that three facts be deemed established: (1) Defendants paid the tip credit minimum wage to front-of-house employees for hours they were clocked in in using the restaurant's POS system; (2) Defendants paid putative class members their regular rate of pay, instead of time-and-a-half, for overtime hours; and (3) Defendants did not pay putative class members a spread-of-hours premium for workdays of more than 10 hours.

Defendants' failure to produce the pay records at issue has been willful and

continues despite the threat of sanctions.  As with the other records at issue, the Court ordered production of all responsive documents on four different occasions, and at the July 22, 2022 conference, the Court clearly and unambiguously specified the obligation to produce pay records for the putative class, overruling Defendants' objections. (Schulman Decl. Ex. 4 at 6:20-7:20.)  Yet Defendants produced such records only for Martinenko and Huk.  (Schulman Decl. ¶¶ 31-33.)  The fact that Defendants were able to locate and produce pay records for the named Plaintiff and sole opt-in Plaintiff suggests they have access to the same documents for other front-of-house employees. Additionally, Volper testified at his deposition that 212 maintains various pay records consisting of employee payment confirmations and payroll information for its employees. (Schulman Ex. 7 at 90:11-92:2, 105:20-108:4; *see also* Martinenko Decl. ¶¶ 15-19; Martinenko Exs. 4, 5.)  Yet, as with Defendants' other lapses, Defendants did not produce any of the required pay records in response to the Court's order or even in response to the instant motion.

Volper's unsworn affidavit states that he "supplied all the discovery requested in my possession by the dates set by the Judge."  (Dkt. 65-1 ¶ 9.)  That assertion does not help Defendants.  First, as the affidavit is unsigned, the Court cannot consider it.  *See Meimaris v. Royce*, No. 18-CV-4363, 2018 WL 9960113, at *2 (S.D.N.Y. Nov. 5, 2018) (collecting cases and explaining "[t]he Court cannot rely on the contents of an unsigned and unsworn affidavit").  Second, as with Volper's testimony at the April 4, 2023 hearing, the assertion is merely conclusory, vague, and does not provide any support that the specific documents at issue were produced or do not exist.  *See Advanced Portfolio Technologies, Inc. v. Advanced Portfolio Technologies Ltd.*, No. 94-CV-5620, 2002 WL

562650, at *5 (S.D.N.Y. April 15, 2002) (ignoring defendant's "vague, self-serving and unsupported affidavit"). To the contrary, the assertion is belied by Defendants' having produced the pay records for Martinenko and Huk and by Volper's own deposition testimony. (*See*, *e.g.*, Ex. 7 at 91:3-7 ("I believe we have some" employee pay confirmation records), 145:19-147:14 (identifying weekly tip sheets "that the restaurant keeps," although not sure if he has them for all years).)

The evidentiary facts Martinenko requests – that Defendants paid the tip credit minimum wage to front-of-house employees for all clocked-in hours, paid overtime at the regular rate of pay, and did not pay a spread-of-hours premium – are directly related to the Court's order of production for the Defendants' pay records. They also are consistent with the current evidentiary record. Volper testified that the restaurant paid all front-of-house employees the tip credit minimum wage for the hours for which they were clocked in. (Schulman Decl. Ex. 7 at 38:3-17.) Both Martinenko and Huk's pay records show that Defendants paid them their regular rate of pay for overtime hours and did not pay a spread-of-hours premium. (*See*, *e.g.*, Schulman Decl. Ex. 11 at D887, 890, 895, 905-07, 913, 919, 948-49, 951-57, 974-75, 977.) And Martinenko has some 2021 paystubs for other front-of-house employees, which show that, like her and Huk, employees were paid the tip credit minimum wage and were not paid an overtime premium or a spread-of-hours premium. (Martinenko Decl. ¶¶ 13-14 and Ex. 3.)

In light of the foregoing, the evidentiary sanction requested by Martinenko is warranted. Accordingly, I recommend the following facts about pay be deemed established: Throughout the liability period, (1) Defendants paid the tip credit minimum wage to front-of-house employees for hours they were clocked in using the restaurant's

POS system; (2) Defendants paid putative class members their regular rate of pay, instead of time-and-a-half, for overtime hours; and (3) Defendants did not pay putative class members a spread-of-hours premium for workdays of more than 10 hours.

## B.    Coercive Sanctions For Time Records And Tip Sheets

Martinenko does not seek an evidentiary sanction with respect to time records and tip sheets.  Instead, she asks for a finding of contempt and imposition of monetary coercive sanctions with the objective of motivating Defendants to comply with their obligations to produce those specific materials.[7]

A party may be held in contempt for violating a court order "if (1) the order the party failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted to comply in a reasonable manner."  *CBS Broadcasting Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 98 (2d Cir. 2016).  As the moving party, Martinenko bears the burden of establishing each of the three elements, while Defendants bear the burden as to any defense that compliance was factually impossible.  *Latino Officers Association City of New York, Inc. v. City of New York*, 558 F.3d 159, 164 (2d Cir. 2009); *Paramedics Electromedicina Comercial, Ltda. v. GE Medical Systems Information Technologies, Inc.*, 369 F.3d 645, 658 (2d Cir. 2004).

Each of the contempt factors is met here.  With respect to class member time records, the Court's order at the July 22, 2022 conference was clear and unambiguous:

---

[7] As Plaintiff's counsel confirmed at the April 4, 2023 hearing, the sanction sought for the time records and tip sheets (i.e., coercive) is different than for the other records not produced (i.e., established facts) because the pay records and corresponding evidentiary sanctions go to establishing Defendants' policies applicable to all front-of-house employees, whereas the time records and tip sheets are specific to individual employees and material to calculating damages.

"Number 3, the putative class members time records … This is permissible class discovery. … So the documents responsive to number 3 with the redactions [of names and social security numbers] that I've permitted will be provided to the plaintiff on August 19." (Schulman Decl. Ex. 4 at 5:14-15, 6:21-24, 7:18-20.) Martinenko has demonstrated clearly and convincingly that Defendants have not complied as they have not produced any time records for putative class members, except for those produced for Martinenko and Huk and two individuals who previously sued Defendants. (Schulman Decl. ¶ 12.) And, Defendants were not reasonably diligent in attempting to comply; Volper admitted that he can retrieve all employees' time records from the restaurant's POS system and that Defendants could obtain time records from their accountant. (Schulman Decl. Ex. 7 at 41:7-18, 44:15-45:17, 80:16-82:2.) Even as of the April 4, 2023 hearing, Volper had not attempted to retrieve the additional POS data.

Similarly, with respect to tip sheets, the Court clearly and unambiguously ordered Defendants, "on pain of sanctions," to produce all "tip documents" in their possession. (Schulman Decl. Ex. 4 at 13:17-19.) The evidence is clear and convincing that Defendants did not comply. Defendants did not produce any additional tip sheets by the deadline of August 5, 2022 but later admitted during Volper's deposition that they possess some tip sheets from at least 2022 that they did not produce. (Schulman Ex. 7 at 145:14-18.) Any suggestion that Volper did not understand that he had to produce records from 2022 rings hollow given that the liability period runs to the time of trial, and because Defendants did not even produce the records in response to the instant motion or

25

otherwise indicate that Volper's deposition testimony was in error.[8]

Defendants' conduct with respect to both time records and tip sheets was willful. As noted, Defendants have access to records maintained in their POS system and those provided to their accountant.  At the July 22, 2022 conference, defense counsel assured the Court that he would "revisit" with his clients to "make sure" that any tip sheets in Defendants' possession would be produced (Schulman Decl. Ex. 4 at 13:13-16) and that he could meet the August 19, 2022 deadline for producing putative class members' time records (*id.* at 7:13-17).  Yet Defendants did not produce the requisite records by the deadlines imposed and have not produced any in response to the instant motion, thus establishing both non-compliance and lack of diligence.

Having made the determination that Defendants are in contempt, the Court turns to assessing the sanctions to be imposed.  Martinenko has asked for coercive sanctions so that Defendants produce the time records and tip sheets.  Unlike compensatory sanctions, which focus on past injury, coercive sanctions focus on future conduct.  *See Southern New England Telephone*, 624 F.3d at 146 ("Civil contempt sanctions may serve dual purposes: securing future compliance with court orders and compensating the party that has been wronged") (internal quotation marks and brackets omitted)*; Gucci America v. Bank of China*, 768 F.3d 122, 144 (2d Cir. 2014) ("a civil contempt sanction must only be compensatory or coercive, and may not be punitive").  "A sanction coerces a defendant

---

[8] Martinenko adds that she never saw anyone throw out weekly tip sheets removed from where they are kept in the restaurant (Martinenko Decl. ¶ 12), "further calling into question the completeness of Defendants' production."  (Pl. Mem. at 19.)  The Court does not find that particular contention persuasive in establishing Defendants' willful non-compliance.  Martinenko was not employed at all times during the liability period, and Volper or others could have discarded or removed records at any time that Martinenko was not present in the restaurant.

26

when it forces the contemnor to conform his conduct to the court's order." *CBS Broadcasting,* 814 F.3d at 101 (internal quotation marks and brackets omitted). Coercive sanctions thus need to "be substantial enough to make it more economical for [the contemnor] to comply than not to comply." *Perfect Fit Industries Inc. v. Acme Quilting Co.*, 673 F.2d 53, 57 (2d Cir. 1982)). "When the purpose of a sanction is coercive, courts have 'broad discretion to design a remedy that will bring about compliance.'" *Chase Bank USA, N.A. v. M. Harvey Rephen & Associates, P.C.*, No. 19-MC-275, 2019 WL 13046982, at *4 (S.D.N.Y. Aug. 16, 2019) (quoting *Perfect Fit Industries*, 673 F.2d at 57). Factors considered in determining the coercive sanctions to be imposed include "(1) the character and magnitude of the harm threatened by the continued contumacy; (2) the probable effectiveness of any suggested sanction in bringing about compliance; and (3) the contemnor's financial resources and the consequent seriousness of the burden of the sanction upon him." *Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106, 110 (2d Cir. 1987).

Here, the harm is that Martinenko is deprived of material information relevant to determining the extent to which Defendants did or did not comply with the applicable wage and hour rules and the extent of damages for the members of the putative class. The parties have not addressed what will happen in the absence of the documents sought, but at the very least it will limit and complicate the proof available to the putative class. A monetary sanction also could well be exactly the motivation Defendants need to be more diligent and thoroughly comply with the Court's orders and for defense counsel to assure that they do so. The Court has no evidence before it of the Defendants' financial

27

wherewithal, but can reasonably infer from, inter alia, this being a single restaurant case that Defendants are of modest means; Martinenko has not suggested otherwise.

In light of all the circumstances, the Court recommends imposing coercive sanctions with respect to the time and pay records of other employees as follows: (1) Defendants be given 14 days from the date of the Court's decision on the instant motion to produce all time records and tip sheets for the putative class that are within Defendants' possession, custody or control, along with a sworn affidavit from Defendants attesting that Defendants have produced all such documents and explaining what they have done to search for and collect them;[9] (2) that, starting 15 days from the date of the Court's decision on the instant motion, if Defendants still have not purged their contempt, coercive sanctions be imposed, payable to the Clerk of Court, at the rate of $100 per day of continued non-compliance until the contempt is purged; and (3) if Defendants still have not purged the contempt after a total of 30 days from the date of the decision on the instant motion, the coercive sanctions increase to a daily amount of $250. *Cf. 1199 SEIU United Healthcare Workers East v. Alaris Health at Hamilton Park*, No. 18-CV-3336, 2019 WL 1448075, at *2 (S.D.N.Y. March 11, 2019) (imposing fines for failure to comply with post-judgment asset discovery of $1,000 per day escalating to $5,000 after five days and $10,000 after twenty days); *Mitchell Group USA, LLC v. Udeh*, No. 14-CV-5745, 2015 WL 6760109, at *8 (E.D.N.Y. Nov. 5, 2015) (imposing coercive sanction of $250 per day of continued discovery violation); *United Fabrics International, Inc. v. Metro 22, Inc.*, No. 16-

---

[9] At the April 4, 2023 hearing, Volper's testimony suggested that there are no more tip sheets to produce. If that is so, the required affidavit shall so state.

MC-253, 2016 WL 6310775, at *2 (S.D.N.Y. Oct. 27, 2016) (imposing coercive sanction of $100 per day until compliance with discovery order).

## C.    Sanctions For 212's Failure To Appear At Deposition

Martinenko requests that Defendant 212 be ordered to pay the court reporter's fee for the September 22, 2022 deposition at which 212 failed to appear.  As set forth above, costs and attorney's fees must be imposed for a party's failure to appear at its own deposition absent substantial justification or circumstances rendering such sanctions unjust.  Rule 37(d)(3).  The non-appearing party bears the burden of "showing that his failure is justified or that special circumstances make an award of expenses unjust." *Novak v. Wolpoff & Abramson LLP*, 536 F.3d 175, 178 (2d Cir. 2008) (internal quotation marks omitted). "[C]onduct is substantially justified if there was a genuine dispute or if reasonable people could differ as to the appropriateness of the contested action." *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 145, 148 (S.D.N.Y. 2014) (internal quotation marks omitted).

Here, 212 failed to appear for its duly noticed deposition on September 22, 2022. Defense counsel argues that failing to appear was justified because neither Martinenko nor her attorney "confirmed" the date and time of the deposition.  (Def. Mem. at 5.)  That is no justification at all.  No rule requires a party to confirm the date and time of a duly noticed deposition.  Moreover, Plaintiff's counsel did effectively provide confirmation in her August 31, 2022 letter to the Court, which provided Defendants with further notice that Martinenko intended to proceed with the September 22, 2022 deposition.   If Defendant 212 or its counsel had any question about whether the deposition was going forward or needed to reschedule it, counsel should have contacted Martinenko's counsel

29

in advance to do so. In short, Defendants have neither showed that the failure to appear at the September 22, 2022 deposition was substantially justified nor that any special circumstances render an award of expenses unjust.

Based on defense counsel's explanation for failing to appear – wrongfully taking the position that Defendant 212 had no need to appear in response to the duly served deposition notice without further confirmation – the obligation to pay for Martinenko's expenses should fall on defense counsel, not his client. Accordingly, defense counsel Mitchell Segal should be required to reimburse Plaintiff for the $313 court reporter fee.[10]

### Attorney's Fees

In addition to the sanctions already discussed, Martinenko seeks an award of her attorney's fees and costs incurred in seeking to compel Defendants' compliance with discovery and in bringing the instant sanctions motion. The Court finds that an award of reasonable attorney's fees and costs is warranted pursuant to Rule 37; indeed, an award of fees and costs is mandatory under 37(b)(2)(C) and 37(d)(3), and the Court finds no reason that such an award would be unjust or otherwise unwarranted. There is no justification for Plaintiff to bear the cost of seeking to remedy Defendants' willful discovery violations.

The traditional approach to determining a fee award is the "lodestar" calculation, which is the number of hours expended multiplied by a reasonable hourly rate. *See Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007); *Tackie v. Keff Enterprises LLC*, No. 14-CV-2074, 2014 WL 4626229, at *6 (S.D.N.Y. Sept. 16, 2014). The Second Circuit has

---

[10] Martinenko does not seek attorney's fees for the mere few minutes Plaintiff's counsel spent going on the record on September 22, 2022 to note Defendant's absence. (Pl. Mem. at 11 n.5.)

held that "the lodestar … creates a 'presumptively reasonable fee.'" *Millea v. Metro-North Railroad Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008); and then citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552, 130 S. Ct. 1662, 1673 (2010)); *see also Stanczyk v. City of New York*, 752 F.3d 273, 284-85 (2d Cir. 2014) (reaffirming *Millea*).  To arrive at a lodestar calculation, "[t]he party seeking an award of [attorney's] fees should submit evidence supporting the hours worked and rates claimed." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939 (1983).  Plaintiff has submitted such evidence here, consisting of contemporaneous records of time expended by specific attorneys.  (Schulman Decl. Ex. 15.)  The Court addresses in turn counsel's hourly rates and the number of hours worked.

**A.    Hourly Rates**

Courts assess the reasonableness of a proposed hourly rate by considering the prevailing market rate for lawyers in the district in which the ruling court sits.  *Polk v. New York State Department of Correctional Services*, 722 F.2d 23, 25 (2d Cir. 1983).  "The rates used by the court should be current rather than historic hourly rates."  *Reiter v. Metropolitan Transportation Authority of New York*, 457 F.3d 224, 232 (2d Cir. 2006) (internal quotation marks omitted).  "[C]ourts may conduct an empirical inquiry based on the parties' evidence or may rely on the court's own familiarity with the rates if no such evidence is submitted."  *Wong v. Hunda Glass Corp.*, No. 09-CV-4402, 2010 WL 3452417, at *2 (S.D.N.Y. Sept. 1, 2010) (internal quotation marks omitted).  Additionally, "the range of rates that a plaintiff's counsel actually charge[s] their clients … is obviously strong evidence of what the market will bear."  *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527,

31

544 (S.D.N.Y. 2008); *see also Lilly v. County of Orange*, 910 F. Supp. 945, 949 (S.D.N.Y. 1996) ("The actual rate that counsel can command in the market place is evidence of the prevailing market rate").

Plaintiff seeks recovery of attorney's fees for two attorneys: Denise A. Schulman and Michael DiGiulio of Joseph & Kirschenbaum LLP.  Schulman, a partner, charged an hourly rate of $500.   Ms. Schulman graduated from New York University School of Law in 2008 and has practiced plaintiff-side employment law since joining the firm in 2009. (Schulman Decl. ¶¶40-43.)  Courts have praised the work of both Ms. Schulman and her firm.  *See Orlando v. Liberty Ashes, Inc.*, No. 15-CV-9434 (S.D.N.Y.), Sept. 4, 2020 transcript (Schulman Decl. Ex. 16), at 10 ("in my entire experience with [Ms. Schulman] in this case, and a lot of others, she's always been among the very best lawyers in th[e] case); *Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, No. 13-CV-5008 (S.D.N.Y.), Dec. 21, 2015 transcript (Schulman Decl. Ex. 17), at 20 ("I think Mr. Kirschenbaum and Ms. Schulman and their firm are the best in breed – of firms doing this kind of work").

Ms. Schulman's $500 hourly rate is higher than the rates generally recognized as reasonable for garden-variety wage and hour cases such as this one.  *See, e.g.*, *Lin v. La Vie En Schezuan Restaurant Corp.*, No. 15-CV-9507, 2020 WL 1819941, at *3 (S.D.N.Y. April 9, 2020) (recognizing reasonable rates for senior attorneys handling wage and hour cases as $300 to $400); *Shanfa Li v. Chinatown Take-Out Inc.*, No. 16-CV-7787, 2019 WL 3715086, at *6 (S.D.N.Y. Aug. 7, 2019) ("Experienced litigators and partners are commonly awarded between $300 and $400 per hour in FLSA cases within the Southern District of New York").  That said, more recently than either of the cases just cited, Ms. Schulman's $500 hourly rate was approved as reasonable by Judge Woods in

32

a routine wage-and-hour case. *Zivkovic v. Laura Christy LLC*, No. 17-CV-553 (S.D.N.Y.), June 15, 2022 transcript (Schulman Decl. Ex. 18) at 16-17. The Court approved Ms. Schulman's rate as reasonable not only due to her experience and the quality of her work, but also because the existing precedent "anchors rates in the past." (*Id.* at 15.) The Court also found support for Ms. Schulman's rate in data regarding prevailing rates in New York for employment litigators. (*Id.* at 15-16.) This Court agrees with Judge Woods' observation that repeated use of precedent regarding attorney's fees tethers rates to outdated standards. *See also Champagne v. Columbia Dental, P.C.*, No. 3:18-CV-1390, 2022 WL 951687, at *6 (D. Conn. March 30, 2022) (discussing the appropriateness of increasing attorneys' hourly rates due to lapse of time and increase in cost of living). The Court also agrees that Ms. Schulman's rate is reasonable.

The Court similarly finds that Mr. DiGiulio's rate of $350 per hour is reasonable. Mr. DiGiulio graduated law school in 2014, clerked on the Second Circuit Court of Appeals, previously practiced environmental litigation, and joined Joseph & Kirschenbaum in 2020, where he has since exclusively represented employees in wage and hour, discrimination, and retaliation claims. (Schulman Decl. ¶¶ 45-47.) Some courts have found $350 to be a reasonable hourly rate for associates, although, again, at the high end and without taking into account the need to increase rates over time to keep up with the local legal industry. *See*, e.*g.*, *Wen Bin Gao v. Lucky Brother Inc.*, No. 17-CV-8159, 2020 WL 8838035, at *2 (S.D.N.Y. June 9, 2020); *Rodriguez v. 3551 Realty Co.*, No 17-CV-6553, 2017 WL 5054728, at *3 (S.D.N.Y. Nov. 2, 2017). Given Mr. DiGiulio's experience, his exclusive focus on employment disputes including wage and hour cases,

33

and the quality of the work performed in this case, among other factors, the Court finds his $350 hourly rate to be reasonable.

**B.    Hours Worked**

To determine the compensable hours, "the court must examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case." *Tlacoapa v. Carregal*, 386 F. Supp. 2d 362, 371 (S.D.N.Y. 2005) (citing *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998)).  "In making this examination, the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties."  *Gierlinger*, 160 F.3d at 876.  (quoting *DiFilippo v. Morizio,* 759 F.2d 231, 235-36 (2d Cir.1985)).  "The relevant issue ... is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992); *see also Mugavero v. Arms Acres, Inc.*, No. 03-CV-5724, 2010 WL 451045, at *6 (S.D.N.Y. Feb. 9, 2010) (same).  A court thus should exclude from the lodestar calculation "excessive, redundant or otherwise unnecessary hours."  *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999); *see also Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997) ("If the district court concludes that any expenditure of time was unreasonable, it should exclude these hours from the lodestar calculation").

The time records submitted reflect that Ms. Schulman and Mr. Digiulio expended a total of 63.4 hours in researching, drafting, and editing briefs, declarations, and correspondence in connection with applying for discovery sanctions against Defendants. (*See* Schulman Decl. Ex. 15; Reply Mem. at 10 (additional hours in connection with reply

34

brief).[11])  Ms. Schulman accounts for 44.1 of those hours; Mr. Digiulio accounts for 19.3 of the hours.  The Court has reviewed the billing records and finds that the time recorded is reasonable in light of the circumstances, including the multiplicity of discovery violations requiring redress and the thoroughness and quality of the work performed.  Although Ms. Schulman, whose rate is higher than Mr. DiGioulio's rate, did the lion's share of work, the Court cannot conclude that work should have been delegated down to a greater extent, particularly given the apparent efficiency with which Ms. Schulman appears to have performed the work involved.  Moreover, the charges do not reflect any work by the attorneys for paralegal work, administrative tasks, or other work that would have been more appropriate for others to perform.

## C.    The Amount Awarded

Having determined that the rates charged by Ms. Schulman and Mr. DiGiulio are reasonable, and that the hours expended by them in connection with moving for sanctions are reasonable, the Court finds that Martinenko should be awarded attorney's fees and costs in the amount of $28,805.

## Conclusion

For the foregoing reasons, I recommend that to redress Defendants' various violations of discovery obligations and orders:

(1)    The Court deem established the following facts: (i) 212's gross annual revenue in 2021 and 2022 exceeded $500,000; (ii) Defendant Volper was the sole owner of 212 in 2021 and 2022; (iii) all front-of-house employees who clocked in and out on the

---

[11] "Reply Mem." refers to Plaintiff's Reply Memorandum Of Law In Support Of Motion For Sanctions Pursuant To Fed. R. Civ. P. 37 at Dkt. 68.

restaurant's POS system were paid the applicable New York tip credit minimum wage for the hours for which they were clocked in; (iv) Defendants paid putative class members their regular rate for overtime hours (rather than time-and-a-half); and (v) Defendants did not pay putative class members a spread-of-hours premium.

(2)     The Court find Defendants in contempt for failing to comply with the Court's order requiring production of all tip sheets and time records for the putative class, and impose coercive sanctions as follows: (i) Defendants be given 14 days from the date of the Court's decision on the instant motion to produce all tip sheets and time records for the putative class that are within Defendants' possession, custody or control, along with a sworn affidavit from Defendants attesting that Defendants have produced all such documents found after a reasonable search and explaining what they have done to search for and collect them; (2) that, starting 15 days from the date of the Court's decision on the instant motion, to the extent that the contempt still has not been purged, coercive sanctions be imposed, payable to the Clerk of Court, at the rate of $100 per day of continued non-compliance until the contempt is purged; and (3) if Defendants still have not purged the contempt after a total of 30 days from the date of the decision on the instant motion, the coercive sanctions increase to a daily amount of $250.

(3)     The Court order Defendants' attorney Mitchell Segal to pay Plaintiff for the $313 court reporter fee incurred when Defendant 212 failed to appear for its deposition on the first day for which it was noticed; and

(4)     The Court order Defendants to pay reasonable attorney's fees and costs in the amount of $28,805, which were incurred in connection with the instant motion and the subject discovery violations.

I further recommend that Plaintiff's request to find numerosity established be denied as moot, and that Plaintiff's motion be denied in all other respects. To the extent not discussed above, the Court has considered all of Defendants' arguments and finds them to be without merit.

### Deadline For Objections

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the Chambers of the Honorable Jennifer L. Rochon, U.S.D.J., United States Courthouse, 500 Pearl Street, New York, NY 10007, and to the Chambers of the undersigned, United States Courthouse, 500 Pearl Street, New York, New York 10007. **Failure to file timely objections will preclude the right to object and to seek appellate review.**

SO ORDERED.

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated:     April 12, 2023
           New York, New York